# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL MCCARTHY; WILLIAM R. BIEWENGA; LAURIE WARNER; TIMOTHY GALLIGAN; JIM SIMMONS; DAVID LANTAGNE; ALFRED MORIN; TROY CITY TACTICAL LLC; PRECISION POINT FIREARMS LLC; SHOOTING SUPPLY LLC; DOWNRANGE INC. d/b/a CAPE COD GUN WORKS; FIREARMS POLICY COALITION, INC.; COMMONWEALTH SECOND AMENDMENT, INC.; and SECOND AMENDMENT FOUNDATION, INC., | CIVIL ACTION NO. |
| Plaintiffs, | PRELIMINARY EQUITABLE RELIEF REQUESTED |
| -against- | |
| CHARLES D. BAKER, in his Official Capacity as Governor of the Commonwealth of Massachusetts; MONICA BHAREL MD, MPH, in her Official Capacity as Commissioner of the Massachusetts Department of Public Health; JAMISON GAGNON, in his Official Capacity as Commissioner of the Department of Criminal Justice Information Services; ALBERT F. DUPRE, in his Official Capacity as Chief of the Fall River Police Department; ROBERT F. RUFO, in his Official Capacity as Chief of the Woburn Police Department; KEITH A. PELLETIER, in his Official Capacity as Chief of the Westport Police Department and MATTHEW SONNABEND, in his Official Capacity as Chief of the Barnstable Police Department, | |
| Defendants. | |

## COMPLAINT

Plaintiffs MICHAEL MCCARTHY, WILLIAM R. BIEWENGA, LAURIE WARNER,

TIMOTHY GALLIGAN, JIM SIMMONS, DAVID LANTAGNE, ALFRED MORIN, TROY

CITY TACTICAL LLC, PRECISION POINT FIREARMS LLC, SHOOTING SUPPLY LLC, DOWNRANGE INC. d/b/a CAPE COD GUN WORKS, FIREARMS POLICY COALITION, INC., COMMONWEALTH SECOND AMENDMENT, INC. and SECOND AMENDMENT FOUNDATION, INC., as and for their Complaint against Defendants CHARLES D. BAKER, MONICA BHAREL MD, MPH, JAMISON GAGNON, CHIEF ALBERT F. DUPRE, CHIEF ROBERT F. RUFO, CHIEF KEITH A. PELLETIER and CHIEF MATTHEW SONNABEND allege as follows:

1.      This lawsuit challenges the Defendants' acts of eliminating all lawful channels of access to constitutionally protected arms and ammunition by mandating the closure of all businesses that sell firearms and ammunition to the consumer public. These actions amount to a ban on obtaining modern arms for personal defense in the Commonwealth of Massachusetts.

2.      The Plaintiffs bringing this action do not mean to minimize the severity or urgency of the coronavirus pandemic. The exigencies surrounding this viral pandemic both justify and necessitate changes in the manner in which people live their lives and conduct their daily business. However, this emergency—like any other emergency—has its constitutional limits. It would not justify a prior restraint on speech, nor a suspension of the right to vote. Just the same, it does not justify a ban on obtaining guns and ammunition. The declaratory and injunctive relief that Plaintiffs have been forced to seek in this action is necessary to uphold this bedrock principle of constitutional rights and the rule of law.

3.      The need for personal self-defense is most acute during times of uncertainty and crisis—when law enforcement services may not be available or may not be reliably available, and when (as now) criminal offenders may be released from custody or may be less likely to be

taken into custody in the first place. It is precisely times like these that the Plaintiffs and the

Plaintiffs' members need to be able to exercise their fundamental rights to keep and bear arms.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343,

2201, 2202 and 42 U.S.C. § 1983.

5.      This Court has personal jurisdiction over each of the Defendants because, *inter*

*alia*, acted, acts and threatens to act under the color of laws, policies, customs and/or practices of

the Commonwealth of Massachusetts and each did so, does so and threatens to do so within the

geographic confines of the Commonwealth of Massachusetts.

6.      Venue is proper pursuant to 28 U.S.C. § 1391.

7.      The Eastern Division is appropriate pursuant to LR 40.1(d)(1)(C) because all

parties that reside in the District reside in the Eastern Division.

## PARTIES

8.      Plaintiff MICHAEL MCCARTHY is a natural person residing in Boston, Suffolk

County, Massachusetts.

9.      Plaintiff WILLIAM R. BIEWENGA is a natural person residing in Wellfleet,

Barnstable County, Massachusetts.

10.     Plaintiff LAURIE WARNER is a natural person residing in Wellfleet, Barnstable

County, Massachusetts.

11.     Plaintiff TIMOTHY GALLIGAN is a natural person residing in Easton, Bristol

County, Massachusetts.

12.     Plaintiff JIM SIMMONS is a natural person residing in New Bedford, Bristol

County, Massachusetts.

13. Plaintiff DAVID LANTAGNE is a natural person residing in Dunstable, Middlesex County, Massachusetts.

14. Plaintiff ALFRED MORIN is a natural person residing in Brewster, Barnstable County, Massachusetts.

15. Plaintiff TROY CITY TACTICAL LLC is a limited liability company organized under Massachusetts law with its office in Fall River, Bristol County, Massachusetts.

16. Plaintiff PRECISION POINT FIREARMS LLC is a limited liability company organized under Massachusetts law with its office in Woburn, Middlesex County, Massachusetts.

17. Plaintiff SHOOTING SUPPLY LLC is a limited liability company organized under Massachusetts law with its office in Westport, Bristol County, Massachusetts.

18. Plaintiff DOWNRANGE INC. d/b/a CAPE COD GUN WORKS ("Cape Cod Gun Works") is a corporation organized under Massachusetts law with its office in Hyannis, Barnstable County, Massachusetts.

19. Plaintiff FIREARMS POLICY COALITION, INC. ("FPC") is an exempt (not-for-profit) corporation organized under Delaware law with its principle office in Sacramento County, California.

20. Plaintiff COMMONWEALTH SECOND AMENDMENT, INC. ("Comm2A") is a non-profit corporation organized under Massachusetts law with its principal place of business in Natick, Middlesex County, Massachusetts.

21. Plaintiff SECOND AMENDMENT FOUNDATION, INC. ("SAF") is a not-for-profit corporation organized under Washington law with its principle office in King County, Washington.

22.     Defendant CHARLES D. BAKER ("Governor Baker") is sued in his official capacity as Governor of the Commonwealth of Massachusetts, responsible for issuing the executive orders that cause the injuries complained of, and who has authority to change or modify such orders in a way that would alleviate the Plaintiffs' injuries. As detailed herein, Defendant Governor Baker has enforced the challenged laws, policies, customs, and practices against Plaintiffs and is in fact presently enforcing and threatening to enforce the challenged laws, policies, customs, and practices against Plaintiffs.

23.     Defendant MONICA BHAREL MD, MPH is sued in her official capacity as the Commissioner of the Massachusetts Department of Public Health, responsible for enforcing the executive orders that cause the injuries complained of, and further, with authority "to issue guidance" that could alleviate the Plaintiffs' injuries. As detailed herein, Defendant Commissioner Bharel has enforced the challenged laws, policies, customs, and practices against Plaintiffs and is in fact presently enforcing and threatening to enforce the challenged laws, policies, customs, and practices against Plaintiffs.

24.     Defendant JAMISON GAGNON ("Commissioner Gagnon") is sued in his official capacity as Commissioner of the Department of Criminal Justice Information Services, who has undertaken enforcement of the executive orders at issue and otherwise acted to cause the injuries complained of herein. As detailed herein, Defendant Commissioner Gagnon has enforced the challenged laws, policies, customs, and practices against Plaintiffs and is in fact presently enforcing and threatening to enforce the challenged laws, policies, customs, and practices against Plaintiffs.

25.     Defendant ALBERT F. DUPRE ("Chief Dupre") is sued in his official capacity as Chief of the Fall River Police Department (Bristol County), responsible for general law

enforcement functions within the City of Fall River, including the enforcement of the executive orders at issue here. As detailed herein, Defendant Chief Dupre has enforced the challenged laws, policies, customs, and practices against Plaintiffs and is in fact presently enforcing and threatening to enforce the challenged laws, policies, customs, and practices against Plaintiffs.

26.    Defendant ROBERT F. RUFO ("Chief Rufo") is sued in his official capacity as Chief of the Woburn Police Department (Middlesex County), responsible for general law enforcement functions within the City of Woburn, including the enforcement of the executive orders at issue here. As detailed herein, Defendant Chief Rufo has enforced the challenged laws, policies, customs, and practices against Plaintiffs and is in fact presently enforcing and threatening to enforce the challenged laws, policies, customs, and practices against Plaintiffs.

27.    Defendant KEITH A. PELLETIER ("Chief Pelletier") is sued in his official capacity as Chief of the Westport Police Department (Bristol County), responsible for general law enforcement functions within the Town of Westport, including the enforcement of the executive orders at issue here. As detailed herein, Defendant Chief Pelletier has enforced the challenged laws, policies, customs, and practices against Plaintiffs and is in fact presently enforcing and threatening to enforce the challenged laws, policies, customs, and practices against Plaintiffs.

28.    Defendant MATTHEW SONNABEND ("Chief Sonnabend") is sued in his official capacity as Chief of the Barnstable Police Department (Barnstable County), responsible for general law enforcement functions within the Town of Barnstable, including the enforcement of the executive orders at issue here. As detailed herein, Defendant Chief Sonnabend has enforced the challenged laws, policies, customs, and practices against Plaintiffs and is in fact presently enforcing and threatening to enforce the challenged laws, policies, customs, and practices against Plaintiffs.

## CONSTITUTIONAL PROVISIONS

29.     The Second Amendment to the United States Constitution provides:

> A well-regulated Militia being necessary to the security of a free State, the
> right of the people to keep and bear Arms shall not be infringed.

30.     The Second Amendment "guarantee[s] the individual right to possess and carry

weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008).

31.     The Fourteenth Amendment to the United States Constitution provides in pertinent

part:

> No state shall make or enforce any law which shall abridge the privileges
> or immunities of citizens of the United States; nor shall any state deprive
> any person of life, liberty, or property, without due process of law; nor
> deny to any person within its jurisdiction the equal protection of the laws.

32.     The Second Amendment "is fully applicable to the States." *McDonald v. City of

Chicago*, 561 U.S. 742, 750 (2010); *see also id.* at 805 (Thomas, J., concurring).

33.     The "core lawful purpose" of the right to keep and bear arms is "self-defense."

*Heller*, 554 U.S. at 571, 630; *accord McDonald*, 561 U.S. at 767-68.

34.     The Second Amendment "elevates above all other interests the right of law-abiding,

responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 635.

35.     "Commercial regulations on the sale of firearms do not fall outside the scope of the

Second Amendment[.]" *United States v. Marzzarella*, 614 F.3d 85, 92 n.8 (3d Cir. 2010). Rather,

"prohibiting the commercial sale of firearms . . . would be untenable under *Heller*." *Id.*

## PERTINENT STATUTES AND REGULATIONS

36.     It is unlawful to "own or possess" any handgun, rifle or shotgun unless one holds

either a Firearms Identification card ("FID") or a License to Carry Firearms ("LTC"). *See*

M.G.L. c. 140, §§ 129B-129C; *id.* c. 269, § 10(a).

37.     A person seeking a FID or LTC must meet specified requirements related to, *inter alia*, age, criminal background, and mental fitness.  *See* M.G.L. c. 140, § 129B(1)(i)-(xi); *id.* § 131(d)(i)-(x). Furthermore, licensing authorities can deny FIDs and LTCs to individuals found to be "unsuitable" in that they otherwise "create a risk to public safety." *See id.* § 129B(1)(b), (d); *id.* § 131(d). Finally, a person must also complete state mandated training. *See id.* at § 131P(a).

38.     It is also illegal to possess "ammunition" unless one holds either a FID or LTC. *See* M.G.L. c. 140, §§ 129B-129C; *id.* c. 269, § 10(a).

39.     As a general proposition, it is illegal to sell any type of firearm (handgun, rifle or shotgun) in Massachusetts unless the seller is a licensed firearms dealer. *See* M.G.L. c. 140, § 128.

40.     It is illegal to sell ammunition unless one is "duly licensed." *See* M.G.L. c. 140, § 122B.

41.     Subject to certain exceptions that are not applicable in Massachusetts, federal law requires licensed firearms dealers to deliver firearms to purchasers at their licensed business premises, or alternatively, at a gun show. *See* 27 C.F.R. § 478.96(b).

## GOVERNOR BAKER'S EXECUTIVE ORDERS AND
## THE CLOSURE OF RETAIL ARMS TRANSACTIONS

42.     As the Court is aware, a novel virus has caused a pandemic illness that is spreading throughout the world, including the United States and the Commonwealth of Massachusetts. It is unclear how long it will take for this pandemic illness to run its course, and estimates have ranged from one month to 18 or more months.

43.     On March 23, 2020, Defendant Governor Baker issued COVID-19 Order No. 13, which ordered "[a]ll businesses and other organizations that do not provide COVID-19 Essential Services [to] close their physical workplaces and facilities ('brick-and-mortar premises') to

workers, customers, and the public" the next day, on March 24, 2020. By its terms, this order was to expire on April 7, 2020.

44.     COVID-19 Order No. 13 included an Exhibit A in which Defendant Governor Baker designated various types of businesses as "essential" services "based on federal guidance and amended to reflect the needs of Massachusetts' unique economy." The list of "essential" services did not include retailers of firearms and ammunition but did include "[w]orkers necessary for the manufacturing of materials and supplies needed for . . . emergency services, and the defense industrial base" under the designation of "CRITICAL MANUFACTURING."

45.     On March 31, 2020 Defendant Governor Baker issued COVID-19 Order No. 19, which extended Order No. 13 to May 4, 2020, and also revised the list of "essential" services. The revised list included "[w]orkers supporting the operation of firearm or ammunition product manufacturers, importers, and distributors" under the category for "Law Enforcement, Public Safety, First Responders." It also continued to identify "critical manufacturing" as "essential" on largely the same terms as Order No. 13.

46.     On or about April 2, 2020 Defendant Commissioner Gagnon issued a directive to all Chiefs of Police and firearms licensing personnel reinforcing the determination by Defendant Governor Baker that firearms dealers are not "essential" businesses and offering his assistance with the enforcement of COVID-19 Order No. 19 through targeted audits of firearms sales by firearms dealers.

47.     Plaintiff Troy City Tactical, LLC is a retail dealer in firearms and ammunition that is licensed under both federal law and Massachusetts law to engage in business as such.

48.     Plaintiff Precision Point Firearms, LLC is a retail dealer in firearms and ammunition that is licensed under both federal law and Massachusetts law to engage in business as such.

49.     Plaintiff Shooting Supply, LLC is a retail dealer in firearms and ammunition that is licensed under both federal law and Massachusetts law to engage in business as such.

50.     Plaintiff Cape Cod Gun Works is a retail dealer in firearms and ammunition that is licensed under both federal law and Massachusetts law to engage in business as such.

51.     As the coronavirus pandemic unfolded, Plaintiffs Troy City Tactical, Precision Point Firearms, Shooting Supply, and Cape Cod Gun Works implemented safety measures following guidelines from the Center for Disease Control and Massachusetts officials, such as the routine cleansing of doorknobs and countertops, social distancing, limitation on the number of people in the store at once and "appointment only" retail sales.

52.     On or about April 2, 2020, Plaintiff Troy City Tactical contacted the Fall River Police Department and was advised by an officer of that department that he was now prohibited from conducting new retail sales in accordance with COVID-19 Order No. 19.  Plaintiff Troy City tactical is aware that Defendant Chief Dupre has the authority to suspend or revoke its licenses to sell firearms and ammunition if it violates COVID-19 Order No. 19.

53.     On April 3, 2020, Plaintiff Precision Point Firearms received the notice drafted by Defendant Commissioner Gagnon which stated that "(a)s of noon on April 1, 2020 gun dealers must remain closed for all business transactions". This notice was sent to all Chiefs of Police, including Defendant Chief Rufo.  Plaintiff Precision Point Firearms is aware that Defendant Chief Rufo has the authority to suspend or revoke its licenses to sell firearms and ammunition if it violates COVID-19 Order No. 19.

54.     On April 2, 2020, Westport police officers came to the business premises of Plaintiff Shooting Supply and ordered it to cease doing business. Westport police officers blocked Plaintiff Shooting Supply's parking lot and refused to allow it to conduct any additional transfers to waiting customers. The Westport police officers told Plaintiff Shooting Supply that his business was being shut down in accordance with COVID-19 Order No. 19. Plaintiff Shooting Supply is aware that Defendant Chief Pelletier has the authority to suspend or revoke his licenses to sell firearms and ammunition if it violates COVID-19 Order No. 19.

55.     On April 1, 2020, the Board of Health of the Town of Barnstable contacted Plaintiff Cape Cod Gun Works by telephone and told the store that it could not continue retail sales to the public. Furthermore, on April 3, 2020, Plaintiff Cape Cod Gun Works received a copy of a notice drafted by the Commissioner of the Department of Criminal Justice Information Services which stated that "(a)s of noon on April 1, 2020 gun dealers must remain closed for all business transactions" in accordance with COVID-19 Order No. 19. On information and belief, this notice was sent to all Chiefs of Police, including Defendant Chief Sonnabend. Plaintiff Cape Cod Gun Works is aware that Defendant Chief Sonnabend has the authority to suspend or revoke its licenses to sell firearms and ammunition if it violates COVID-19 Order No. 19.

## INJURY TO THE PLAINTIFFS AND OTHERS LIKE THEM

56.     Plaintiff William Biewenga and Plaintiff Laurie Warner both hold valid LTCs in the Commonwealth but do not own any firearms, rifles, shotguns or ammunition. Their home is close to the Cape Cod National Seashore and they have observed an increase in unwanted trespassers on their property since the novel coronavirus began to spread in the United States. They are aware that break-ins are common in their community and they are concerned that they would be unable to protect themselves should the need arise and emergency services were unavailable or not reliably available. They decided to purchase a gun and ammunition to protect themselves.

57.     On April 3, 2020, Plaintiff Biewenga contacted Plaintiff Cape Cod Gun Works and inquired about the availability of a Mossberg 590M 12 gauge shotgun and ammunition for purchase by either himself or Plaintiff Warner.

58.     On April 3, 2020, Plaintiff Cape Cod Gun Works advised Plaintiff Biewanga that the "state" had "shut (them) down at this time" and that they could "not transfer a gun" to Plaintiff Biewenga or Plaintiff Warner. Thus, Plaintiffs Biewenga and Warner are unable to obtain a firearm or ammunition.

59.     Plaintiff Michael McCarthy holds a valid LTC in the Commonwealth but does not own any firearms, rifles, shotguns or ammunition.  He is aware that the City of Boston has a higher crime rate than surrounding communities, and he is concerned that he would unable to protect himself and his family should the need arise and emergency services are unavailable or not reliably available. He decided to purchase a gun and ammunition to protect himself and his family.

60.     On April 7, 2020, Plaintiff McCarthy contacted Plaintiff Precision Point Firearms and inquired about the availability of a firearm and ammunition for purchase.

61.     On April 7, 2020 Plaintiff Precision Point Firearms advised Plaintiff McCarthy that it could not sell a firearm or ammunition to him due to COVID-19 Order No. 19.

62.     Plaintiff Timothy Galligan holds a valid LTC in the Commonwealth but does not own any firearms, rifles, shotguns or ammunition. He is the single parent of a teenage son and is concerned about the protection of himself and his family should the need arise, especially if emergency services are unavailable or not reliably available. He decided to purchase a gun and ammunition to protect himself and his family.

63.     On April 7, 2020, Plaintiff Galligan contacted Plaintiff Troy City Firearms and inquired about the availability of a firearm and ammunition for purchase.

64.     On April 7, 2020 Plaintiff Troy City Firearms advised Plaintiff Galligan that the Fall River Police Department had ordered them to stop all sales in order to comply with COVID-19 Order No. 19.

65.     Plaintiff Jim Simmons holds a valid LTC in the Commonwealth but does not own any firearms, rifles, or shotguns. He is a self-employed single parent of three children who wants the option to protect his family with a firearm should the need arise, especially if emergency services are unavailable or not reliably available.

66.     On March 30, 2020 Plaintiff Simmons visited the premises of Plaintiff Shooting Supply and purchased a Smith & Wesson .380 caliber handgun. Due to a delay in the background check system, he was advised that he could return on April 2, 2020 to pick up his new firearm. He intended and planned to return on that day to pick up both the firearm and ammunition for it.

67.     On April 2, 2020 Plaintiff Simmons drove to Plaintiff Shooting Supply and parked in the parking lot in front of the store. As he exited his vehicle he was immediately confronted by a Westport police officer in uniform. The officer ordered Plaintiff Simmons to leave the area and threatened to arrest him if he did not. Plaintiff Simmons later learned that the Westport Police Department had shut down Plaintiff Shooting Supply, and that he was now not able to take possession of the handgun that he had lawfully purchased, nor to obtain ammunition for it.

68.     Plaintiff David Lantagne holds a valid LTC in the Commonwealth but does not own any firearms, rifles, shotguns or ammunition. He owns a construction company and is married with two children. He wants the option to protect his family with a firearm should the need arise, especially if emergency services are unavailable or not reliably available.

69.     On April 3, 2020 Plaintiff Lantagne purchased a Sig Sauer 320XS Legion 9 mm caliber handgun from the Sig Sauer Academy in Epping, New Hampshire. Plaintiff Lantagne was

advised that, as a Massachusetts resident, in accordance with federal law, he must have the firearm shipped to a licensed firearms dealer in Massachusetts before he could receive it. Plaintiff Lantagne directed the Sig Sauer Academy to ship his new firearm to Plaintiff Precision Point Firearms.

70.     On April 7, 2020 Plaintiff Precision Point Firearms received Plaintiff Lantagne's Sig Sauer 320XS Legion 9 mm caliber firearm. Plaintiff Precision Point Firearms contacted Plaintiff Lantagne and told him that it could not conduct business and thus could not transfer the firearm to him due to COVID-19 Order No. 19. Plaintiff Lantagne is accordingly unable to obtain a firearm or ammunition.

71.     Plaintiff Alfred Morin holds a valid FID in the Commonwealth but does not own any firearms, rifles, shotguns or ammunition. He is retired and resides with his wife. He wants the option to protect his family with a shotgun should the need arise, especially if emergency services are unavailable or not reliably available.

72.     Plaintiff Morin has learned through various news reports that all gun stores are now closed and he is accordingly unable to purchase a shotgun or ammunition.

73.     Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a non-profit organization with purposes that include defending and promoting the People's rights and freedom. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. FPC represents its members and supporters, who include individuals aggrieved by COVID-19 Orders and the other actions complained of herein, and brings this action on behalf of itself, its members, supporters who possess all the indicia of membership, and similarly situated members of the public. FPC has expended and diverted resources, and been adversely and directly harmed, because of Defendants'

laws, policies, practices, and customs challenged herein. FPC brings these claims on its own behalf, on behalf of its members and on behalf of legally eligible affected persons.

74.     Plaintiff Commonwealth Second Amendment, Inc. ("Comm2A") is a nonprofit organization recognized under § 501(c)(3) of the Internal Revenue Code. The purposes of Comm2A include education, research, publishing, and legal action focusing on the constitutional right of the people to possess and carry firearms. Comm2A has members and supporters throughout (and beyond) Massachusetts, including members and supporters who would purchase firearms and ammunition for the purpose of self-defense but for the COVID-19 Orders and Defendants' ongoing threat to enforce them. In addition, Comm2A expends significant resources assisting people who are unable to purchase firearms and ammunition for this same reason. Comm2A brings this action on its own behalf and on behalf of its members.

75.     Plaintiff Second Amendment Foundation, Inc. ("SAF") has over 650,000 members and supporters nationwide, including in the Commonwealth of Massachusetts. The purposes of SAF include promoting both the exercise of the right to keep and bear arms and education, research, publishing, and legal action focusing on the constitutional right to privately own and possess firearms. SAF also promotes research and education on the consequences of abridging the right to keep and bear arms and on the historical grounding and importance of the right to keep and bear arms as one of the core civil rights of United States citizens. SAF brings these claims on its own behalf and on behalf of its members.

### CAUSE OF ACTION FOR DEPRIVATION OF CIVIL RIGHTS
### 42 U.S.C. § 1983

76.     Defendants' acts prohibiting the operation of any and all consumer-oriented firearms businesses operates to completely prohibit law-abiding individuals from purchasing ammunition, and to effectively prevent most of them from purchasing firearms. Independently and

collectively, these acts stand as a perpetual bar on acquiring firearms and ammunition for the purpose of protecting one's self and family (or indeed, for any other lawful purpose).

77.     States and localities do not have the power to prohibit the keeping and bearing of arms, nor to close off the channels of distribution by which people obtain firearms and ammunition.

78.     Defendant Governor Baker's COVID-19 Orders, as well as the orders of (at least) Defendant Chief Dupre, Defendant Chief Rufo, Defendant Chief Pelletier and Defendant Chief Sonnabend, require all dealers in firearms and ammunition to close to the public, and accordingly stand as a ban on purchasing firearms and ammunition. Defendant Commissioner Bharel stands ready, willing and able to enforce the COVID-19 Orders against the Plaintiffs, and Defendant Commissioner Gagnon has undertaken to enforce the COVID-19 Orders against the Plaintiffs.

79.     The Plaintiffs, and the Plaintiffs' members and customers, reasonably fear that the Defendants will enforce the COVID-19 Orders and their related policies, customs, and practices against them.

80.     The COVID-19 Orders, and Defendants' policies, practices, customs and enforcement actions related to them, have and continue to directly or effectively prohibit the Plaintiffs, the members and customers of the Plaintiffs and other similarly situated members of the public from purchasing or selling firearms, thus causing injury and damage that is actionable under 42 U.S.C. § 1983.

### PRAYER

WHEREFORE, Plaintiffs pray for the following relief:

i.     A declaratory judgment that COVID-19 Executive Order No. 13 and COVID-19 Executive Order No. 19, and Defendants' policies, practices, customs and related enforcement actions, individually and/or collectively prohibit the purchase, sale, and transfer of firearms and thus violate the Second and Fourteenth Amendments;

ii.      a preliminary and/or permanent injunction restraining Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them who receive notice of the injunction, from enforcing COVID-19 Executive Order No. 13 and COVID-19 Executive Order No. 19, and Defendants' policies, practices, and customs, that individually and/or collectively prohibit the purchase, sale and transfer of firearms;

iii.     actual or nominal damages against Defendants Albert F. Dupre, Robert F. Rufo, Keith A. Pelletier, and Matthew Sonnabend;

iv.      such other and further relief, including injunctive relief, against all Defendants, as may be necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable; and

v.       attorney's fees and costs (including incidental costs such as expert witness fees) pursuant to 42 U.S.C. § 1988 and any other applicable law.


Dated:  April 9, 2020

Respectfully submitted,

THE PLAINTIFFS,

By their attorneys,


 /s/ J. Steven Foley
J. Steven Foley
BBO # 685741
Law Office of J. Steven Foley
100 Pleasant Street #100
Worcester, MA 01609
Tel: 508.754.1041
Fax: 508.739.4051
JSteven@attorneyfoley.com

David D. Jensen, Esq.
Motion for Admission *Pro Hac Vice* Forthcoming
David Jensen & Associates
33 Henry Street
Beacon, New York 12508
Tel:  212.380.6615
Fax:  917.591.1318
david@djensenpllc.com

Jason A. Guida
BBO # 667252
Principe & Strasnick, P.C.
17 Lark Avenue
Saugus, MA 01960
Tel: 617.383.4652
Fax: 781.233.9192
jason@lawguida.com

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non-registered participants on April 8, 2020.

/s/ J. Steven Foley
J. Steven Foley