**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **MICHAEL MCCARTHY, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **No. 1:20-cv-10701-DPW** |
| **-against-** ) | |
| ) | |
| **CHARLES D. BAKER, in his Official** ) | |
| **Capacity as Governor of the** ) | |
| **Commonwealth of Massachusetts, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

<u>**PROPOSED BRIEF OF THE NATIONAL SHOOTING SPORTS FOUNDATION, INC.
AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**</u>

CAMPBELL CONROY & O'NEIL, P.C.
James M. Campbell (BBO #541882)
Jacob J. Lantry (BBO #690452)
Campbell Conroy & O'Neil, P.C.
One Constitution Wharf, Suite 310
Boston, MA 02129
(617) 241-3000
jmcambpell@campbell-trial-lawyers.com
jlantry@campbell-trial-lawyers.com

BRADLEY ARANT BOULT CUMMINGS LLP
John Parker Sweeney*
James W. Porter III*
Connor M. Blair*
Bradley Arant Boult Cummings LLP
1615 L Street, N.W., Suite 1350
Washington, DC 20036
(202) 719-8216
jsweeney@bradley.com
jporter@bradley.com
cblair@bradley.com
*_Pro hac vice_ application being filed

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ 3

INTEREST OF AMICUS ................................................................................................... 6

INTRODUCTION .............................................................................................................. 7

ARGUMENT ..................................................................................................................... 9

    I.   Massachusetts may not ban firearm sales by forcing firearm retailers to close.................. 9

        A.  Firearm retailers are essential businesses under the COVID-19 Orders...................... 10

        B.  The Second Amendment prohibits Massachusetts from banning firearm sales. ........ 13

CONCLUSION ................................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Adams & Boyle, P.C. v. Slatery*,
　No. 3:15-CV-00705, 2020 WL 1905147 (M.D. Tenn. Apr. 17, 2020)............................ 19

*Ass'n of Firearms Retailers v. City of Chicago*,
　961 F. Supp. 2d 928 (N.D. Ill. 2014) .............................................................. 13

*Bateman v. Perdue*,
　881 F. Supp. 2d 709 (E.D.N.C. 2012).............................................................. 16

*Carey v. Population Servs., Int'l*,
　431 U.S. 678 (1977)................................................................................... 14

*Civil Rights Defense Firm, P.C. v. Wolf*,
　-- A.3d --, 2020 WL 1329008 (Pa. Mar. 22, 2020)............................................ 16

*District of Columbia v. Heller*,
　554 U.S. 570 (2008)................................................................... 11, 13, 15, 17

*Ezell v. City of Chicago*,
　651 F.3d 684 (7th Cir. 2011) ....................................................................... 13

*First Baptist Church v. Kelly*,
　No. 20-1102-JWB, 2020 WL 1910021 (D. Kan. Apr. 18, 2020) ..................... 18

*In re Abbott*,
　No. 20-50296, 2020 WL 1911216 (5th Cir. Apr. 20, 2020)............................. 19

*Jackson v. City & County of San Francisco*,
　135 S. Ct. 2799 (2015)................................................................................. 19

*Jacobson v. Commonwealth of Massachusetts*,
　197 U.S. 11 (1905)........................................................................... 17, 18, 19

*Lovell v. City of Griffin. Ga.*,
　303 U.S. 444 (1938).................................................................................... 15

*McDonald v. City of Chicago, Ill.*,
　561 U.S. 742 (2010)............................................................................. 17, 19

*On Fire Christian Ctr., Inc. v. Fischer*,
　No. 3:20-CV-264-JRW, 2020 WL 1820249 (W.D. Ky. Apr. 11, 2020) ........... 18

*Phillips v. City of New York*,
　775 F.3d 538 (2d Cir. 2015)......................................................................... 17

*Planned Parenthood of Wis. v. Doyle*,
　　162 F.3d 463 (7th Cir. 1998) ................................................... 14

*Radich v. Guerrero*,
　　No. 1:14–CV–00020, 2016 WL 1212437 (D.N. Mar. I. Mar. 28, 2016)......................... 14

*Robinson v. Marshall*,
　　No. 2:19CV365-MHT, 2020 WL 1847128 (M.D. Ala. Apr. 12, 2020) ......................... 19

*Silvester v. Becerra*,
　　138 S. Ct. 945 (2018).................................................................. 19

*Teixeira v. County of Alameda*,
　　873 F.3d 670 (9th Cir. 2017) ................................................. 14, 15

*Teixeira v. Cty. of Alameda*,
　　822 F.3d 1047 (9th Cir. 2016) ...................................................... 15

*United States v. Marzzarella*,
　　614 F.3d 85 (3d Cir. 2010)............................................................. 13

## Other Authorities

Alex Napoliello, *Gun shops are now considered essential businesses in N.J., Gov. Murphy says*,
　　NJ.com (Mar. 30, 2020), https://www.nj.com/coronavirus/2020/03/gun-shops-are-now-
　　considered-essential-businesses-in-nj-gov-murphy-says.html.. ....................................... 16

Associated Press Wire Content, *Wolf Reopens Gun Shops, Orders More Residents to Stay Home*,
　　U.S. News (March 24, 2020), https://www.usnews.com/news/best-
　　states/pennsylvania/articles/2020-03-24/corrections-officers-push-state-to-stop-inmate-
　　transfers.......................................................................................... 16

Christopher C. Krebs, Director, Cybersecurity & Infrastructure Security Agency, *Advisory
　　Memorandum On Identification of Essential Critical Infrastructure Workers During
　　COVID-19 Response 6*, U.S. DEP'T OF HOMELAND SECURITY (Mar. 28, 2020),
　　https://bit.ly/2UWevY8.......................................................................... 8

David B. Kopel, *Does the Second Amendment Protect Firearms Commerce?*, 127 Harv. L. Rev.
　　F. 230, 234–35 (2014)............................................................................ 15

Deborah Baker, *So Far, More Than 300 Prisoners Released Due To COVID-19 Under Mass.
　　High Court's Ruling*, WBUR (Apr. 14, 2020),
　　https://www.wbur.org/news/2020/04/14/inmates-jails-prisons-sjc-special-master-report 11

Laws of Va., Feb., 1676–77, Va. Stat. at Large, 2 Hening 403 .................................... 15

Lisa Marie Pane, *Background checks for guns surge during coronavirus pandemic*, USA TODAY (Apr. 2, 2020), https://www.usatoday.com/story/money/2020/04/02/coronavirus-gun-background-checks-surge-during-crisis/5112252002/ .......................................................................... 12

Matt Murphy, *Baker Reversed Course on Gun Shop, Range Openings*, The Sun, Apr. 2, 2020, https://bit.ly/2REgGin ........................................................................... 9

NSSF, *Alabama Issues "Stay at Home" Order – Firearm Industry Deemed "Essential"* (Apr. 3, 2020), http://www2.nssf.org/l/127421/2020-04-03/3zld9b ................................................. 8

NSSF, *Georgia Governor Issues Statewide Order – Firearm Industry Deemed "Critical Infrastructure"* (Apr. 2, 2020), http://www2.nssf.org/l/127421/2020-04-02/3z132b ........ 8

Thomas Jefferson, 3 Writings 558 (H.A. Washington ed., 1853) ................................................. 15

U.S. Dept. of Justice, *Guidance Letter to ATF Federal Firearms Licensees* (Apr. 10, 2020), https://bit.ly/2Vop8mC ........................................................................... 8, 12

Zusha Elinson and Ben Chapman, *Coronavirus Pandemic Changes Policing, Including Fewer Arrests*, The Wall Street Journal, (March 27, 2020), https://www.wsj.com/articles/coronavirus-pandemic-changes-policing-including-fewer-arrests-11585301402 ........................................................................... 11

**Rules**

18 U.S.C. 921(a)(34) ........................................................................... 12

18 U.S.C. § 922(z) ........................................................................... 12

18 U.S.C. § 923(d)(1)(g) ........................................................................... 12

Exhibit A to Mass. Exec. Order No. 13 (March 23, 2020), https://tinyurl.com/vfvjq8s ............... 7

Exhibit A to Mass. Exec. Order No. 21 (March 31, 2020), https://tinyurl.com/ta7qylx ...... 7, 8, 10

Mass. Exec. Order No. 13 (March 23, 2020), https://tinyurl.com/rog8pj7 .................................... 7

Mass. Exec. Order No. 21 (March 31, 2020), https://tinyurl.com/ugg42dd .................................. 7

Mass. Gen. Laws ch. 140, § 131K ........................................................................... 12

## INTEREST OF AMICUS

The National Shooting Sports Foundation, Inc. ("NSSF") submits this brief in support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction ("Plaintiffs' Motion"). NSSF is the national trade association for the firearm, ammunition, and hunting and shooting sports industry. NSSF's membership includes over 9,000 federally licensed firearm manufacturers, distributors and retailers; companies manufacturing, distributing and selling shooting and hunting related goods and services; sportsmen's organizations; public and private shooting ranges; gun clubs; and endemic media. Many NSSF members are based in and/or conduct business in Massachusetts.

NSSF supports Plaintiffs' Motion because Defendants are using Massachusetts' COVID-19 Orders to prohibit NSSF members from conducting their essential, constitutionally-protected business of selling firearms and ammunition to law-abiding, responsible citizens of Massachusetts. As the federal COVID-19 policies and those of all but a few other states confirm, firearm retailers are essential businesses, and this Court should declare them so under Massachusetts' COVID-19 Orders. Firearm retailers provide goods and services that are essential to the maintenance of public safety and self-defense. Firearm retailers provide law enforcement agencies with the tools they need to carry out their vital public safety mission during times of emergency. Firearm retailers also are critically essential to the exercise by law-abiding, responsible citizens of their constitutionally-protected, natural right to self-defense. That right is never more important than during this COVID-19 emergency because law enforcement response may not be timely due to under-staffing and added duties. There is also legitimate concern among the law-abiding that criminal offenders are being released from custody or may be less likely to be taken into custody in the first place.

NSSF, on behalf of its members and their customers, asks this Court to declare that the lawful sale of firearms and ammunition by licensed firearm retailers is an essential business under

the COVID-19 Orders and, in any event, that the Second Amendment protects the right of licensed firearm retailers to sell firearms and ammunition products to customers exercising their Second Amendment right to acquire these products for lawful purposes.

## INTRODUCTION

To promote social distancing and help Massachusetts slow the spread of COVID-19, Governor Baker has ordered all non-essential businesses to close pending resolution of the COVID-19 outbreak.[1] Rather than define or list essential businesses, the COVID-19 Orders instead provide illustrative examples of essential businesses that may remain open. *See* Exhibit A to Mass. Exec. Order No. 13 (March 31, 2020). These illustrative examples include businesses offering services that are "essential to promote the public health and welfare of the Commonwealth," including, by way of examples, grocery stores, liquor stores, sawmills, and cabinet stores, among many retail stores, and even workers in places of worship. *See* Mass. Exec. Order No. 21; Exhibit A to Mass. Exec. Order No. 21 (March 31, 2020). The illustrative list of essential businesses does not specifically include firearm retailers, but does include businesses offering services that are essential to "law enforcement, public safety, and other first responders," including "[w]orkers supporting the operation of firearm or ammunition product manufacturers, importers, and distributors," and "[w]orkers supporting the manufacturing of safety equipment and uniforms for law enforcement, public safety personnel, and first responders," and "private security." Exhibit A to Mass. Exec. Order No. 21 (March 31, 2020) at 2.

---

[1] Governor Baker issued COVID-19 Order No. 13 on March 23, 2020. *See* Mass. Exec. Order No. 13 (March 23, 2020), https://tinyurl.com/rog8pj7. He issued COVID-19 Order No. 21 on March 31, which extended COVID-19 Order No. 13 to March 23, 2020. *See* Mass. Exec. Order No. 21 (March 31, 2020), https://tinyurl.com/ugg42dd. Exhibit A to these orders provides illustrative examples of essential businesses. *See* Exhibit A to Mass. Exec. Order No. 13 (March 23, 2020), https://tinyurl.com/vfvjq8s; Exhibit A to Mass. Exec. Order No. 21 (March 31, 2020), https://tinyurl.com/ta7qylx. COVID-19 Order Nos. 13 and 19 as well as the updated March 31, 2020 Exhibit A are referred to collectively as the "COVID-19 Orders."

The COVID-19 Orders' illustrative list is "based on federal guidance." It references and is nearly identical to the Department of Homeland Security's Federal Cybersecurity and Infrastructure Security Agency's ("DHS") March 28, 2020 Guidance. The COVID-19 Orders' and DHS's illustrative lists substantively mirror each other with one exception: DHS expressly includes firearm retailers. *See* Christopher C. Krebs, Director, *Cybersecurity & Infrastructure Security Agency, Advisory Memorandum On Identification of Essential Critical Infrastructure Workers During COVID-19 Response* 6, U.S. DEP'T OF HOMELAND SECURITY (Mar. 28, 2020), https://bit.ly/2UWevY8. Moreover, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") has determined that firearm retailers may continue to conduct business during this time in conformity with recommended health precautions. U.S. Dept. of Justice, *Guidance Letter to ATF Federal Firearms Licensees* (Apr. 10, 2020), https://bit.ly/2Vop8mC. In keeping with the ATF's guidance, Massachusetts firearm retailers have demonstrated their ability to conform to the social distancing and sanitation guidelines. Plaintiffs Troy City Tactical, Precision Point Firearms, Shooting Supply, and Cape Cod Gun Works, for instance, routinely cleaned doorknobs and countertops, enforced social distancing, limited the number of people simultaneously in the store, and did "appointment only" retail sales. *See* Complaint, Dkt. 1, at ¶ 51. And NSSF has repeatedly urged firearm retailers to "closely follow CDC guidelines, practice social distancing and take precautions to protect the health and safety of their employees and customers." *See, e.g.*, NSSF, *Alabama Issues "Stay at Home" Order – Firearm Industry Deemed "Essential"* (Apr. 3, 2020), http://www2.nssf.org/l/127421/2020-04-03/3zld9b; NSSF, *Georgia Governor Issues Statewide Order – Firearm Industry Deemed "Critical Infrastructure"* (Apr. 2, 2020), http://www2.nssf.org/l/127421/2020-04-02/3z132b.

The COVID-19 Orders' illustrative examples once expressly included firearm retailers.[2] But Governor Baker revised the illustrative examples by removing firearm retailers after Attorney General Maura Healey voiced objections on Twitter and after a telephone call with House Speaker Robert DeLeo. *See* Plaintiffs' Motion, at 6. Governor Baker provided no explanation for this revision, which was the only change made to the list of essential businesses.

The revised version of the COVID-19 Orders' illustrative examples neither expressly includes nor excludes firearm retailers. Nevertheless, Defendants have relied upon the COVID-19 Orders to shut down firearm retailers, completely prohibiting the lawful sale of firearms and ammunition. Seizing on Governor Baker's revision, the Commissioner of the Department of Criminal Justice Information Services issued a directive to all Chiefs of Police and firearm licensing personnel that firearm retailers are not essential. *See* Complaint, Dkt. 1, at ¶¶ 45-46. He also threatened the enforcement of COVID-19 Orders through targeted audits of firearm sales by firearm dealers. *Id.* at ¶ 46. Plaintiffs Troy City Tactical, Precision Point Firearms, Shooting Supply, and Cape Cod Gun Works have been advised by various public officials that they must close or risk the loss of their license to sell firearms, as well as criminal prosecution. *Id.* at ¶¶ 52-55.

## ARGUMENT

### I. Massachusetts may not ban firearm sales by forcing firearm retailers to close.

Firearm retailers are essential businesses and should be declared as such under the COVID-19 Orders. Regardless, the right of law-abiding, responsible citizens to purchase and the firearm retailers' right to sell arms is protected by the Second Amendment. The Second Amendment prohibits Defendants from closing Massachusetts firearm retailers because doing so denies law-

---

[2] *See* Matt Murphy, *Baker Reversed Course on Gun Shop, Range Openings*, The Sun, Apr. 2, 2020, https://bit.ly/2REgGin.

abiding, responsible citizens the ability to lawfully acquire firearms and ammunition for lawful purposes including self-protection. This Court should permit firearm retailers to remain open during the COVID-19 emergency.

**A. Firearm retailers are essential businesses under the COVID-19 Orders.**

The COVID-19 Orders make clear that a business is essential if it offers services that are essential to "law enforcement, public safety, and other first responders." *See* Exhibit A to Mass. Exec. Order No. 21. Governor Baker's illustrative list specifies that these services include "[w]orkers supporting the operation of firearm or ammunition product manufacturers, importers, and distributors," "[w]orkers supporting the manufacturing of safety equipment and uniforms for law enforcement, public safety personnel, and first responders," and "private security." *See* Exhibit A to Mass. Exec. Order No. 21. The federal guidance upon which the COVID-19 Orders are based acknowledges that firearm retailers are essential to public safety during the current pandemic. Like the COVID-19 Orders, DHS's guidance expressly deems firearm retailers essential because they support "law enforcement, public safety, and other first responders." Firearm retailers should be essential businesses under the COVID-19 Orders, as they are expressly recognized under the federal guidance.

Firearm retailers are essential to public safety, providing the firearms and ammunition that are essential to law enforcement as well as citizens for self-defense. Firearm retailers are essential to law enforcement because they provide firearms and ammunition to law enforcement and other public safety personnel, including private security, that are used to protect Massachusetts' citizens. Most law enforcement agencies and their officers obtain firearms and ammunition from their local federally licensed firearm retailer. *See* NSSF Letter to Department of Homeland Security (March 20, 2020), p. 2, attached hereto as <u>Exhibit A</u>. Law enforcement often turns to firearm retailers in times of civil unrest, which may occur in Massachusetts during the COVID-19 crisis. *Id.* For

instance, during the Los Angeles riots in 1992, local law enforcement relied on retailers to obtain more effective firearms to restore the peace and protect residents and local businesses. *Id.* It is essential that law enforcement have ready access to the firearms and ammunition they need to serve, protect, and defend Massachusetts' communities.

Firearm retailers are also essential to citizen self-defense, which is essential to public safety. In Massachusetts, firearm retailers are the sole provider of firearms to Massachusetts citizens. *See* Plaintiffs' Motion, at 2-3. Firearms are essential for law-abiding, responsible citizens to defend themselves, their families, and their homes--especially during this emergency. The effects of the COVID-19 pandemic may reduce the number of law enforcement personnel available to respond and add significantly to the work of law enforcement. The combined impact may well reduce the ability and timeliness of law enforcement to respond to criminal activity. Moreover, convicted criminals are being released from custody and criminal offenders may be less likely to be taken into custody in the first place.[3] It is for times like these that the Second Amendment protects against government infringement upon the natural right to self-defense: "Americans understood the 'right of self-preservation 'as permitting a citizen to 'repe[l] force by forc 'when the intervention of society in his behalf, may be too late to prevent an injury.'" *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008) (quoting 1 Blackstone's Commentaries 145–146, n. 42 (1803)). Law-abiding, responsible citizens around the country are choosing to purchase firearms, some for the first time, to defend themselves, their loved ones, and their homes in this uncertain time.[4]

---

[3] *See* Deborah Baker, So Far, More Than 300 Prisoners Released Due To COVID-19 Under Mass. High Court's Ruling, WBUR (Apr. 14, 2020), https://www.wbur.org/news/2020/04/14/inmates-jails-prisons-sjc-special-master-report; Zusha Elinson and Ben Chapman, Coronavirus Pandemic Changes Policing, Including Fewer Arrests, The Wall Street Journal, (March 27, 2020), https://www.wsj.com/articles/coronavirus-pandemic-changes-policing-including-fewer-arrests-11585301402.

[4] Background checks required to buy firearms have spiked to record numbers in the past month, fueled by Americans worried about their safety during the coronavirus crisis; the FBI conducted 3.7 million background checks for firearm purchases in March, the most ever recorded in a single month by the bureau and over one million more than March

Firearm retailers are critical to ensuring Massachusetts citizens practice firearm safety. Firearm retailers provide expert training on how to safely handle and responsibly store firearms. They also provide the means to do so by offering secure gun storage and safety devices, which are defined to include storage units such as safes as well as items that "prevent the firearm from being operated without first deactivating the device" or "prevent the operation of the firearm by anyone not having access to the device." *See* 18 U.S.C. § 921(a)(34). Firearm retailers are required to provide a secure gun storage or safety device when selling or transferring a handgun to a consumer. 18 USC § 922(z); Mass. Gen. Laws ch. 140, § 131K. Furthermore, firearms retailers must certify to the ATF that they stock and provide such devices on their licensing application and renewal. 18 U.S.C. § 923(d)(1)(g).

Firearm retailers remaining open and conducting business present no special health concerns different in kind or degree from any other business the state has deemed "essential" like liquor stores. The ATF has determined that Federal Firearms Licensees may continue to conduct business during this time in conformity with recommended health precautions. U.S. Dept. of Justice, *Guidance Letter to ATF Federal Firearms Licensees* (Apr. 10, 2020). And nearly every state to consider whether firearm retailers are essential during the COVID-19 pandemic has determined that they are. *See* Plaintiffs' Motion, at 6-7 (collecting states).

Defendants' forced closure of firearm retailers is wholly unrelated to Massachusetts' ability to timely and effectively respond to the COVID-19 emergency. Firearm retailers do not use medical supplies or hospital space. Nor are they incapable of following the social distancing and sanitation guidelines in their stores. Governor Baker's inclusion of firearm retailers in the list of

---

2019. *See* Lisa Marie Pane, *Background checks for guns surge during coronavirus pandemic*, USA TODAY (Apr. 2, 2020), https://www.usatoday.com/story/money/2020/04/02/coronavirus-gun-background-checks-surge-during-crisis/5112252002/. Firearm retailers reported that the overwhelming majority of buyers over the past month have been first-time gun owners. *See id*.

essential businesses acknowledged that firearm retailers are essential and that they can adhere to social distancing and sanitation guidelines. The later arbitrary deletion of firearm retailers from that list did not provide any explanation or finding that they could not adhere to social distancing and sanitation guidelines. As the ATF has stated, and as the firearm retailer Plaintiffs have demonstrated, firearm retailers are just as capable as any other business that Massachusetts deems essential—most of which are not critical to the exercise of a constitutionally-protected right that is an essential component of public safety. Simply put, it is not rational to permit liquor stores, marijuana dispensaries and even garden centers to operate while closing firearm retailers.

NSSF respectfully requests this Court declare that firearm retailers are an essential business as that term is used in the COVID-19 Orders.

### B. The Second Amendment prohibits Massachusetts from banning firearm sales.

The COVID-19 Orders are unconstitutional to the extent they force firearm retailers to close. The Second Amendment prohibits Defendants from closing firearm retailers because the Second Amendment protects—and thus prohibits infringement of—the citizen's right to purchase and the retailers' right to sell arms. Defendants' actions closing firearm retailers effects a statewide ban on acquisitions and sales of firearms because only licensed firearm retailers may sell firearms in Massachusetts, and Massachusetts citizens may not acquire arms outside Massachusetts. *See* Plaintiffs' Motion, at 2-3. This is beyond the power of state government even in an emergency.

The right to purchase and the right to sell arms are concomitant to the right to keep and bear arms enshrined in the Second Amendment. The United States Courts of Appeals for the Third, Seventh, and Ninth Circuits—the only circuit courts to consider the issue—have confirmed this principle. The Third Circuit, in *United States v. Marzzarella*, 614 F.3d 85, 92 n. 8 (3d Cir. 2010), cautioned that a ban on firearm sales would be unconstitutional: "If there were somehow a categorical exception for [commercial] restrictions, it would follow that there would be no

constitutional defect in prohibiting the commercial sale of firearms. Such a result would be untenable under *Heller*." The Seventh Circuit, in *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011), held that the right to possess firearms entails the "corresponding right to acquire and maintain proficiency . . . ." *See also Ass'n of Firearms Retailers v. City of Chicago*, 961 F. Supp. 2d 928, 930 (N.D. Ill. 2014) ("[T]he right to keep and bear arms for self-defense under the Second Amendment . . . must also include the right to acquire a firearm . . . ."); *Radich v. Guerrero*, No. 1:14–CV–00020, 2016 WL 1212437, at *7 (D.N. Mar. I. Mar. 28, 2016) ("If the Second Amendment individual right to keep and bear a handgun for self-defense is to have any meaning, it must protect . . . the complimentary right to sell handguns.").

The Ninth Circuit in *Teixeira v. County of Alameda*, 873 F.3d 670, 682 (9th Cir. 2017) (en banc), echoed this conclusion: "[c]ommerce in firearms is a necessary prerequisite to keeping and possessing arms for self-defense . . . ." *Teixeira* also specified that commerce in firearms includes both the right to acquire and to sell. *See id.* At issue in *Teixeira* was a zoning ordinance that prohibited a firearm dealer from being located within 500 feet of certain identified entities. *Id.* at 673-76. Because the zoning ordinance affected only one "particular proprietor," the Ninth Circuit concluded that it was "wholly detached from any customer's ability to acquire firearms" generally and therefore did not affect the established right to acquire a firearm. *Id.* at 682. Rather than impacting only one firearm retailer, the COVID-19 Orders prohibit *all* Massachusetts firearm retailers from selling firearms. Because Massachusetts citizens may acquire a firearm only by doing so in person at a licensed firearm retailer, Defendants' enforcement of the COVID-19 Orders effects a complete ban on firearm sales, destroying the exercise of the right; it is not a mere burden incidental on the exercise of the right.

Where the exercise of a right requires the participation of other actors, regulating those other actors out of existence necessarily infringes on the constitutional rights of the person seeking to exercise those rights. *See Carey v. Population Servs., Int'l*, 431 U.S. 678, 689 (1977) (holding that "[l]imiting the distribution of nonprescription contraceptives to licensed pharmacists clearly imposes a significant burden on the right of the individuals to use contraceptives"); *Planned Parenthood of Wis. v. Doyle*, 162 F.3d 463, 471 (7th Cir. 1998) (holding that "[t]he constitutional right to an abortion carries with it the right to perform medical procedures that many people find distasteful or worse"); *see also Lovell v. City of Griffin. Ga.*, 303 U.S. 444, 447, 452 (1938) (striking down an ordinance criminalizing the distribution of certain literature because prohibiting distribution of constitutionally protected speech amounts to "censorship in its baldest form" that renders the First Amendment protection meaningless).

The right to sell arms is embedded in the Second Amendment's text, history, and tradition. The text codifies the pre-existing right of law-abiding, responsible citizens to acquire arms for lawful purposes. *Heller*, 554 U.S. at 576–603. History and tradition confirm that the Second Amendment protects the right to sell arms. *See Teixeira*, 873 F.3d at 693 (J. Tallman, concurring in part and dissenting in part) ("History supports the view that the Second Amendment must contemplate the right to sell firearms if citizens are to enjoy the core, fundamental right to own and possess them in their homes."). Thomas Jefferson in 1793 recognized the history and tradition supporting the right to sell, writing that "[o]ur citizens have always been free to make, vend, and export arms." Thomas Jefferson, 3 Writings 558 (H.A. Washington ed., 1853). For instance, in colonial Virginia, all persons had "liberty to sell armes and ammunition to any of his majesties loyall subjects inhabiting this colony." Laws of Va., Feb., 1676–77, Va. Stat. at Large, 2 Hening 403 (cited in *Teixeira v. Cty. of Alameda*, 822 F.3d 1047, 1054 (9th Cir. 2016)), on reh'g en banc,

873 F.3d 670 (9th Cir. 2017). "In terms of the original meaning of the Second Amendment, the right to engage in firearms commerce is clear." David B. Kopel, *Does the Second Amendment Protect Firearms Commerce?*, 127 Harv. L. Rev. F. 230, 234–35 (2014).

History and tradition also confirm that the Second Amendment protects the right to sell during an emergency, including the current COVID-19 pandemic. It is therefore not surprising that the federal government and all but a very few state governments have not banned firearm sales during the current pandemic but instead have expressly protected the Second Amendment rights of both sellers and buyers.

In *Civil Rights Defense Firm, P.C. v. Wolf*, -- A.3d --, 2020 WL 1329008 (Pa. Mar. 22, 2020) (per curiam), the Pennsylvania Supreme Court dismissed as moot an effort to block the application of Pennsylvania's emergency closure order to attorneys' offices because the Governor reversed course and determined that they may remain open. Three justices filed a concurring and dissenting opinion, declaring that the Application for Emergency Relief had brought "to the Court's attention a deprivation of a constitutional right" because the emergency closure order made "no allowance for any continued operation of licensed firearm dealers." *Id*. at *1. The Justices went on to conclude: "In light of the regulatory framework attending the sale and transfer of firearms, the inability of licensed firearm dealers to conduct any physical operations amounts to a complete prohibition upon the retail sale of firearms—an activity in which the citizens of this Commonwealth recently have been engaging on a large scale, and one guaranteed by [] the United States Constitution. . . ." *Id*. "Unlike the vast majority of other items, the sale and transfer of firearms sold at retail cannot be completed merely by way of telecommunication and mailing under existing law." *Id*. at *2. Pennsylvania subsequently changed the order to allow firearm retailers to

remain open.[5] New Jersey, too, revised its COVID-19 order to allow firearm retailers to remain open after litigation was initiated.[6] Similarly, in *Bateman v. Perdue*, 881 F. Supp. 2d 709, 712 (E.D.N.C. 2012), the Eastern District of North Carolina held that a North Carolina statute restricting the sale of firearms during declared states of emergency was unconstitutional.

Because the Second Amendment protects the right to sell arms, Massachusetts cannot ban this right by forcing firearm retailers to close. Such a ban is per se unconstitutional. No interest balancing test is necessary, or even appropriate, because the infringement of a right protected by the Second Amendment is a policy choice the Constitution takes "off the table." *See Heller*, 554 U.S. at 616, 628, 636 (holding that a ban on acquiring protected arms was not only per se unconstitutional, but it would have been invalid "[u]nder any of the standards of scrutiny that we have applied to enumerated constitutional rights").

Defendants cannot use the current public health crisis as an excuse to suspend even temporarily the Second Amendment right to sell. *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 29 (1905), held that a state may reasonably restrict constitutional rights "as the safety of the general public may demand." But *Jacobson* provides that states may implement emergency measures that curtail constitutional rights only so long as the measures have at least some "real or substantial relation" to the public health crisis and are not "beyond all question, a plain, palpable invasion of rights secured by the fundamental law . . . ." *Id*. at 31. Importantly, *Jacobson* did not consider rights that, as of the time it was decided, "had not yet been held to bind the state." *Phillips v. City of New York*, 775 F.3d 538, 543 (2d Cir. 2015) ("*Jacobson* did not address the free exercise

---

[5] Associated Press Wire Content, *Wolf Reopens Gun Shops, Orders More Residents to Stay Home*, U.S. News (March 24, 2020), https://www.usnews.com/news/best-states/pennsylvania/articles/2020-03-24/corrections-officers-push-state-to-stop-inmate-transfers

[6] *See* Alex Napoliello, *Gun shops are now considered essential businesses in N.J., Gov. Murphy says*, NJ.COM (Mar. 30, 2020), https://www.nj.com/coronavirus/2020/03/gun-shops-are-now-considered-essential-businesses-in-nj-gov-murphy-says.html.

of religion because, at the time it was decided, the Free Exercise Clause of the First Amendment had not yet been held to bind the states."). Accordingly, the Court should be circumspect about the precedential authority of *Jacobson* in light of the progressive advance of constitutional rights in this country, including Second Amendment recognized in *Heller* and held binding on the states in *McDonald*.

In any event, Defendants' prohibition of firearm sales in Massachusetts under the COVID-19 Orders fails both *Jacobson* prongs. First, there is no real or substantial relation between closing firearm retailers and Massachusetts' ability to respond to the COVID-19 crisis. Firearm retailers are no different than the long list of other businesses that have been allowed to remain open. The inescapable conclusion is that Defendants are using COVID-19 as an excuse to invade the Second Amendment rights of Massachusetts citizens.

In this respect, the COVID-19 Orders are substantially similar to Louisville, Kentucky's and the state of Kansas' bans on congregating for religious services that were recently ruled unconstitutional. Citing *Jacobson*, the District Court for the Western District of Kentucky recently held that the City of Louisville cannot ban drive-in religious gatherings because such a ban does not relate to preventing the spread of COVID-19. *On Fire Christian Ctr., Inc. v. Fischer*, No. 3:20-CV-264-JRW, 2020 WL 1820249, at *6, 8 (W.D. Ky. Apr. 11, 2020). The Court found: "Louisville has targeted religious worship by prohibiting drive-in church services, while not prohibiting a multitude of other non-religious drive-ins and drive-throughs – including, for example, drive-through liquor stores. Moreover, Louisville has not prohibited parking in parking lots more broadly – including, again, the parking lots of liquor stores." *Id*. at *6. The court also found that drive-in churchgoers in Louisville can keep "social distancing in accordance with CDC guidelines." *Id*. at *7. So, too, can NSSF's retailer members, according to both the retailer Plaintiffs' declarations

and the ATF's determination. The District Court for the District of Kansas likewise held that *Jacobson* does not provide for a ban on the exercise of a constitutional right when the ban does not relate to the public health crisis at issue but is instead is "an arbitrary distinction," as evidenced by the other, similar types of activities that are not banned by the regulation. *First Baptist Church v. Kelly*, No. 20-1102-JWB, 2020 WL 1910021, at *7-8 (D. Kan. Apr. 18, 2020). The COVID-19 Orders are unconstitutional for these same reasons. Because firearm retailers can operate safely and within the COVID-19 Orders' social distancing and sanitation guidelines, they must be allowed to exercise their right to sell arms.

While *Jacobson* may allow the state to reasonably restrict some rights, it does not allow the state to ban the exercise of the right entirely, or to engage in "a plain, palpable invasion of rights secured by the fundamental law," as Massachusetts has done here. The COVID-19 Orders, in direct contravention of *Jacobson*, eliminate retailers' right to sell protected arms, which not only completely ban the retailers' right to sell but also the law-abiding citizens' right to acquire. In this respect, the COVID-19 Orders are akin to the abortion bans in Alabama and Tennessee that were recently ruled to be unconstitutional under *Jacobson* because they "effect[ed] a prohibition on abortion[,]" "a fundamental right." *Robinson v. Marshall*, No. 2:19CV365-MHT, 2020 WL 1847128, at *9 (M.D. Ala. Apr. 12, 2020); *Adams & Boyle, P.C. v. Slatery*, No. 3:15-CV-00705, 2020 WL 1905147, at *5 (M.D. Tenn. Apr. 17, 2020); *see also In re Abbott*, No. 20-50296, 2020 WL 1911216, at *12, 16-17 (5th Cir. Apr. 20, 2020) (holding that limited abortion restrictions that are related to Texas' COVID-19 response are acceptable under *Jacobson* because they do not effect a ban, but refusing to reverse the district court's injunction allowing certain abortions).

If emergency bans on church services and abortions cannot stand then neither can a total ban on firearm sales. The Second Amendment is not "a second-class right, subject to an entirely

different body of rules than the other Bill of Rights guarantees that we have held to be incorporated into the Due Process Clause." *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 780 (2010); *see also Jackson v. City & County of San Francisco*, 135 S. Ct. 2799, 2799-2800 (2015) (Thomas, J., dissenting from the denial of cert.) ("Second Amendment rights are no less protected by our Constitution than other rights enumerated in that document"); *Silvester v. Becerra*, 138 S. Ct. 945, 952 (2018) (Thomas, J., dissenting from the denial of cert.) ("The right to keep and bear arms [should not be] this Court's constitutional orphan."). Defendants' enforcement of the COVID-19 Orders unconstitutionally infringes upon the exercise of the fundamental Second Amendment right by prohibiting the purchase and sell of firearms.

## CONCLUSION

For the foregoing reasons, this Court should declare that firearm retailers are essential businesses under the COVID-19 Orders and, in any event, the Second Amendment protects the right to sell firearms and ammunition and Defendants cannot prohibit this essential business.

**NATIONAL SHOOTING SPORTS FOUNDATION,**

By its Attorneys,

CAMPBELL CONROY & O'NEIL, P.C.

*/s/ Jacob J. Lantry*
James M. Campbell (BBO #541882)
Jacob J. Lantry (BBO #690452)
Campbell Conroy & O'Neil, P.C.
One Constitution Wharf, Suite 310
Boston, MA 02129
(617) 241-3000
jmcambpell@campbell-trial-lawyers.com
jlantry@campbell-trial-lawyers.com

BRADLEY ARANT BOULT CUMMINGS LLP

John Parker Sweeney*
James W. Porter III*
Connor M. Blair*
Bradley Arant Boult Cummings LLP
1615 L Street, N.W., Suite 1350
Washington, DC 20036
(202) 719-8216
jsweeney@bradley.com
jporter@bradley.com

*Pro hac vice* application forthcoming

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 23, 2020, the foregoing was served, via electronic delivery to all counsel via CM/ECF system which will forward copies to Counsel of Record.

/s/ Jacob J. Lantry
Jacob J. Lantry



**NATIONAL SHOOTING SPORTS FOUNDATION, INC.**

Headquarters: 11 Mile Hill Road, Newtown, CT 06470-2359

400 N. Capitol Street NW, Suite 490, Washington, D.C. 20001

202-220-1340 ext. 249    lkeane@nssf.org

**Lawrence G. Keane**
SVP Gov't & Public Affairs
Assistant Secretary & General Counsel

March 20, 2020

The Honorable Christopher Krebs
Director of Cybersecurity and Infrastructure Security Agency
Department of Homeland Security
300 7th Street, SW
Washington, D.C. 20528

Dear Director Krebs:

The National Shooting Sports Foundation (NSSF) is America's trade association for the firearm, ammunition, hunting and recreational shooting sports industry. Our over 9,000 member companies include federally licensed manufacturers, distributors and retailers of firearms and ammunition products. On behalf of our members nationwide, I am writing to thank you for your leadership and the ongoing efforts of your agency to combat the COVID-19 (Coronavirus) pandemic.

**I am also respectfully requesting that your agency designate the firearm and ammunition industry as a "National Critical Infrastructure Industry" and the employees who work in our industry should be clearly identified and listed as "Essential Critical Infrastructure Workers."**

The firearm and ammunition industry is proud to provide the U.S. military and federal, state and local law enforcement agencies with the tools they need to carry out their vital national security and public safety missions. While we are facing a different kind of war in combatting an unprecedented public health crisis, it is imperative that we maintain a strong national defense and maintain public order.

As you are aware, the Department of Homeland Security (DHS) oversees the country's National Infrastructure Protection Plan (the "Plan")[1]. This Plan outlines how government and private sector participants in the critical infrastructure community work together to manage risks and achieve security and resilience outcomes. The Plan identifies 16 different critical infrastructure sectors, including Defense Industrial Base (DIB)[2] and Emergency Services Sector (ESS)[3].

---

[1] National Infrastructure Protection Plan, Cybersecurity and Infrastructure Security Agency. Retrieved March 19, 2020 from https://www.cisa.gov/national-infrastructure-protection-plan
[2] National Infrastructure Protection Plan, 2010 Defense Industrial Base Sector-Specific Plan, Cybersecurity and Infrastructure Security Agency. Retrieved March 19, 2020 from https://www.cisa.gov/sites/default/files/publications/nipp-ssp-defense-industrial-base-2010-508.pdf
[3] Emergency Services Sector-Specific Plan, An Annex to the National Infrastructure Protection Plan, 2015. Retrieved March 19, 2020 from https://www.cisa.gov/sites/default/files/publications/nipp-ssp-emergency-services-2015-508.pdf

*Defense Industrial Base*

The United States military acquires virtually all its small arms from domestic commercial firearm manufacturers. All handgun ammunition used by the U.S. military is sourced from commercial ammunition manufacturers. The Department of Defense arsenal located in Lake City, Missouri, is operated by a commercial ammunition manufacturer under a DOD contact. Most of the rifle ammunition used by the U.S. military is produced in Lake City. The U.S. military also purchases rifle ammunition directly from domestic commercial ammunition manufacturers. The federal government recognizes the importance of ammunition and firearm manufacturing in times of crisis.

We believe federally licensed firearm and ammunition manufacturers, and their employees, are clearly part of the Defense Industrial Base.

Manufacturers cannot remain operational if they are unable to secure necessary raw material and component parts in order to produce finished products for the military, law enforcement and commercial market. Therefore, it is vital that the supply chain upon which our industry relies, including the ability to transport materials, parts and finished products, must also be designated as critical infrastructure industry.

*Emergency Services Sector – Public Safety*

According to DHS Cybersecurity and Infrastructure Security Agency (CISA), "The mission of the Emergency Services Sector (ESS) is to save lives, protect property and the environment, assist communities impacted by disasters, and aid recovery during emergencies." Law enforcement is one of the five distinct disciplines composing the ESS sector that encompasses a wide range of emergency response functions and roles.

Members of our industry provide federal, state, local and tribal law enforcement agencies with the firearms and ammunition products they use to protect our communities and keep the peace. While large law enforcement agencies typically obtain the firearms, ammunition and related products directly from the manufacturer, most law enforcement agencies and their officers obtain firearms and ammunition from their local federally licensed firearms retailer. Our industry primarily functions on a traditional two-step distribution system whereby retailers generally acquire firearms from federally licensed wholesale distributors. In addition, many law enforcement officers supplement their income by working at firearm retailers.

We have seen in the past that law enforcement has turned to firearm retailers in times of civil unrest, such as when during the Los Angeles riots in 1992 local law enforcement went to retailers to obtain more effective firearms in order to restore the peace and protect residents and local businesses.

We cannot expect law enforcement to do its job of serving, protecting, and defending our communities without making sure they have access to the tools they need and which our industry provides. Our industry's manufacturers, distributors and retailers are a vital part of the Emergency Services Sector.

---

Food, water, shelter and adequate medical care are paramount for survival, but so too is the ability for an individual to defend his or herself, their family, as well as their home, business and property.

The firearm and ammunition industry is essential for law-abiding Americans to exercise their Second Amendment right to acquire a firearm and ammunition for personal protection and home defense. Right now, across America, tens of thousands of our fellow citizens are lining up at their local federally licensed firearm retailer to purchase firearms (after an industry-supported background check) and ammunition to protect themselves and family during this uncertain time. Law enforcement resources will be taxed and stressed thin if this pandemic continues to spread. Americans increasingly understand that they cannot always rely on law enforcement to be there in a time of need. They have a duty to be responsible for their own safety. The Second Amendment protects each law-abiding American's God-given right to self-defense. And, the lawful commerce in firearms and ammunition products is constitutionally protected. Without our industry, the right to keep and bear arms would be a mere illusion.

Unfortunately, as with past major disasters like Hurricane Katrina, a growing number of jurisdictions are ordering federally licensed firearm retailers to close their stores as "non-essential" businesses. For example, the Santa Clara and Contra Costa counties and the City of San Jose in California have all ordered firearm retailers to close. Just last night, Athens-Clarke County in Georgia passed an ordinance that requires firearm retailers to close as "non-essential" businesses.

The line of customers outside of firearm retailers across America is testament to the fact that Americans believe the ability to exercise their constitutional rights protected by the Second Amendment is essential. Law abiding citizens owning firearms for their own protection assists law enforcement and aids in keeping the peace.

Further, the psychological impact of having firearm retailers and manufacturers shuttered should not be underestimated. Americans are concerned that in this time of crisis, they will not be able to protect themselves, their families or their property. Ordering the shuttering of retailers will only serve to fuel this fear unnecessarily. The firearm and ammunition industry is present in every community. We know first-hand the importance of ensuring that families are able to focus on what's important right now: following government guidance to help stop the spread of this deadly virus. The last thing an American should be worrying about is how to make sure they are physically safe. Even for those who are not purchasing firearms or ammunition right now, allowing these essential businesses to remain open, while abiding by the important social-distancing guidelines, demonstrates that Americans are not going to be deprived of their right to bear arms.

In addition, shooting ranges, both public and private, are also essential to public safety and the exercise of the Second Amendment. Shooting ranges are where firearm safety education is taught especially to new and inexperience gun owners. It is also where law enforcement officers typically train to be proficient with their duty weapon. And, members of the military also frequent shooting ranges to train before they deploy to defend our nation.

*Economic Impact*

Our industry contributes to our nation's economic well-being. In 2019, the firearm and ammunition industry was responsible for $60 billion in total economic activity, employing as many as 150,707 people in the U.S. and generating an additional 181,501 jobs in supplier and ancillary industries.

Whether it is providing firearms or ammunition to military, law enforcement, and law-abiding citizens or ensuring that they have access to shooting ranges for training, the firearm industry is a critical component of our nation's security, public safety, and economic well-being. We must remain open for business. By including our industry among our nation's critical infrastructure industries, you can help ensure that we are able to do so.

We appreciate your support for the men and women who proudly wear our nation's uniform, our nation's law enforcement and first responders, as well as protecting our constitutional right to keep and bear arms and supporting the very industry that helps make that right a reality for tens of millions of Americans. Thank you for your consideration of this important request.

Sincerely,

Lawrence G. Keane