UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL MCCARTHY, *et al.*, | ) |
| Plaintiffs, | ) CIVIL ACTION NO.<br>) 1:20-cv-10701-DPW |
| v. | ) |
| CHARLES D. BAKER, *et al.*, | ) |
| Defendants. | ) |

### DECLARATION OF MASSAD AYOOB

I, Massad Ayoob, declare as follows:

1.   My name is Massad Ayoob. My CV is attached but briefly, pertaining to the following: I have served as a law enforcement firearms instructor since 1972 and a trainer of law-abiding armed citizens since 1981. I spent 19 years as chair of the firearms/deadly force training committee of the American Society of Law Enforcement Trainers and 16 years on the advisory board of the International Law Enforcement Educators and Trainers Association. I have published extensively on firearms, self-defense, and use of force since 1971, including two authoritative texts in the field, "In the Gravest Extreme: the Role of the Firearm in Personal Protection" (Police Bookshelf, 1980) and "Deadly Force" (F-W Media, 2014). I have been handgun columnist for *Guns* magazine for more than forty years, and law enforcement columnist for *American Handgunner* magazine for a like period. I have also for many years written the personal defense issues column for *Shooting Industry,* a firearms industry trade journal, which requires me to visit gun shops around the nation and also "big box" stores which sell firearms and ammunition.

-2-

2. In addition, pertinent to the instant issue, I spent most of my life in the state of New Hampshire, frequently traveling to and through Massachusetts for shooting matches, and always made a point of visiting gun shops in that state.

3. I have been asked to provide this affidavit in support of gun shops being allowed to remain open to sell firearms and particularly ammunition suitable for personal protection and self-defense, and to explain why products available at WalMart and similar "big box" stores are not suitable for these purposes.

4. At this time WalMart does not sell handguns, handgun ammunition, or self-defense rifle ammunition. WalMart long since stopped selling handguns in every state but Alaska, and recently announced that they would not sell handguns even there any longer. As Justice Scalia wrote in the majority SCOTUS opinion in *Heller v. District of Columbia,* handguns are particularly suitable for home defense for several reasons. They allow a homeowner to hold a violent felon at gunpoint while calling 9-1-1 with their phone in the other hand. They leave a hand free to manipulate light switches, push innocent parties out of harm's way, hold flashlights, etc. This is not realistically possible with a two-handed weapon such as a typical shotgun or hunting rifle.

5. The only ammunition available for WalMart that would fit a handgun is .22 rimfire, i.e., .22 Long Rifle or .22 Magnum. It is well established in law enforcement and private citizen self-defense that these small caliber cartridges lack the power to quickly stop violent acts of large, strong men. This is why no police department in the country has ever, to this writer's knowledge, issued or even allowed .22 caliber handguns to be carried by their sworn officers as duty sidearms.

6. In most communities, the only local source of proper self-defense ammunition is the local gun shop, or a sporting goods store with a significant firearms and accessories inventory. The proper self-defense ammunition for handguns is almost universally recognized to be the expanding bullet type, such as the hollow point bullets issued by most police departments or the Critical Duty brand ammunition currently issued by the FBI for their 9mm service pistols. The reasons for this, which apply equally to self-defense by law-abiding private citizens, are fourfold.

7. First, because the bullets expand into a mushroom shape (which is also a parachute shape), the wider bullet meets more resistance and is less likely to exit a violent offender's body with enough force to harm an innocent bystander behind him, unseen by the shooter due to lighting conditions, tunnel vision, or the body of the offender simply blocking their view. Thus, it is safer for innocent bystanders.

8. Second, the cookie-cutter shape of the nose of the hollow point bullet causes it to bite into hard surfaces it strikes on an angle of obliquity. This reduces the likelihood of ricochet that could endanger innocent parties. The hollow point bullet tends to either bury itself in what it hit, or shatter, or tumble in flight and quickly lose its power to injure or kill.

9. Third, historically the expanding handgun bullet has caused a faster incapacitation of violent offenders than round-nose or pointed bullets. The sooner the violent person is incapacitated, of course, the sooner he ceases to be a lethal danger to the lawful defender or other innocent parties.

10. Finally, because of that faster cessation of hostilities, the violent offender does not have to be shot as many times. All other things being equal, the fewer times he is shot the more

likely it is that modern trauma medicine can save his life. Thus, this ammunition can be said to be literally less lethal to the offender himself, within the totality of the given circumstances.

11. This ammunition, and the handguns which fire it, cannot be found these days in WalMart. It is most likely to be found in local gun shops. This is one reason why the Department of Homeland Security has declared firearms and ammunition retailers to be Essential for safety and security and allowed to remain open during the shutdown, as is practiced in most states at this time during the Coronavirus shutdown.

I affirm all of the foregoing statements under the penalty of perjury under the laws of the United States of America.

Dated: April 29, 2020

*[signature]*
Massad Ayoob