UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL MCCARTHY, et al.,

      *Plaintiffs*,

            v.

CHARLES D. BAKER, in his Official Capacity as
Governor of the Commonwealth of Massachusetts, et al.,

      *Defendants*.

CIVIL ACTION
NO. 1:20-cv-10701-DPW
(Leave to file granted on
May 26, 2020)

---

CEDRONE, LLC d/b/a SHAWSHEEN FIREARMS, et al.,

      *Plaintiffs*,

            v.

CHARLES DUANE BAKER, in his capacity as
GOVERNOR OF THE COMMONWEALTH OF
MASSACHUSETTS, et al.,

      *Defendants*.

CIVIL ACTION
NO. 1:20-cv-40041-DPW
(Leave to file granted on
May 26, 2020)

## DEFENDANTS' COMBINED MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

MAURA HEALEY
ATTORNEY GENERAL

Julia Kobick, BBO # 680194
Assistant Attorney General
Gary Klein, BBO # 560769
Special Assistant Attorney General
One Ashburton Place
Boston, Massachusetts 02108
(617) 963-2559
julia.kobick@mass.gov
gary.klein@state.ma.us

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ................................................................................ 1

BACKGROUND ................................................................................. 2

    I.  The Governor's Orders Temporarily Closing Non-Essential
       Businesses ................................................................................ 2

    II.  Procedural Background .............................................................. 4

    III. The Phased Reopening of the Massachusetts Economy ............ 6

ARGUMENT ..................................................................................... 7

    I.  This Court Lacks Jurisdiction Over the Plaintiffs' Claims for Injunctive
       and Declaratory Relief Because the Claims Have Become Moot .............. 8

       A.  The Plaintiffs' Claims for Injunctive and Declaratory
           Relief Are Moot and Must Be Dismissed ............................. 8

       B.  The Plaintiffs' Claims Are Neither Capable of Repetition,
           Yet Evading Review Nor Subject to the Voluntary
           Cessation Doctrine ............................................................ 10

    II.  The *Cedrone* Plaintiffs' Procedural Due Process Claims Fail as a
       Matter of Law and Must Be Dismissed .................................... 15

    III. The *Cedrone* Plaintiffs' State Law Claim and Request for Damages
       Are Barred by the Eleventh Amendment .................................. 21

    IV. The Plaintiffs' Claims for Damages Against the Defendants in Their
       Individual Capacities Must Be Dismissed as Barred by Qualified
       Immunity .................................................................................. 23

CONCLUSION ................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Allied Structural Steel Co. v. Spannaus,*
438 U.S. 234 (1978) ...................................................................................... 17-18

*Am. Civil Liberties Union of Mass. v. U.S. Conference of Catholic Bishops,*
705 F.3d 44 (1st Cir. 2013) .............................................. 8, 9, 10, 11, 12, 13, 14

*Andrus v. Allard,*
444 U.S. 51 (1979) ................................................................................................ 16

*Beers v. Barr,*
--- S. Ct. ---, 2020 WL2515441 (May 18, 2020) ...................................... 14-15

*Bi-Metallic Investment Co. v. State Board of Equalization,*
239 U.S. 441 (1915) .............................................................................................. 19

*Chief of Police of Shelburne v. Moyer,*
16 Mass. App. Ct. 543, 453 N.E.2d 461 (1983) .......................................... 22-23

*City of Los Angeles v. Lyons,*
461 U.S. 95 (1983) ................................................................................................ 10

*CommCan, Inc. v. Baker,*
No. 2084CV00808-BLS2, 2020 WL 1903822 (Mass. Super. Ct.
Apr. 16, 2020) ........................................................................................................ 20

*Commonwealth v. Davis,*
369 Mass. 886, 343 N.E.2d 847 (1976) .............................................................. 22

*Commonwealth v. Depina,*
456 Mass. 238, 922 N.E.2d 778 (2010) .............................................................. 22

*Compagnie Francaise de Navigation a Vapeur v. Board of Health of State
of Louisiana,*
186 U.S. 380 (1902) ...................................................................... 15-16, 18

*Davidson v. Howe,*
749 F.3d 21 (1st Cir. 2014) ....................................................................... 9, 10, 23

*D.H.L. Assocs., Inc. v. O'Gorman,*
199 F.3d 50 (1st Cir. 1999) .................................................................................... 8

*District of Columbia v. Heller,*
554 U.S. 570 (2008) .............................................................................................. 25

ii

*District of Columbia v. Wesby*,
    138 S. Ct. 577 (2018)................................................................................24

*Edelman v. Jordan*,
    415 U.S. 651 (1974)...........................................................................21, 23

*Eves v. LePage*,
    927 F.3d 575 (1st Cir. 2019) (en banc)..............................................24

*Ex parte Young*,
    209 U.S. 123 (1908)...........................................................................22, 23

*Fitchburg Gas & Elec. Light Co. v. Department of Pub. Utils.*,
    467 Mass. 768, 7 N.E.3d 1045 (2014) ...............................................16

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC) Inc.*,
    528 U.S. 167 (2000)................................................................................12

*Gallo v. U.S. Dist. Ct. for the Dist. of Arizona*,
    349 F.3d 1168 (9th Cir. 2003) ......................................................19, 20

*Garcia-Rubiera v. Fortuno*,
    665 F.3d 261 (1st Cir. 2011) ................................................................19

*Genesis HealthCare Corp. v. Symczyk*,
    569 U.S. 66 (2013) ...................................................................................8

*Giragosian v. Ryan*,
    547 F.3d 59 (1st Cir. 2008) ....................................................................2

*Gould v. Morgan*,
    907 F.3d 659 (1st Cir. 2018) ................................................................25

*Gulf of Me. Fisherman's Alliance v. Daley*,
    292 F.3d 84 (1st Cir. 2002) ..................................................................10

*Hafer v. Melo*,
    502 U.S. 21 (1991) .................................................................................23

*Home Building & Loan Ass'n v. Blaisdell*,
    290 U.S. 398 (1934)...............................................................................18

*Horizon Bank & Trust Co. v. Massachusetts*,
    391 F.3d 48 (1st Cir. 2004)....................................................................8

*Interport Pilots Agency Inc. v. Sammis*,
    14 F.3d 133 (2d Cir. 1994)......................................................................19, 20

*Jacobson v. Massachusetts*,
    197 U.S. 11 (1905)..............................................................................17, 18

*L C & S, Inc. v. Warren Cty. Area Plan Comm'n*,
    244 F.3d 601 (7th Cir. 2001) ....................................................................19

*Lopez v. Massachusetts*,
    588 F.3d 69 (1st Cir. 2009))....................................................................22

*Maysonet-Robles v. Cabrero*,
    323 F.3d 43 (1st Cir. 2003)......................................................................22

*McDonald v. City of Chicago*,
    561 U.S. 742 (2010)..............................................................................25

*Minnesota State Board for Community Colleges v. Knight*,
    465 U.S. 271 (1984) ...........................................................................19-20

*New England Reg'l Council of Carpenters v. Kinton*,
    284 F.3d 9 (1st Cir. 2002)....................................................................10, 14

*Newspaper Guild of Salem, Local 105 of the Newspaper Guild v. Ottaway Newspapers, Inc.*,
    79 F.3d 1273 (1st Cir. 1996) ...................................................................11

*O'Bradovich v. Village of Tuckahoe*,
    325 F.3d 413 (S.D.N.Y. 2004)..................................................................19

*O'Brien v. Mass. Bay Transp. Auth.*,
    162 F.3d 40 (1st Cir. 1998)......................................................................22

*Pennhurst State School & Hosp. v. Halderman*,
    465 U.S. 89 (1984).............................................................................21, 22

*Preiser v. Newkirk*,
    422 U.S. 395 (1975)................................................................................8

*Rosie D. v. Swift*,
    310 F.3d 230 (1st Cir. 2002)....................................................................23

*RR Vill. Ass'n, Inc. v. Denver Sewer Corp.*,
    826 F.2d 1197 (2d Cir. 1987)................................................................19-20

*Smith v. Avino,*
    91 F.3d 105 (11th Cir. 1996) ............................................................18

*Spencer v. Kemna,*
    523 U.S. 1 (1998) ............................................................................10

*Teixeira v. Cty. of Alameda,*
    873 F.3d 670 (9th Cir. 2017) (en banc) ..........................................21

*Town of Portsmouth v. Lewis,*
    813 F.3d 54 (1st Cir. 2016) ........................................................11, 14

*Turner's Operations, Inc. v. Garcetti,*
    No. 20STCP01258 (Cal. Super. Ct. Apr. 15, 2020) ........................21

*United States v. Chalk,*
    441 F.2d 1277 (4th Cir. 1971) ........................................................18

*United States v. Fla. E. Coast Ry. Co.,*
    410 U.S. 224 (1973) ............................................................18, 19, 20

*United States v. Reid,*
    369 F.3d 619 (1st Cir. 2004) .....................................................9, 13-14

*United States v. Sanchez-Gomez,*
    138 S. Ct. 1532 (2018) ......................................................................8

*Will v. Mich. Dept. of State Police,*
    491 U.S. 58 (1989) ..........................................................................22

*Williams v. Alioto,*
    549 F.2d 136 (9th Cir. 1977) ..........................................................11

## <u>Constitutional Provision and Statutes</u>

U.S. Const., Art. I, § 10, cl. 1 (Contract Clause) ........................................17

U.S. Const. Art. III, § 2, cl. 1 ........................................................................8

U.S. Const., Amend. I ..................................................................................18

U.S. Const., Amend. II ..............................................................5, 21, 23, 24

U.S. Const., Amend. XI ........................................................2, 7, 21, 22, 23

U.S. Const., Amend. XIV ......................................................................5, 17

Article XVII of the Massachusetts Declaration of Rights ..................................5, 21, 22

M.G.L. c. 13, §§ 44A-44D ..........................................................................17

M.G.L. c. 13, §§ 67-69 ................................................................................17

M.G.L. c. 13, § 92 .......................................................................................17

M.G.L. c. 13, § 96-97A ...............................................................................17

M.G.L. c. 17, § 2A ........................................................................................2

M.G.L. c. 42, § 42 .......................................................................................17

Mass. St. 1950, c. 639 ..................................................................................2

      § 7(g) ................................................................................................20

      § 7(o) ................................................................................................20

      § 7(p) ................................................................................................20

**Rules and Regulations**

Fed. R. Civ. P. 12(b)(6) ...............................................................................15

**Miscellaneous**

Charles D. Baker, Governor's Declaration of Emergency
    (March 10, 2020) ....................................................................................2

Charles D. Baker, Order Temporarily Closing All Public and Private
    Elementary and Secondary Schools (March 15, 2020) ..........................2

Charles D. Baker, Order Temporarily Closing All Child Care Programs
    and Authorizing the Temporary Creation and Operation of
    Emergency Child Care Programs (March 18, 2020) ..............................2

Charles D. Baker, COVID-19 Order No. 13, Order Assuring Continued
    Operation of Essential Services in the Commonwealth, Closing
    Certain Workplaces, and Prohibiting Gatherings of More Than 10
    People (March 23, 2020) ................................................................ *passim*

Charles D. Baker, COVID-19 Order No. 21, Order Extending the Closing
of Certain Workplaces and the Prohibition on Gatherings of More
Than 10 People (March 31, 2020) ............................................................................ *passim*

Charles D. Baker, COVID-19 Order No. 27, Order Extending the
Temporary Closing of All Non-Emergency Child Care Programs
(April 21, 2020) .................................................................................................4
Charles D. Baker, COVID-19 Order No. 28, Order Extending the
Temporary Closure of All Public and Private Elementary and
Secondary Schools (April 21, 2020)...................................................................4

Charles D. Baker, COVID-19 Order No. 30, Order Further Extending the
Closing of Certain Workplaces and the Prohibition on Gatherings
of More than 10 People (April 28, 2020)................................................ *passim*

Charles D. Baker, COVID-19 Order No. 33, Order Implementing a Phased
Reopening of Workplaces and Imposing Workplace Safety
Measures to Address COVID-19 (May 18, 2020) ...................................1, 6, 7, 9

COVID-19 Essential Services: Exhibit A of the Order of the Governor
Assuring Continued Operation of Essential Services in the
Commonwealth, Closing Certain Workplaces and Prohibiting
Gatherings of More Than 10 People (as updated March 31, 2020)....................4

Massachusetts Executive Office of Housing & Economic Development,
*COVID-19 Essential Services FAQs* (May 24, 2020)........................................9

Massachusetts Dep't of Public Health, COVID-19 Dashboard
(May 27, 2020)...........................................................................................2, 6

Press Release, *Reopening Massachusetts: Baker-Polito Administration
Initiates Transition to First Phase of Four-Phase Approach*
(May 18, 2020)..................................................................................................6

U.S. Dep't of Homeland Security, Cybersecurity & Infrastructure Security
Agency, Advisory Memorandum on Identification of Essential
Critical Infrastructure Workers During COVID-19 Response
(March 28, 2020) ......................................................................... 23-24

## INTRODUCTION

During the most acute phase of the COVID-19 pandemic in Massachusetts, when the number of new cases of and deaths from the disease was surging, defendant Charles D. Baker, the Governor of Massachusetts, issued a number of orders to protect residents from the novel coronavirus and to stem its transmission in Massachusetts. Three of those orders, COVID-19 Order Nos. 13, 21, and 30, required all non-essential businesses in Massachusetts to close temporarily, when there existed the greatest risk that Massachusetts healthcare facilities would be overwhelmed by COVID-19 patients. Due in large part to the social distancing measures implemented in March, April, and May and the vigilance of Massachusetts residents, the number of new COVID-19 cases and deaths has been steadily decreasing since early May. Thus, when the final of the three Orders expired on May 18, 2020, the Governor announced a phased plan for reopening the Massachusetts economy. And he issued a new order, COVID-19 Order No. 33, which currently governs operation of workplaces in Massachusetts.

The plaintiffs in these consolidated cases filed suit to challenge application of COVID-19 Order Nos. 13, 21, and 30 to gun retailers and shooting ranges, which were not designated essential services under the Orders. When the plaintiffs filed their complaints, the three challenged COVID-19 Orders were in effect and temporarily prevented gun retailers and shooting ranges from operating. Today, nearly two months later, all three challenged Orders have expired on their own terms and COVID-19 Order No. 33 makes plain that gun retailers and shooting ranges may be open to the general public in Massachusetts, so long as they comply with generally applicable social distancing and safety measures. There is, accordingly, no longer a live dispute between the parties in these consolidated cases, and all of the plaintiffs' claims should be dismissed as moot. Jurisdictional defects aside, several of the plaintiffs' claims also fail as a matter of law or are barred

by the defendants' Eleventh Amendment immunity or by qualified immunity. This Court should therefore grant the defendants' motion to dismiss these consolidated cases.

## BACKGROUND

### The Governor's Orders Temporarily Closing Non-Essential Businesses

On March 10, 2020, Governor Baker declared a State of Emergency in Massachusetts due to the spread of the novel coronavirus.[1] When the Governor issued the emergency declaration, Massachusetts had 91 confirmed COVID-19 cases and no confirmed deaths.[2] Less than three months later, as of the date of the filing of this motion, nearly 100,000 Massachusetts residents have been confirmed infected with the coronavirus, and more than 6,500 have died from the disease.[3]

To stall the spread of the virus and prevent healthcare facilities from becoming overwhelmed with COVID-19 patients during the height of the pandemic, government officials temporarily closed forums in which people gather together. In Massachusetts, Governor Baker ordered a host of measures to promote social distancing. For example, on March 15, when Massachusetts had 164 confirmed COVID-19 cases, the Governor ordered all K-12 schools

---

[1] *See* Charles D. Baker, Governor's Declaration of Emergency (March 10, 2020), https://www.mass.gov/executive-orders/no-591-declaration-of-a-state-of-emergency-to-respond-to-covid-19 (declaring state of emergency in accordance with Mass. St. 1950, c. 639 and M.G.L. c. 17, § 2A). In ruling on a motion to dismiss, this Court may "consider documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice." *Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008) (internal quotation marks omitted). Each of the documents referenced in this brief, which are either incorporated by reference into the complaint or are government documents that are part of the of public record, falls into those categories.

[2] *See id.*

[3] Massachusetts Dep't of Public Health, COVID-19 Dashboard (May 27, 2020), https://www.mass.gov/doc/covid-19-dashboard-may-27-2020/download.

temporarily closed, because the proximity of people in schools would spur more infection.[4] And on March 18, he ordered all non-emergency childcare programs temporarily closed as well.[5]

By March 23, when Massachusetts had 646 confirmed COVID-19 cases and five deaths, Governor Baker issued COVID-19 Order No. 13, the first order challenged in this case.[6] The Order authorized essential services—like those involved in distribution of food, provision of medical care, and law enforcement—to continue operating, but required all other businesses to close temporarily until April 7.[7] Businesses spanning diverse sectors of the economy, from bookstores, to barbershops, to clothing stores, and, as relevant here, gun retailers and shooting ranges, were not included among the list of essential services. The Order also temporarily prohibited gatherings of more than 10 people anywhere in the Commonwealth, including in houses of worship and for community, civic, personal, or other events.[8]

In the week following COVID-19 Order No. 13, the number of COVID-19 cases and deaths in Massachusetts increased precipitously.[9] Thus, on March 31, Governor Baker issued COVID-19 Order No. 21, which extended until May 4 the closure of businesses that do not provide essential

---

[4] *See* Charles D. Baker, Order Temporarily Closing All Public and Private Elementary and Secondary Schools (March 15, 2020), https://www.mass.gov/doc/march-16-2020-k-12-school-closing-order/download.

[5] Charles D. Baker, Order Temporarily Closing All Child Care Programs and Authorizing the Temporary Creation and Operation of Emergency Child Care Programs (March 18, 2020), https://www.mass.gov/doc/march-18-2020-early-education-and-care-order/download.

[6] *See* Charles D. Baker, COVID-19 Order No. 13, Order Assuring Continued Operation of Essential Services in the Commonwealth, Closing Certain Workplaces, and Prohibiting Gatherings of More Than 10 People (March 23, 2020), https://www.mass.gov/doc/march-23-2020-essential-services-and-revised-gatherings-order/download.

[7] *Id.*

[8] *Id.*

[9] Charles D. Baker, COVID-19 Order No. 21, Order Extending the Closing of Certain Workplaces and the Prohibition on Gatherings of More Than 10 People (March 31, 2020), https://www.mass.gov/doc/march-31-2020-essential-services-extension-order/download.

services and the prohibition on gatherings of more than 10 people.[10] Attached to the Order was an updated version of Exhibit A, which identified COVID-19 Essential Services.[11] As before, gun retailers and shooting ranges were not listed on Exhibit A.[12]

During the month of April and the early weeks of May 2020, the Commonwealth was in the middle of the surge of COVID-19 infections. Between April 8 and May 13, there were more than 100 deaths from COVID-19 every day. *See supra*, note 3, at 9. Reflecting the ongoing existence of the surge of COVID-19 infections, Governor Baker ordered on April 21 that all K-12 schools in the Commonwealth remain closed for the duration of the school year and that all non-emergency childcare centers remain closed until June 29.[13] And on April 28, Governor Baker issued COVID-19 Order No. 30, which further extended the temporary closure of non-essential businesses and the prohibition on gatherings of more than 10 people for two additional weeks, until May 18.[14] The list of Essential Services on Exhibit A remained unchanged.[15]

**Procedural Background**

Both sets of plaintiffs filed suit to challenge COVID-19 Order Nos. 13, 21, and 30, as

---

[10] *Id.*

[11] COVID-19 Essential Services: Exhibit A of the Order of the Governor Assuring Continued Operation of Essential Services in the Commonwealth, Closing Certain Workplaces and Prohibiting Gatherings of More Than 10 People (as updated March 31, 2020), https://www.mass.gov/doc/march-31-essential-services-list/download.

[12] *Id.*

[13] *See* Charles D. Baker, COVID-19 Order No. 28, Order Extending the Temporary Closure of All Public and Private Elementary and Secondary Schools (April 21, 2020), https://www.mass.gov/doc/april-21-2020-school-closure-extension-order/download; Charles D. Baker, COVID-19 Order No. 27, Order Extending the Temporary Closing of All Non-Emergency Child Care Programs (April 21, 2020), https://www.mass.gov/doc/april-21-2020-childcare-programs-closure-extension/download.

[14] *See* Charles D. Baker, COVID-19 Order No. 30, Order Further Extending the Closing of Certain Workplaces and the Prohibition on Gatherings of More than 10 People (April 28, 2020), https://www.mass.gov/doc/signed-second-extension-of-essential-services-order/download.

[15] *Id.*

applied to gun retailers and shooting ranges, on April 9, 2020. The plaintiffs in the *McCarthy* matter initially included four gun retailers ("dealer plaintiffs"), six individuals ("individual plaintiffs"), and three gun advocacy organizations. *See* McCarthy Amended Complaint (*McCarthy* Doc. No. 6) ¶¶ 8-20. Naming Governor Baker, Department of Public Health Commissioner Monica Bharel, and Department of Criminal Justice Information Services Commissioner Jamison Gagnon among the defendants, the *McCarthy* plaintiffs alleged that the temporary closure of gun stores violated the Second Amendment of the U.S. Constitution. *See id.* ¶¶ 21-23, 28-33, 73-77. On April 14, the *McCarthy* plaintiffs moved for a temporary restraining order or preliminary injunction. *See McCarthy* Doc. Nos. 8-9.

The plaintiffs in the *Cedrone* matter include 10 gun retailers ("dealer plaintiffs"), a shooting range, two individuals, and a gun advocacy organization. Cedrone Compl. (*Cedrone* Doc. No. 1) ¶¶ 1-14. Naming Governor Baker and Attorney General Maura Healey as defendants, the *Cedrone* plaintiffs alleged that the temporary closure of gun stores and shooting ranges violated the Second Amendment and Due Process Clause of the Fourteenth Amendment, as well as Article XVII of the Massachusetts Declaration of Rights. *See id.* ¶¶ 68-103. On April 15, the *Cedrone* plaintiffs filed an *ex parte* motion for a temporary restraining order. *See Cedrone* Doc. No. 4-5. The following day, this Court ordered the *McCarthy* and *Cedrone* matters consolidated, scheduled a hearing on the motions for May 4, 2020, denied the *Cedrone* plaintiffs' motion without prejudice, and deferred consideration of their request for interlocutory injunctive relief to the May 4 hearing. *See McCarthy* ECF No. 30; *Cedrone* ECF Nos. 7-11.

Following briefing, this Court held a hearing on the plaintiffs' motions for preliminary injunctive relief on May 4 and May 7. And on May 7, this Court granted the plaintiffs' motions in part and ordered that licensed firearms and ammunition retailers be permitted to open as of May 9,

by appointment only and with no more than four appointments per hour. *See McCarthy* Doc. No. 92; *Cedrone* Doc. No. 34. The Court's Order also set forth a number of social distancing, sanitation, and hygiene requirements. *See id.* On May 7, the Court also ordered that the defendants file answers to the plaintiffs' complaints by May 21 and any motions to dismiss by May 28. *See McCarthy* ECF No. 90; *Cedrone* ECF No. 33.

**The Phased Reopening of the Massachusetts Economy**

By the middle of May, due in large part to the social distancing measures implemented statewide, the number of new daily coronavirus infections and deaths had plateaued and then begun steadily decreasing.[16] Since May 8, the Commonwealth has not recorded a day with more than 1,500 new COVID-19 cases.[17] And since May 16, the Commonwealth has not seen a day with more than 100 new COVID-19 deaths.[18] Thus, on May 18, in accordance with the expiration date of COVID-19 Order No. 30, Governor Baker announced a new slate of measures that began the process of reopening the Massachusetts economy.[19] Under the approach, sectors of the Massachusetts economy will reopen in a four phases, with the timeline of the reopening guided by key public health metrics.[20]

A new Order from Governor Baker, COVID-19 Order No. 33, governed the first phase of the reopening process for a variety of businesses, including some brick-and-mortar workplaces.[21]

---

[16] *See supra*, note 3, at 2, 4, 9.
[17] *Id.* at 4.
[18] *Id.* at 9.
[19] *See* Press Release, *Reopening Massachusetts: Baker-Polito Administration Initiates Transition to First Phase of Four-Phase Approach* (May 18, 2020), https://www.mass.gov/news/reopening-massachusetts-baker-polito-administration-initiates-transition-to-first-phase-of.
[20] *See id.*
[21] *See* Charles D. Baker, COVID-19 Order No. 33, Order Implementing a Phased Reopening of Workplaces and Imposing Workplace Safety Measures to Address COVID-19 (May 18, 2020), https://www.mass.gov/doc/may-18-2020-re-opening-massachusetts-order/download.

Under Section 1 of the Order, certain additional businesses and organizations, including manufacturing, construction operations, houses of worship, and, as relevant here, firearms retailers and shooting ranges, were authorized to open to the public, subject to the general workplace safety rules set forth in Section 2 of the Order.[22] These safety rules include social distancing, hygiene, staffing, and disinfecting requirements applicable to all brick-and-mortar businesses now operating.[23] No government approval is required before a gun retailer or shooting range may open to the public without any appointment-only restriction; as described in Section 3 the Order, gun retailers and shooting ranges need only self-certify that they are in compliance with all general and specific rules and make the self-certification available for inspection on request.[24]

On May 21, in accordance with the schedule set by this Court, the defendants filed answers to the *Cedrone* Complaint and to a Second Amended Complaint filed on May 15 by the *McCarthy* plaintiffs. *See McCarthy* Doc. No. 101; *Cedrone* Doc. No. 44. The defendants' motion to dismiss is likewise filed in accordance with this Court's schedule.

## ARGUMENT

While a live dispute existed between the parties when the complaints in these cases were filed, there no longer exists any controversy because, following the issuance of COVID-19 Order No. 33, there is no government restriction prohibiting gun retailers and shooting ranges from operating in Massachusetts. All of the plaintiffs' claims are therefore moot and should be dismissed for lack of jurisdiction. Independent of mootness, this Court should also dismiss the *Cedrone* plaintiffs' state-law claims and official-capacity damages claims because they are barred by Eleventh Amendment immunity, and it should dismiss all of the plaintiffs' individual-capacity

---

[22] *Id.*
[23] *See id.*
[24] *See id.*

damages claims because they are barred by qualified immunity. The *Cedrone* plaintiffs' procedural due process claim likewise should be dismissed for failure to state a claim. The Due Process Clause does not require the government to give licensed firearms dealers notice and an opportunity to be heard before temporary orders of general application and future effect, like COVID-19 Order Nos. 13, 21, and 30, are issued to contain a pandemic.

## I. THIS COURT LACKS JURISDICTION OVER THE PLAINTIFFS' CLAIMS FOR INJUNCTIVE AND DECLARATORY RELIEF BECAUSE THE CLAIMS HAVE BECOME MOOT.

### A. The Plaintiffs' Claims for Injunctive and Declaratory Relief Are Moot and Must Be Dismissed.

This Court's jurisdiction under Article III extends only to "Cases" and "Controversies." U.S. Const. Art. III, § 2, cl. 1. A lawsuit becomes moot—and thus no longer a case or controversy subject to federal court jurisdiction—when "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Am. Civil Liberties Union of Mass. v. U.S. Conference of Catholic Bishops*, 705 F.3d 44, 52 (1st Cir. 2013) ("*ACLU*") (quoting *D.H.L. Assocs., Inc. v. O'Gorman*, 199 F.3d 50, 54 (1st Cir. 1999)). "Another way of putting this is that a case is moot when the court cannot give any 'effectual relief' to the potentially prevailing party." *Id.* (quoting *Horizon Bank & Trust Co. v. Massachusetts*, 391 F.3d 48, 53 (1st Cir. 2004)). To remain subject to federal court jurisdiction, "a dispute 'must be extant at all stages of review, not merely at the time the complaint is filed." *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1537 (2018) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). "This requirement ensures that the Federal Judiciary confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved." *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013).

The plaintiffs in these cases brought suit to challenge COVID-19 Order Nos. 13, 21, and

30, which temporarily prohibited non-essential businesses, like gun dealers and shooting ranges, from opening during the most acute phase of COVID-19 infection in Massachusetts. By their express terms, those orders were time limited. The last of the challenged orders, COVID-19 Order No. 30, expired on its own terms on May 18, 2020. COVID-19 Order No. 33, the order that currently governs the operation of brick-and-mortar businesses in the Commonwealth, makes clear that gun retailers and shooting ranges—along with other entities like houses of worship, essential services, manufacturing operations, and construction operations—are authorized to open, subject to social distancing, hygiene, and sanitation requirements imposed on all such organizations in Massachusetts.[25]

Thus, to the extent, if any, that the right to possess a gun for self-defense in the homes carries with it a right to purchase a gun at a firearms retailer or maintain proficiency at a shooting range, the plaintiffs in these cases may now fully exercise that right. Because this Court can give no "effectual relief" to the plaintiffs with respect to their request that gun retailers and shooting ranges be opened, the plaintiffs' claims for injunctive relief are moot. *ACLU*, 705 F.3d at 52; *see also Davidson v. Howe*, 749 F.3d 21, 26 (1st Cir. 2014) (case is moot because "when a challenged [administrative] plan goes out of effect, there is literally no controversy left for the court to decide—the case is no longer live. More still, a court can provide no meaningful relief to the challenging party since, once the plan ceases to be operative, there is no plan left to enjoin" (internal citations and quotation marks omitted)); *United States v. Reid*, 369 F.3d 619, 624-26 (1st Cir. 2004) (request for injunctive relief on constitutional claims rendered moot by expiration of

---

[25] *See supra* note 21, §§ 1, 2; *see also* Massachusetts Executive Office of Housing & Economic Development, *COVID-19 Essential Services FAQs* (May 24, 2020), https://www.mass.gov/info-details/covid-19-essential-services-faqs#other- (noting that rules governing remote fulfillment of online or phone orders by retailers "do not apply to or otherwise restrict retail businesses listed in Section 1 of COVID-19 Order No. 33").

the administrative order creating the basis for the plaintiff's asserted constitutional deprivation).[26]

Nor would the plaintiffs be entitled to issuance of a declaratory judgment deeming past conduct violative of the Constitution, because such a declaration would be merely advisory. *See ACLU*, 705 F.3d at 53. As the First Circuit has explained, "it would be pointless to either enjoin the enforcement of a regulation that is no longer in effect or to declare its constitutional status." *New England Reg'l Council of Carpenters v. Kinton*, 284 F.3d 9, 18 (1st Cir. 2002); *see also Spencer v. Kemna*, 523 U.S. 1, 18 (1998) (the federal courts are not "in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong").

## B. The Plaintiffs' Claims Are Neither Capable of Repetition, Yet Evading Review Nor Subject to the Voluntary Cessation Doctrine.

When, as here, the named plaintiffs' underlying claims have become moot, the Court must dismiss the lawsuit unless an exception to the mootness doctrine applies. And here, no exception to mootness saves the plaintiffs' claims from dismissal.

First, the plaintiffs' claims do not challenge conduct that is, by its nature, "capable of repetition yet evading review." The "the capable-of-repetition doctrine applies only in exceptional situations," *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983), "where a plaintiff can show that '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subject to the same action again.'" *ACLU*, 705 F.3d at 57 (quoting *Gulf of Me. Fisherman's Alliance v. Daley*, 292 F.3d 84, 89 (1st Cir. 2002)). The plaintiffs cannot satisfy the second prong

---

[26] Indeed, the *Cedrone* plaintiffs conceded that their claims have become moot when they moved to withdraw their renewed motion for injunctive relief with respect to shooting ranges. *See* Cedrone Plaintiffs' Motion to Withdraw Opposed Renewed Application for Injunctive Relief (Cedrone Doc. No. 41) ¶ 3 (because shooting ranges are now allowed to open "the issue is now moot and does not require a judicial resolution"). The same reasoning applies to firearms retailers.

of this test, because they cannot establish a "reasonable expectation" or "demonstrated probability" that Governor Baker will issue a future order temporarily closing gun retailers and shooting ranges in order to protect public health from another severe outbreak of the coronavirus. *ACLU*, 705 F.3d at 57. The plaintiffs may speculate about a new wave of infections that might necessitate another temporary closure of gun retailers and shooting ranges in Massachusetts, but their argument would be just that: speculation. It would depend on speculation that (1) there will be another statewide outbreak of COVID-19 requiring a statewide response, as opposed to a more targeted or local response, even though social distancing and related public health measures remain in place in order to prevent such an occurrence; and (2) that the Governor would respond to such an outbreak with an order requiring a range of businesses statewide, including gun retailers and shooting ranges, to close temporarily in order to contain the new outbreak. *See Davidson*, 749 F.3d at 26-27 (capable-of-repetition-yet-evading-review doctrine requires a reasonable expectation that the complaining party would be subject to the same "alleged illegality"). Such speculation about events that might or might not come to pass is insufficient to save moot claims from dismissal under the capable-of-repetition-yet-evading-review exception to mootness. *See, e.g.*, *Newspaper Guild of Salem, Local 105 of the Newspaper Guild v. Ottaway Newspapers, Inc.*, 79 F.3d 1273, 1278 (1st Cir. 1996) ("a mere speculative possibility of repetition of the challenged conduct cannot avoid application of the mootness doctrine") (citing *Williams v. Alioto*, 549 F.2d 136, 143 (9th Cir. 1977)).

Second, this case is not one in which a defendant's voluntary cessation of the challenged conduct saves moot claims from dismissal. The voluntary cessation doctrine applies only "when a 'defendant voluntarily ceases the challenged practice' in order to moot the plaintiff's case, and there exists 'a reasonable expectation that the challenged conduct will be repeated following dismissal of the case.'" *Town of Portsmouth v. Lewis*, 813 F.3d 54, 59 (1st Cir. 2016) (quoting

*ACLU*, 705 F.3d at 54, 56) (internal citations and alterations omitted). Because the "purpose" of the doctrine "is to deter a 'manipulative litigant from immunizing itself from suit indefinitely, altering its behavior long enough to secure a dismissal and then reinstating it immediately thereafter,'" the "exception ordinarily does not apply where the voluntary cessation occurred for reasons unrelated to litigation." *Id.* (quoting *ACLU*, 705 F.3d at 54-55) (internal alterations omitted). In particular, under First Circuit precedent, the exception does not apply when a challenged action expires on its own terms and the defendant does nothing to intentionally bring about its expiration. *ACLU*, 705 F.3d at 55.[27]

These principles make plain that the voluntary cessation doctrine does not apply to this case. The challenged COVID-19 Orders were all expressly time limited and expired on their own terms. *See* COVID-19 Order Nos. 13, 21, 30, *supra* notes 6, 9, 14. And the time-limited nature of the Orders was a feature of the Orders that pre-dated the April 9, 2020 initiation of this litigation. The first challenged Order, COVID-19 Order No. 13, was issued on March 23 and, by its terms, expired on April 7, 2020. *See* COVID-19 Order No. 13, *supra* note 6. The second challenged Order, COVID-19 Order No. 21, was issued on March 31 and, by its terms, expired on May 4, 2020. *See* COVID-19 Order No. 21, *supra* note 9. The expiration dates were built into the Orders precisely because the public health data on COVID-19 drove the Governor's actions; the Orders were drafted to remain in effect only during the most acute phase of the crisis, when the risk of transmission was highest and when there existed a possibility that the Commonwealth's medical facilities would be overwhelmed by COVID-19 patients. *See, e.g.*, COVID-19 Order No. 21, *supra*

---

[27] Indeed, the First Circuit emphasized that the party asserting mootness meets its burden "'showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur'" *whenever* the challenged government action "expired on its own terms" and the government "did nothing to hasten its expiration." *ACLU*, 705 F.3d at 55 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC) Inc.*, 528 U.S. 167, 190 (2000)).

note 9 (explaining that the COVID-19 Order No. 13 must be temporarily extended because "the number of presumptively positive and confirmed cases of COVID-19 continues to rise exponentially in the Commonwealth" and because "the Department of Public Health is urging all residents of the Commonwealth to limit activities outside of the home and to practice social distancing at all time, both inside and outside of the home to limit the spread of this highly contagious and potentially deadly virus"). In accordance with that approach, the third challenged Order, COVID-19 Order No. 30, likewise contained an express expiration date of May 18, 2020. *See* COVID-19 Order No. 30, *supra* note 14. That Order indeed expired as scheduled on May 18, and none of the defendants took any actions to hasten its expiration. *See supra*, at 6.

In analogous circumstances, the First Circuit has rejected entreaties to exercise jurisdiction over constitutional claims challenging expired government action. For example, in *American Civil Liberties Union of Massachusetts v. U.S. Conference of Catholic Bishops*, the First Circuit held that the voluntary cessation doctrine did not apply because the challenged government contract, along with the contract's extensions, "expired according to its terms" and the government defendant "did nothing to hasten its expiration, much less do so to terminate litigation." 705 F.3d at 55. The First Circuit emphasized that "[t]he voluntary cessation doctrine does not apply when the voluntary cessation of the challenged activity occurs because of reasons unrelated to the litigation." *Id.* (citation omitted). Just as the contract in the *ACLU* case did not expire because of the litigation, the COVID-19 Orders in this case did not expire because of the litigation; rather, they expired on their own terms based on the public health data that informed their development. Similarly, the First Circuit held that a prisoner's claims challenging application of a prior set "special administrative measures" to him were moot because those measures expired during the litigation and because the new set of special administrative measures then in effect "reflect[ed]

new factual developments." *Reid*, 369 F.3d at 624-27. Based on those factual developments, the court explained, the restrictions in the prior set of special administrative regulations were "not reasonably likely to be repeated." *Id.* at 627. Here, too, the prior COVID-19 Orders are expired and the new Order now in effect reflects important new factual developments, namely, the Commonwealth's progress in reducing the prevalence of COVID-19 statewide.

The voluntary cessation doctrine is also inapplicable because there is not anything close to a "reasonable expectation that the challenged conduct will be repeated following dismissal of the case." *ACLU*, 705 F.3d at 56; *see also Town of Portsmouth*, 813 F.3d at 59. As described, any argument that a comparably severe wave of COVID-19 infections will recur in Massachusetts, and that the Governor will need to temporarily close gun retailers and shooting ranges statewide in order to protect public health, would be based on speculation. *See supra*, at 11. Massachusetts is now reopening the economy and public health data shows steady declines in the number of new COVID-19 infections and deaths. *See supra*, at 6. There is, therefore, no basis to believe that the plaintiffs would be subject to the same allegedly objectionable government action in the future. In comparable circumstances, the First Circuit has concluded that the voluntary cessation doctrine does not justify retaining jurisdiction over claims for injunctive and declaratory relief. For example, in *New England Regional Council of Carpenters v. Kinton*, the defendant agency, MassPort, updated its prior policy prohibiting leafletting on Northern Avenue in Boston with new regulations that allowed leafletting under certain circumstances. 284 F.3d at 15-17. The court held that the voluntary cessation doctrine did not save claims challenging the prior policy as applied because "there [was] simply no basis for suggesting that the original permit policy [would] be reinstated following the conclusion of litigation." *Id.* at 18. The same conclusion obtains in this case. *See also Beers v. Barr*, --- S. Ct. ---, 2020 WL2515441 (May 18, 2020) (remanding with

instructions to dismiss as moot a case challenging a federal restriction on access to firearms by a person who had previously been committed to mental institution, where, during the litigation, the defendant Bureau of Alcohol, Tobacco, Firearms, and Explosives approved Pennsylvania's certification that its relief-from-disabilities program satisfied federal criteria, which enabled the petitioner to acquire a firearm).

For these reasons, all the plaintiffs' claims for injunctive and declaratory relief challenging COVID-19 Order Nos. 13, 21, and 30 are moot and should be dismissed for lack of jurisdiction.

## II.  THE *CEDRONE* PLAINTIFFS' PROCEDURAL DUE PROCESS CLAIMS FAIL AS A MATTER OF LAW AND MUST BE DISMISSED.

Should this Court nevertheless retain jurisdiction over any of the plaintiffs' claims for injunctive and declaratory relief, some of those claims fail as a matter of law and must be dismissed under Fed. R. Civ. P. 12(b)(6). In Count I and the second Count IV of the *Cedrone* Complaint, the dealer plaintiffs claim that COVID-19 Order Nos. 13, 21, and 30 deprived them of constitutionally protected property—namely, their licenses to sell firearms—without notice and an opportunity to contest those Orders. Cedrone Compl. ¶¶ 68-72, 95-103. As a threshold matter, no gun dealers' license was revoked by the Orders; the dealers were simply prohibited from opening their stores for less than two months, during the height of the surge of COVID-19 cases. In any event, the procedural due process claims fail as a matter of law for two independent reasons: they are foreclosed by Supreme Court precedent and otherwise inconsistent with the rule that no individualized process is due when government conduct is legislative in nature, rather than adjudicative in nature.

First, the Supreme Court considered and rejected a similar procedural due process claim over a century ago in a case involving circumstances comparable to the COVID-19 epidemic. The case, *Compagnie Francaise de Navigation a Vapeur v. Board of Health of State of Louisiana*,

arose out of a board of health's order quarantining a ship whose passengers had sailed from a country that was previously a source of yellow fever outbreaks in Louisiana. 186 U.S. 380, 381-83 (1902). The company that owned the ship sued, contending, among other things, that the quarantine deprived it of "property without due process of law." *Id.* at 387. The Court rejected the claim, explaining that, if accepted, the theory would "strip the government, whether state or national, of all power to enact regulations protecting the health and safety of the people, or, what is equivalent thereto, necessarily amounts to saying that such laws when lawfully enacted cannot be enforced against person or property without violating the Constitution." *Id.* at 393. In the Court's view, "the contention demonstrate[d] its own unsoundness." *Id.* Even though the company had a property interest in its ship, no process was required before the board could lawfully quarantine the ship in service of public health. *Id.* So too here. Even if the plaintiffs have a property interest in their licenses to sell firearms,[28] they are not entitled to process before the government may temporarily order closure of their businesses in order to prevent the spread of a deadly virus.

Application of the *Compagnie Francaise* rule is equally necessary in the context of the COVID-19 pandemic. If the dealer plaintiffs could state a procedural due process claim based on the alleged temporary deprivation of their licenses to sell guns, so could every other licensed

---

[28] As indicated above, COVID-19 Order Nos. 13, 21, and 30 did not deprive the *Cedrone* dealer plaintiffs of their licenses to sell guns in Massachusetts. To the extent the *Cedrone* dealer plaintiffs contend that they have a property interest in their expectation of profits, which had been temporarily affected by the Orders, that is not a constitutionally protected property interest. *See Andrus v. Allard*, 444 U.S. 51, 66-67 (1979) ("[P]erhaps because of its very uncertainty, the interest in anticipated gains has traditionally been viewed as less compelling than other property-related interests"; "[r]egulations that bar trade in certain goods have been upheld against claims of unconstitutional taking."); *Fitchburg Gas & Elec. Light Co. v. Department of Pub. Utils.*, 467 Mass. 768, 783, 7 N.E.3d 1045, 1057 (2014) ("[A] regulated company must anticipate that its profit levels can be . . . reduced by changes in government regulation. There is no constitutional entitlement to maximum profits.") (citations and internal quotation marks omitted).

business in Massachusetts. Those licensed, for example, by the Board of Registration of Architects, M.G.L. c. 13, §§ 44A-44D; or the Board of Registration Cosmetology and Barbering, M.G.L. c. 42, § 42; or the Board of Registration of Landscape Architects, M.G.L. c. 13, §§ 67-69; or the Board of Registration of Real Estate Appraisers, M.G.L. c. 13, § 92; or the Board of Registration of Home Inspectors, M.G.L. c. 13, § 96-97A, could all bring claims contending, like the plaintiffs, that they were entitled to notice and a hearing before Governor Baker could issue COVID-19 Order Nos. 13, 21, and 30. *See* Cedrone Compl. ¶ 69. Businesses without licenses might likewise assert that they, too, were entitled to notice and a hearing before the Governor could issue the Orders, based on other alleged property interests. *Compagnie Francaise* makes clear that the Due Process Clause does not require government officials to take such time-consuming steps before acting on an emergency basis to stem a public health crisis.

The Supreme Court has adopted a similar rule across constitutional claims. In *Jacobson v. Massachusetts*, it rejected a due process challenge to a compulsory vaccination law. 197 U.S. 11, 25-30 (1905). Even though the plaintiff had a liberty interest in bodily autonomy, the Court explained, "it [i]s a fundamental principle that persons and property are subjected to all kinds of restraints and burdens in order to secure the general comfort, health, and prosperity of the state.'" *Id.* at 26. "Upon the principle of self-defense, of paramount necessity," the Court continued, "a community has the right to protect itself against an epidemic of disease which threatens the safety of its members." *Id.* at 27. Because the compulsory vaccination law had a "real or substantial relation to the protection of the public health and the public safety," it comported with the Fourteenth Amendment. *Id.* at 31. Similarly, the Court held that the Contract Clause was not violated by a foreclosure moratorium law "enacted to provide relief for homeowners threatened with foreclosure" during the Great Depression, even though "the legislation conflicted directly

with lenders' contractual foreclosure rights." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 242 (1978) (discussing *Home Building & Loan Ass'n v. Blaisdell*, 290 U.S. 398 (1934)). The law was constitutional because the government "had declared in the Act itself that an emergency need for the protection of homeowners existed," the "law was enacted to protect a basic societal interest, not a favored group," "the relief was appropriately tailored to the emergency that it was designed to meet [and] the imposed conditions were reasonable," and the "legislation was limited to the duration of the emergency." *Id.* As in *Compagnie Francaise* and *Jacobson*, the Court held that asserted constitutional rights must yield to emergency actions taken by the State to protect the health of the citizenry. The same result should obtain here. *See also Smith v. Avino*, 91 F.3d 105, 109 (11th Cir. 1996) (rejecting arguments that curfew imposed after Hurricane Andrew infringed upon plaintiffs' freedom of movement and right to travel because "governing authorities must be granted the proper deference and wide latitude necessary for dealing with an emergency"); *United States v. Chalk*, 441 F.2d 1277, 1280 (4th Cir. 1971) (upholding curfew, prohibition on possession of dangerous weapons away from one's home, and other restrictions against First Amendment, overbreadth, and right to travel challenges, while observing the "broad discretion necessary for the executive to deal with an emergency situation" (internal quotations and citation omitted)).

The *Cedrone* dealer plaintiffs' due process claims also fail as a matter of law for a second, and independent, reason: because COVID-19 Order Nos. 13, 21, and 30 were prospective rules of general application, they were not subject to the notice and hearing requirements of the Due Process Clause. For purposes of procedural due process claims, the Supreme Court has long drawn a distinction between "proceedings for the purpose of promulgating policy-type rules or standards, on the one hand, and proceedings designed to adjudicate disputed facts in particular cases, on the other." *United States v. Fla. E. Coast Ry. Co.*, 410 U.S. 224, 245 (1973). Dating to its decision in

*Bi-Metallic Investment Co. v. State Board of Equalization*, the Court has held that "[w]here a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption." 239 U.S. 441, 445 (1915). In such contexts, individual due process rights—including notice and a right to be heard—do not attach. *See id.* at 445-46.

Thus, the question whether process rights attach turns on whether government conduct affecting an allegedly protected property interest "is legislative or adjudicative in nature." *Garcia-Rubiera v. Fortuno*, 665 F.3d 261, 272 (1st Cir. 2011); *see also Interport Pilots Agency Inc. v. Sammis*, 14 F.3d 133, 142 (2d Cir. 1994) ("Official action that is legislative in nature is not subject to the notice and hearing requirements of the due process clause."). Government action is legislative in nature when it "has general application and look[s] to the future." *Interport Pilots,* 14 F.3d at 142 (internal quotation marks omitted); *accord L C & S, Inc. v. Warren Cty. Area Plan Comm'n*, 244 F.3d 601, 604 (7th Cir. 2001) ("Not the motive or stimulus, but the generality and consequences, of an enactment determine whether it is really legislation or really something else."). On the other hand, government action is adjudicative in nature when it is "designed to adjudicate disputed facts in particular cases." *Fla. E. Coast Ry.*, 410 U.S. at 245; *accord Interport Pilots*, 14 F.3d at 143; *O'Bradovich v. Village of Tuckahoe*, 325 F.3d 413, 429-30 (S.D.N.Y. 2004). Like statutes, governmental orders, rules, and regulations may be, and often are, legislative in nature because they adopt general rules that are not aimed at particular cases or parties. *See, e.g.*, *Gallo v. U.S. Dist. Ct. for the Dist. of Arizona*, 349 F.3d 1168, 1182-83 (9th Cir. 2003) (court rules that changed attorney licensing standards are legislative in nature); *Interport Pilots*, 14 F.3d at 142-44 (policy statement by a state board is legislative rather than adjudicative in nature); *RR Vill. Ass'n, Inc. v. Denver Sewer Corp.*, 826 F.2d 1197, 1204-05 (2d Cir. 1987) (citing *Minnesota State*

*Board for Community Colleges v. Knight*, 465 U.S. 271, 284 (1984), for the proposition that a "policy decision by [an] executive agency would be legislative action").

Here, COVID-19 Order Nos. 13, 21, and 30 were legislative in nature and were not, therefore, subject to the notice and hearing requirements of the Due Process Clause. Through the Civil Defense Act, the Legislature delegated the Governor authority, during a declared of state emergency, to take "any and all" action "relative to," among other things, the "sale of articles of food and household articles"; "[a]ssemblages . . . in order to protect the physical safety of persons or property"; and the "[v]ariance of the terms and conditions of licenses, permits or certificates of registration issued by the commonwealth or any of its agencies." Mass. St. 1950, c. 639, §§ 7(g), (o), (p); *see CommCan, Inc. v. Baker*, No. 2084CV00808-BLS2, 2020 WL 1903822, at *7 (Mass. Super. Ct. Apr. 16, 2020) (COVID-19 Order Nos. 13 and 21 were authorized by Sections 7(g), (o), and (p) of the Civil Defense Act). Acting pursuant to that authority, Governor Baker issued orders of general applicability across the Commonwealth that required the temporary closure of all non-essential businesses and organizations during the height of COVID-19 infection. The Orders, which applied across all economic sectors, adopted "policy-type rules or standards"; they were not "designed to adjudicate disputed facts in particular cases." *Fla. E. Coast Ry.*, 410 U.S. at 245. Moreover, they "affec[ted] a large number of people, as opposed to targeting a small number of individuals based on individual factual determinations." *Gallo*, 349 F.3d at 1182. And they "appl[ied] prospectively, and d[id] not seek to impose any retroactive penalty." *Interport Pilots*, 14 F.3d at 143. COVID-19 Order Nos. 13, 21, and 30 thus met all the criteria for governmental action that was legislative, rather than adjudicative in nature. Indeed, applying these same standards, the California Superior Court recently rejected a virtually identical procedural due process challenge to the temporary closure of gun retailers in California due to COVID-19; the

court reasoned that the California order "has the character of a legislative decision" under the *Bi-Metallic* progeny because the "order imposes broad restrictions across massive sectors of the . . . economy to slow the spread of the novel coronavirus." Notice of Ruling on Ex Parte Application, at 8, *Turner's Operations, Inc. v. Garcetti*, No. 20STCP01258 (Cal. Super. Ct. Apr. 15, 2020).

For all of these reasons, this Court should dismiss the *Cedrone* dealer plaintiffs' procedural due process challenges to COVID-19 Order Nos. 13, 21, and 30 for failure to state a claim.[29]

## III. THE *CEDRONE* PLAINTIFFS' STATE LAW CLAIM AND REQUEST FOR DAMAGES ARE BARRED BY THE ELEVENTH AMENDMENT.

In the first Count IV, the *Cedrone* plaintiffs also contend that COVID-19 Order Nos. 13, 21, and 30 violated Article XVII of the Massachusetts Declaration of Rights. Cedrone Compl. ¶¶ 90-94. And in several separate paragraphs of the Complaint, the *Cedrone* plaintiffs demand compensatory and punitive damages. *Id.* ¶¶ 71, 72, 76, 77. But both the state-law claim and the damages requests are barred by the Eleventh Amendment to the United States Constitution and, accordingly, must be dismissed.

The Eleventh Amendment bars lawsuits in federal court against unconsenting States. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). The Eleventh Amendment also bars official-capacity suits against state

---

[29] Should this Court determine that it has jurisdiction over the plaintiffs' claims for injunctive and declaratory relief, at least one component of the plaintiffs' Second Amendment claim—namely, the allegation that the Second Amendment confers a right to *sell* firearms and ammunition—fails to state a claim upon which relief can be granted. *See, e.g., Teixeira v. Cty. of Alameda*, 873 F.3d 670, 682 (9th Cir. 2017) (en banc) (affirming dismissal of Second Amendment claim in part because "the Second Amendment does not confer a freestanding right, wholly detached from any customer's ability to acquire firearms, upon a proprietor of a commercial establishment to sell firearms"). Nevertheless, in the interest of judicial economy, the defendants will fully brief that matter, together with their remaining arguments on the merits of the plaintiffs' Second Amendment claims, at summary judgment, should this case proceed beyond this motion to dismiss.

officials because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . . As such, it is no different from a suit against the State itself." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). As state officials sued in their official capacities only, *see* Cedrone Compl. p. 1 (case caption), the Governor and Attorney General share in the Eleventh Amendment immunity of the Commonwealth. *See Will*, 491 U.S. at 71; *Maysonet-Robles v. Cabrero*, 323 F.3d 43, 48-49 (1st Cir. 2003).

The Eleventh Amendment likewise prohibits claims in federal court against state officials based on alleged violations of state law. *Pennhurst*, 465 U.S. at 106. As the Supreme Court has explained, "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Id.* The Court thus held that the narrow exception to Eleventh Amendment immunity established in *Ex parte Young*, 209 U.S. 123 (1908)—which authorizes suits for prospective injunctive relief against state officials based on ongoing violations of *federal* law—is "inapplicable in a suit against state officials on the basis of *state* law." *Pennhurst*, 465 U.S. at 106 (emphasis added). And the Court also held that the doctrine applies as readily to "state-law claims brought into federal court under pendent jurisdiction." *Id.* at 121; *accord Lopez v. Massachusetts*, 588 F.3d 69, 73 n. 1 (1st Cir. 2009); *O'Brien v. Mass. Bay Transp. Auth.*, 162 F.3d 40, 44 (1st Cir. 1998). Under this principle, this Court lacks jurisdiction over the state-law claim asserted in the first Count IV of the *Cedrone* Complaint, and the claim must be dismissed.[30]

---

[30] In any event, the claim under Article XVII of the Massachusetts Declaration of Rights fails as a matter of law. Article XVII "was intended to provide for the common defense and does not guarantee an individual right to keep and bear arms." *Commonwealth v. Depina*, 456 Mass. 238, 252, 922 N.E.2d 778, 790 (2010) (citing *Commonwealth v. Davis*, 369 Mass. 886, 888, 343 N.E.2d 847 (1976)). Thus, "[t]here is no right under art. 17 of the Declaration of Rights of the

The *Cedrone* plaintiffs' requests for compensatory and punitive damages are likewise barred by the Eleventh Amendment. Their Second Amendment and due process claims only fall within this Court's jurisdiction because of the *Ex Parte Young* exception to Eleventh Amendment immunity, which allows official-capacity claims for prospective *injunctive* relief against state officials based on alleged violations of federal law. *See Rosie D. v. Swift*, 310 F.3d 230, 234 (1st Cir. 2002). That exception does not, however, permit claims for monetary damages against state officials sued in their official capacities. *See Hafer v. Melo*, 502 U.S. 21, 25-27 (1991); *Edelman*, 415 U.S. at 663-65, 675-77; *Davidson*, 749 F.3d at 27. The caption of the *Cedrone* Complaint appears to name the Governor and Attorney General in their official capacities only, and the paragraphs identifying the Governor and Attorney General as defendants do not mention personal-capacity claims. *See* Cedrone Compl. ¶¶ 15-16. Thus, the *Cedrone* plaintiffs' demands for compensatory or punitive damages are foreclosed by the Eleventh Amendment and must be dismissed.

## IV.  THE PLAINTIFFS' CLAIMS FOR DAMAGES AGAINST THE DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES MUST BE DISMISSED AS BARRED BY QUALIFIED IMMUNITY.

Finally, to the extent any of the plaintiffs assert claims for damages against the state defendants in their individual capacities,[31] those claims fail as a matter of law because the

---

Massachusetts Constitution for a private citizen to keep and bear arms." *Chief of Police of Shelburne v. Moyer*, 16 Mass. App. Ct. 543, 547, 453 N.E.2d 461 (1983).

[31] Paragraphs 21 through 23 of the Second Amended Complaint in *McCarthy* name Governor Baker, Commissioner Bharel, and Commissioner Gagnon in their individual and official capacities, and the Prayer for Relief requests nominal damages. *See* Second Amended Complaint (*McCarthy* Doc. No. 99) ¶¶ 21-23 & p. 16. Although the *Cedrone* Complaint appears to assert only official-capacity claims, paragraphs 72 and 77 of the *Cedrone* Complaint do request punitive damages based on allegations that Governor Baker and Attorney General Healey, "acting both individually, collectively, and in their official capacity have deliberately disregarded" the Department of Homeland Security's Advisory Memorandum on Essential Services. Cedrone Compl. ¶¶ 72, 77; *see* U.S. Dep't of Homeland Security, Cybersecurity & Infrastructure Security

defendants are shielded by qualified immunity. Under the qualified immunity doctrine, government officials sued in their individual capacities "are immune from damages claims" unless "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Eves v. LePage*, 927 F.3d 575, 582-83 (1st Cir. 2019) (en banc) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018)). To meet their burden of establishing the violation of a clearly established federal right, plaintiffs must "demonstrate that the law was sufficiently clear [such] that every reasonable official would understand that what he is doing is unlawful." *Eves*, 927 F.3d at 583 (quotation marks omitted). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quotation marks omitted); *see also Castagna v. Jean*, 955 F.3d 211, 219 (1st Cir. 2020) (defendants are entitled to qualified immunity "where it is at least arguable that the defendant's actions were constitutional . . . and where there was no controlling authority or even a consensus of cases of persuasive authority" (internal quotation marks omitted)). Moreover, "the right that was allegedly violated must be defined 'in a particularized sense so that the contours of the right are clear to a reasonable official.'" *Castagna*, 955 F.3d at 219 (quoting *Eves*, 927 F.3d at 583).

The plaintiffs cannot establish that the defendants violated a federal statutory or constitutional right that was clearly established in March 2020, when COVID-19 Order No. 13 was issued. There is no existing precedent establishing that it violates either the Second Amendment or the Due Process Clause to order the closure of firearms retailers and shooting ranges for less than two months, while at the same time permitting ongoing private sales of firearms and in-store purchase of some kinds of ammunition, in order to prevent the spread of a

Agency, Advisory Memorandum on Identification of Essential Critical Infrastructure Workers During COVID-19 Response (March 28, 2020).

novel and highly contagious virus that is ravaging Massachusetts communities. The Supreme Court's decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), say nothing about the scope of the Second Amendment during a public health crisis, when government officials must temporarily implement measures to contain the spread of an infectious disease. Nor does any case from the First Circuit. *See Gould v. Morgan*, 907 F.3d 659, 667 (1st Cir. 2018), *cert. petn. filed* (No. 18-1272) ("[*Heller* and *McDonald*] merely scratched the surface: they did not provide much clarity as to how Second Amendment claims should be analyzed in future cases."). Qualified immunity therefore shields the defendants from any damages claims asserted in these lawsuits, and those damages claims must be dismissed.

## CONCLUSION

For the foregoing reasons, this Court should grant the defendants' motion to dismiss.

Respectfully submitted,

CHARLES BAKER, Governor of the Commonwealth of Massachusetts; MONICA BHAREL, Commissioner of the Department of Public Health; JAMISON GAGNON, Commissioner of the Department of Criminal Justice Information Services; and MAURA HEALEY, Attorney General of the Commonwealth of Massachusetts,

By their attorney,

MAURA HEALEY
ATTORNEY GENERAL

/s/ Julia E. Kobick
Julia E. Kobick (BBO No. 680194)
Assistant Attorney General
Gary Klein (BBO No. 560769)
Special Assistant Attorney General
One Ashburton Place
Boston, Massachusetts 02108
(617) 963-2559
Julia.Kobick@mass.gov
Dated: May 28, 2020                    Gary.Klein@state.ma.us

**CERTIFICATE OF SERVICE**

I certify that, on May 28, 2020, this document, filed through the Court's ECF system, will be sent electronically to registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ Julia E. Kobick
Julia E. Kobick
Assistant Attorney General