# Exhibit U

## DECLARATION OF MICHAELA DUNNE

I, Michaela Dunne, depose and state based on my personal knowledge:

1. I am presently the Deputy Commissioner of the Massachusetts Department of Criminal Justice Information Services ("DCJIS"), a division of the Executive Office of Public Safety and Security ("EOPSS"). I have held this position for 4 months.

2. I have also been Manager of the Law Enforcement Division at DCJIS, a position I held for 6 years. Before that, I was the Supervisor of the Firearms Records Bureau ("FRB") at DCJIS, a position I held for more than ten years.

3. DCJIS manages and administers the FRB. The FRB is the state agency charged with keeping records of gun licensing and gun transaction information in Massachusetts. As part of my duties as Deputy Commissioner of DCJIS, I supervise the work of the FRB.

4. Pursuant to G.L. c. 140, § 122A, DCJIS also keeps records of gun dealers licensed by the Commonwealth pursuant to G.L. c. 140, § 122. DCJIS also assists local licensing authorities with their supervision of gun dealers in various ways, particularly with respect to their compliance with state licensing requirements.

5. In my capacity as Deputy Commissioner and in light of the various jobs I held previously, I am one of the state officials that is most familiar with the business practices of the Commonwealth's 350 licensed gun dealers.

6. Among other things, I have met or interacted with hundreds of licensees over more than 16 years, including during site visits I made for various purposes.

7. Over the years, I estimate that I have visited more than 25 gun dealerships in the Commonwealth. During those visits I always entered the business premises the dealership uses for retail sales.

8. Most Massachusetts gun dealerships are owner operated.

9. I have visited several Massachusetts gun dealers with very small retail spaces.

10. The gun stores I visited were often crowded retail spaces with counters for gun sales and other purposes, and retail racks for gun supplies and gear. The stores also sold other equipment and dry goods, including gun racks, gun locks, gun safes, hunting gear, clothing, binoculars and the like. These items and the display racks that contain them can make the retail space in even large gun stores very crowded.

11. During my visits to gun stores, they were often quite crowded. I have frequently observed customers in very close contact with sales staff and/or with other customers. In many cases, close contact was unavoidable due to the size of the store.

12. Based on the registration requirements for gun sales managed by DCJIS, I am also aware of typical sales volumes at gun stores. Even a small store can sometimes sell more than 10 guns in a single day.

13. My experience is that for every visit to a gun store that results in a sale, there are many other customer visits including, for example, customers browsing, customers taking preliminary steps to purchase the gun, customers seeking repairs, and customers purchasing ammunition and gear.

14. Among other things, Massachusetts law (G.L. c. 140, § 123) requires gun purchasers to physically present their gun licenses to the gun seller in person.

15. Under G.L. c. 140, § 123, gun stores must conduct all transactions at their permanent place of business (or at a "regular meeting of an incorporated collectors club or at a gun show open to the general public.") This precludes completing transactional paperwork or delivering guns at a customer's residence or completing transactional work in the gun store's parking lot or on the sidewalk. It would also be illegal for a gun store to deliver guns to customers in their cars.

16. There is some delay inherent in the process for any Massachusetts resident to obtain a gun.

17. In order to purchase a gun, a Massachusetts resident must first obtain a firearms license. This process can take at least 40 days, not including taking the required Basic Firearms Safety Course. Therefore, for a new applicant, it may take up to 90 days to acquire a firearm.

18. In addition, there is often a delay in scheduling an appointment with the relevant local licensing authority to complete an application for a gun license. Issuance of a license may take up to 60 days. *See* https://www.mass.gov/how-to/apply-for-a-firearms-license

19. Even persons with valid gun licenses may not be able to acquire a gun on the day they first select a weapon for purchase. This is because dealers must complete federal point of purchase background checks that are not instantaneous. Such checks sometimes take as long as three days. In many transactions, there is additional delay because gun sellers must order the guns they contract to sell for delivery from a manufacturer or distributor.

20. Nothing in the Governor's Covid-19 emergency orders prevents a person who wishes to purchase a firearm from purchasing it in a legal private sale from another firearm owner, provided the private seller complies with the laws governing private transfers, including the registration requirement. DCJIS publishes information about private transfers at:
https://mircs.chs.state.ma.us/fa10/action/home?app_context=home&app_action=presentHome.

21. It is further my understanding the Governor's Covid19 emergency orders do not prevent businesses that are permitted to remain open under the orders, such as, for example, businesses that sell groceries, from also selling ammunition if they are licensed to do so and if they have ammunition on hand. Walmart stores are an example of businesses that are permitted to remain open and that are also licensed by the state to sell ammunition.

Signed under the pains and penalties of perjury,

_____           04/21/2020
Michaela Dunne                              DATE
Deputy Commissioner
Department of Criminal Justice Information Services
Executive Office of Public Safety and Security