# Exhibit EE

# TWENTIETH JUDICIAL CIRCUIT
## OF VIRGINIA



Loudoun, Fauquier and
Rappahannock Counties

**STEPHEN E. SINCAVAGE,** JUDGE
POST OFFICE BOX 470
LEESBURG, VIRGINIA 20178

**JEANETTE A. IRBY,** JUDGE
POST OFFICE BOX 470
LEESBURG, VIRGINIA 20178

**DOUGLAS L. FLEMING, JR.,** JUDGE
POST OFFICE BOX 470
LEESBURG, VIRGINIA 20178

**JAMES PAUL FISHER,** JUDGE
POST OFFICE BOX 470
LEESBURG, VIRGINIA 20178

**JAMES E. PLOWMAN, JR.,** JUDGE
POST OFFICE BOX 470
LEESBURG, VIRGINIA 20178

**W. SHORE ROBERTSON,** JUDGE RETIRED
**JAMES H. CHAMBLIN,** JUDGE RETIRED
**THOMAS D. HORNE,** JUDGE RETIRED
**BURKE F. MCCAHILL,** JUDGE RETIRED
**JEFFREY W. PARKER,** JUDGE RETIRED

June 10, 2020

Robert H. J. Loftus, Esq.
McCandlish & Lillard
11350 Random Hills Road, Suite 500
Fairfax, Virginia 22030

Toby J. Heytens, Esq.
Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219

In re:  <u>SEG Properties, LLC, et al.</u> v. Hon. Ralph S. Northam, et al., CL20-2818

Dear Counsel:

Thank you for your cooperation and efforts to address this matter remotely. Although it is an unusual process, the Court greatly appreciates your professionalism and understanding.

This case is before the Court on Plaintiff's Motion for Temporary Injunction. The facts at issue are as follows:

Plaintiffs, SEG Properties, LLC, Silver Eagle Group, LLC, Silver Eagle Group Northern Virginia, LLC, and Silver Eagle Membership 1, LLC (collectively "Silver Eagle Entities") are affiliated with a public, indoor shooting range in Loudoun County that also provides firearms training, armorer and gunsmith services, rental services, and sales. Silver Eagle Entities is joined by individual Plaintiff John Crump ("Plaintiff Crump" collectively "Plaintiffs"), who frequents the Silver Eagle Entities' shooting range to train and maintain his proficiency with firearms.

The Plaintiffs have brought the instant action against Governor Ralph Northam ("Governor"), Virginia State Police Superintendent Gary Settle ("Settle"), and Virginia State Health Commissioner Dr. M. Norman Oliver ("Commissioner"), relative to certain executive orders entered in response to the coronavirus ("COVID-19") pandemic.

*SEG Properties, LLC, et al. vs. Hon. Ralph S. Northam, et al., CL20-2818*

Page 1 of 9

Specifically, Plaintiffs allege that the executive orders prohibit public access to indoor shooting ranges, thereby infringing on their right to bear arms as protected by Virginia Constitution Article I, § 13.[1] They further argue that the executive orders exceed the scope of the Governor's executive authority.

The timeline of the executive orders is as follows:

- On March 12, 2020, the Governor issued Executive Order 51 ("EO 51"), declaring a state of emergency.

- On March 23rd, the Governor issued Executive Order 53 ("EO 53"), calling for temporary restrictions on certain activities in order to limit the spread of COVID-19. The impetus behind the Executive Order was the finding that "[u]nnecessary person-to-person contact increases the risk of transmission and community spread." EO 53 p. 1. Ergo, EO 53 aimed to "limit such interactions to those necessary to access food and essential materials." Id. Importantly, it called for "[c]losure of all public access to ... ["indoor shooting ranges"] until 11:59 p.m., Thursday, April 23, 2020 ..." EO 53, ¶ 4. Violation of EO 53 constituted a Class 1 misdemeanor.

- On March 30th, the Governor issued Executive Order 55 ("EO 55"), requiring individuals in Virginia to remain in their place of residence except as provided. Utilizing an indoor shooting range was not an enumerated exception. Violation of EO 55 also constituted a Class 1 misdemeanor.

- The closure was extended to May 7th and then again to May 14th by the First Amended EO 53 and the Second Amended EO 53, respectively.

- On May 8th, the Governor and Commissioner issued Executive Order 61 ("EO 61"), which outlined the "Phase One Reopening" for the Commonwealth. The Order included provisions for indoor shooting ranges to reopen on May 15th with certain protocols and precautions in place. Violations of the Order constituted a Class 1 misdemeanor. EO 61 was subsequently amended on three occasions, but those amendments are not relevant to the issue at bar.[2]

- On May 12th, the Governor and Commissioner issued Executive Order 62 ("EO 62"), delaying the Phase One Reopening for Northern Virginia, including Loudoun County. EO 62 noted that Northern Virginia had approximately a 25% positivity rate for COVID-19 as opposed to the remainder of Virginia, which was closer to 10%. In the preceding 24 hours, the region had over 700 cases, as opposed to the remainder of the

---

[1] Plaintiffs do not base their claims on the Second Amendment of the United States Constitution.
[2] Plaintiffs are not currently seeking relief under EO 61.

*SEG Properties, LLC, et al. vs. Hon. Ralph S. Northam, et al.,. CL20-2818*

Page 2 of 9

Commonwealth's 270 cases. Northern Virginia housed approximately 70% of the Commonwealth's cases. In light of these statistics, certain regions, including Northern Virginia were directed to delay entering Phase One Reopening though 11:59 p.m., May 28, 2020. At that point, EO 62 expired by its own terms and Northern Virginia is now operating under EO 61.

On May 15th, Plaintiffs filed their instant action along with the Motion for Temporary Injunction currently before the Court. The Motion alleges that Executive Orders 53, 55, and 62, requiring the closure of indoor shooting ranges, are *ultra vires* and in violation of Article 1, Section 13 of the Constitution of Virginia and VA. CODE ANN. § 44-146.15(3) (2012).

The Court conducted a hearing on the matter on June 8th. The Court has carefully considering the written pleadings, authorities citied, evidence admitted, and argument received in making its findings herein.

As a preliminary matter, the Court must first consider whether this issue is barred by the mootness doctrine. Generally speaking, when the controversy between litigants ceases to exist, the case is moot and must be dismissed. Virginia Broadcasting Corp. v. Commonwealth, 286 Va. 239, 247 (2013) (citing The Daily Press, Inc. v. Commonwealth, 285 Va. 447, 452 (2013)). With that being said "the mootness doctrine may be inapplicable when a proceeding is short-lived by nature." Id. at 248. In Virginia Broadcasting, the Court considered the denial of a television station's request to broadcast a criminal sentencing. Id. The Court found that, although the sentencing at issue had been completed, rendering the issue technically moot, it was excepted from the mootness doctrine by its nature. Id. Specifically, the station was likely to make similar requests in the future and, because of the immediate nature of the request, it was likely to never be ripe for judicial review. Id. Further, even "a voluntary cessation of the ... practices complained of could make [the] case moot *only if* it could be said with assurance that there is no reasonable expectation that the wrong will be repeated. Otherwise, the defendant is free to return to his old ways.'" DeFunis v. Odegaard, 416 U.S. 312, 318 (1974) (internal citation and quotations omitted) (emphasis added).

In the case at bar, the Defendant argues that the instant Motion is moot because EO 53, EO 55, and EO 62 are no longer in effect and the entirety of the Commonwealth is now operating under the Phase One Reopening guidelines of EO 61. As Plaintiff's Motion to Grant Temporary Injunction only challenges EO 53, EO 55, and EO 62, Defendants posit that there is nothing left for the Court to decide.

Plaintiffs argue, and the Court agrees, that the issue falls under an exception to the mootness doctrine because the dispute is capable of repetition. Northern Virginia was initially expected to enter into Phase One with the remainder of the Commonwealth, but was delayed from doing so by EO 62. Moreover, the impetus behind the executive orders, (COVID-19), is likely to remain a concern as data suggests it is not likely to soon dissipate and may, in fact, have a second resurgence. In fact, even the Defendants agree that data and understanding of COVID-19 is ever-evolving, necessitating changes in protocol that may include reverting to prior operating procedures. As such, the Court finds there is a reasonable expectation that the alleged wrong complained of will be repeated, rendering the issue not barred by the mootness doctrine.

*SEG Properties, LLC, et al. vs. Hon. Ralph S. Northam, et al.,. CL20-2818*

Page 3 of 9

Turning to the substance of the Motion, it is well settled that "[n]o temporary injunction shall be awarded unless the court shall be satisfied of the plaintiff's equity." VA. CODE ANN. § 8.01-628 (2015). "[T]he granting of an injunction is an extraordinary remedy and rests on sound judicial discretion to be exercised upon consideration of the nature and circumstances of a particular case." Levisa Coal Co. v. Consolidation Coal Co., 276 Va. 44, 60 (2008). Although the Supreme Court of Virginia has never articulated a temporary injunction standard, the Fourth Circuit and numerous Virginia circuit courts have found that the court must consider: (1) the plaintiffs' likelihood of success on the merits; (2) whether irreparable harm will be suffered if the temporary injunction is denied; (3) whether the harm to the plaintiffs outweighs the harm to the defendants; and (4) whether the injunction is in the interest of the public. See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); Meachin v. Bolin, 84 Va. Cir. 76 (City of Richmond 2013). In addition to the foregoing, this Court also found that it must assess whether the Plaintiffs have an adequate remedy at law. Int'l Limousine Serv. v. Reston Limousine & Travel Serv., 68 Va. Cir. 84 (Loudoun County 2005). In deciding this matter, the Court relies on those standards without adopting another test as argued by the Plaintiffs, citing Commonwealth ex rel. Bowyer v. Sweet Briar Inst., No. 150619, 2015 WL 3646914 (Va. S. Ct. June 9, 2015).

The Court's first consideration is whether the Plaintiffs have demonstrated a "clear showing" of likely success on the merits. See Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 345 (2009) citing Winter, 129 S. Ct. 365, 374 (2008). When examining a statute, the Court must determine the General Assembly's intent from the words contained therein. Tharrington v. Commonwealth, 58 Va. App. 704, 710 (2011). In doing so, the Court may not "add language to the statute the General Assembly has not seen fit to include." McGinnis v. Commonwealth, 296 Va. 489, 501 (2018) (internal citation omitted). Similarly, the Court may not presume that any part of the statute is without meaning. Postal Telegraph Cable Co. v. Norfolk & W.R. Co., 88 Va. 920, 926 (1892). This is because there is a presumption that "the General Assembly chose, with care, the words it used in enacting the statute, and [Courts] are bound by those words." Kiser v. A.W. Chesterton Co., 285 Va. 12, n.2 (2013) (citing Halifax Corp. v. First Union Nat'l Bank, 262 Va. 91, 100 (2001)).

VA. CONST. art. V, § 7 directs that the Governor "shall take care that the laws be faithfully executed." The Virginia Code, however, more fully delineates the powers of the Governor and the restrictions on those powers. In particular, VA. CODE ANN. § 44-146.17 (2008) authorizes the Governor to declare a state of emergency and to "take such action from time to time as is necessary for the adequate promotion and coordination of state and local emergency services activities relating to the safety and welfare of the Commonwealth in time of disasters." Id. In doing so, the Governor may "publish such rules and regulations and to issue such orders as may, in his judgment, be necessary to accomplish the purposes of [the Emergency Services and Disaster Law Chapter]..." Id. The Governor's executive orders may also "address exceptional circumstances that exist relating to an order of quarantine or an order of isolation concerning a communicable disease of public health threat that is issued by the State Health Commissioner for an affected area of the Commonwealth pursuant to Article 3.02 (§ 32.1-48.05 et seq.) of Chapter 2 of Title 32.1." These emergency powers were conferred to the Governor in part to "protect the

*SEG Properties, LLC, et al. vs. Hon. Ralph S. Northam, et al., CL20-2818*

Page 4 of 9

public peace, health, and safety, and to preserve the lives and property and economic well-being of the people of the Commonwealth ..." VA. CODE ANN. § 44-146.14(a) (2000).

As the Supreme Court of Virginia has emphasized, "[p]rompt action [is] required" during times of disaster to protect "safety and welfare." Boyd v. Commonwealth, 216 Va. 16, 19 (1975) (per curiam). "The invocation of emergency powers necessarily restricts activities that would normally be constitutionally protected." United States v. Chalk, 441 F.2d 1277, 1280 (4th Cir. 1971). For this reason, the exercise of emergency powers "must appear to have been reasonably necessary for the preservation of order." Id. at 1281. The Court's review of such exercise of executive powers during an emergency are, thus, limited to whether they "were taken in good faith and whether there is some factual basis for [the] decision that the restrictions ... imposed were necessary to maintain order." Id.

It is clear from the plain language of the statute that, in times of emergency, the Governor's powers are exceptionally broad under Title 44. Contrary to the Plaintiffs' contention, the Governor's powers do not preclude him from issuing orders as they relate to the closure of businesses. Nonetheless, EO 62 was not enacted by the Governor alone. Rather, he was joined by the Commissioner, so the Court must also examine the Commissioner's powers.

Title 32.1 declares that "the protection, improvement and preservation of the public health and of the environment are essential to the general welfare of the citizens of the Commonwealth." VA. CODE ANN. § 32.1-2 (1995). To attain that goal, the Commissioner is tasked with "abat[ing] hazards and nuisances to the health and to the environment, both emergency and otherwise, thereby improving the quality of life in the Commonwealth." Id. In particular, VA. CODE ANN. § 32.1-13 (1979) authorizes the State Board of Health to "make orders and regulations to meet an emergency, not provided for by general regulations, for the purpose of suppressing nuisances dangerous to the public health and communicable, contagious and infectious diseases and other dangers to the public life and health." See also VA. CODE ANN. § 32.1-42 (2004), When the Board is not in session, the Commissioner is vested with its authority. VA. CODE ANN. § 32.1-20 (1979).[3]

The Court finds that the language of the statute tasks the Commissioner with issuing regulations and orders to meet emergencies and suppress diseases. VA. CODE ANN. §32.1-13. Similar to the Governor's emergency powers, this language is extremely broad and the Court finds that it does not prohibit the Commissioner from issuing orders relating to businesses. Nonetheless, neither Title 32.1, nor any of the persuasive case law cited by the Defendants, grants additional emergency powers to the Governor.

Indeed, contrary to the Defendants' position, the Governor's role in issuing the executive orders is regulated solely by Title 44. Moreover, considering the Governor's and Commissioner's interests in protecting the Commonwealth from the spread of COVID-19 and the extensive scientific data and facts pertaining to the extremely contagious nature of the virus, the Court

---

[3] The Commissioner is also permitted by statute to issue orders of quarantine and isolation. See VA. CODE ANN. § 32.1-43 (2004). However, considering the requirements of such an order as prescribed in VA. CODE ANN. § 32.1-48.09(A) (2007) have not been met, the Court need not consider those powers.

*SEG Properties, LLC, et al. vs. Hon. Ralph S. Northam, et al.,. CL20-2818*

Page 5 of 9

finds that the executive orders have been issued in good faith. To that end, the Court must next consider the limits on the powers granted to both the Governor and the Commissioner.

VA. CODE ANN. § 44-146.15(3) (2012) explicitly states:

> Nothing in this chapter is to be construed to ... [e]mpower the Governor, any political subdivision, or any other governmental authority to in any way limit or prohibit the rights of the people to keep and bear arms as guaranteed by Article 1, Section 13 of the Constitution of Virginia ... including the otherwise lawful possession, carrying, transportation, sale, or transfer of firearms except to the extent necessary to ensure public safety in any place or facility designated or used by the Governor, any political subdivision of the Commonwealth, or any other governmental entity as an emergency shelter or for the purpose of sheltering persons ...

By virtue of Title 44 including such limiting provisions, it is clear that § 44-146.15(3) applies to the Governor. To hold otherwise would render the provision entirely moot. However, the plain language of the statute also applies to "any political subdivision, or any other governmental authority ..." §44-146.165(3). Ergo, the plain language of the statute similarly makes clear that the Governor is not absolved of limitations by joining with another figure (namely the Commissioner) in the issuance of an executive order. Rather, the limiting language encompasses both the Governor and any joining entity. For this reason, the Court finds that § 44-146.15(3) applies equally to the Governor and the Commissioner. With that in mind, the Court must next consider whether EO 53, EO 55, and EO 62 impermissibly infringe upon Virginia's Constitutional right to bear arms.

"That a well regulated militia, composed of the body of the people, trained to arms, is the proper, natural, and safe defense of a free state, therefore, the right of the people to keep and bear arms shall not be infringed ..." VA. CONST. art. I, § XIII. This safeguard is substantively similar to the United States Constitution that protects "the right of the people to keep and bear Arms ...", but is not without limitations. <u>DiGiacinto v. Rector and Visitors of George Mason Univ.</u>, 281 Va. 127, 134 (2011).[4] Although Virginia has not addressed the extent of the definition of the right to bear arms, the statute in question expands the meaning. VA. CODE ANN. § 44-146.15 (2012). Specifically, the statute protects not only the Virginia Constitutional protections, but also includes the "*otherwise lawful possession, carrying, transportation, sale, or transfer of firearms . . .*" VA. CODE ANN. § 44-146.15(3) (2012) (emphasis added).

The Court agrees with the Plaintiff that the Virginia Constitution implies a right to train to arms. However, the Court is not swayed that such protection extends beyond individuals to protect private, indoor shooting ranges. In fact, the Court finds that the persuasive case law cited by the

---

[4] Defendants argue that Plaintiffs have waived the ability to claim that the Virginia Constitution's protection of the right to bear arms is broader than that of the United States Constitution's protection. The Court, however, finds that the argument is of no import. Plaintiffs seek relief only under the Virginia Constitution and the focus of the argument is on the plain language of the protection, coupled with the interpretation of the protection in VA. CODE ANN. § 44-146.15(3) (2012). Therefore, the Court need not consider the differences and similarities of the provisions, let alone whether Plaintiff waived such an argument.

*SEG Properties, LLC, et al. vs. Hon. Ralph S. Northam, et al., CL20-2818*

Page 6 of 9

Plaintiffs in support of their position similarly fails to establish such protections even under the Second Amendment to the United States Constitution. In Ezell v. City of Chicago, 651 F.3d 684, 704 (7th Cir. 2011), a ban on firing ranges was unconstitutional because the jurisdiction also required firing range training as a prerequisite to lawful gun ownership. Thus, the focus was not on the rights of the range, but on the ability of individuals to obtain licensing to lawfully bear arms. In Ezell v. City of Chicago, 846 F.3d 888, 894 (7th Cir. 2017), the same issue continued because the zoning restrictions were so stringent and based on such speculative data that all but approximately 2.2% of the jurisdiction banned ranges, thereby again, effectively preventing individuals from being able to lawfully obtain firearms. Finally, New York State Rifle & Pistol Assoc. v. New York City, 883 F.3d 45, 58 (2nd Cir. 2018) assumed *arguendo* that bans on firing ranges imposed a substantial burden on core Second Amendment rights, but nonetheless held that the regulations imposed did not ban such ranges.

In sum, the Court finds that the plain language of the Virginia Constitution and the statutory protections afford the *people* the right to bear arms and that such protection extends to the right to train therewith. That protection, however, does not extend to businesses such as indoor shooting ranges. Focusing then on the rights of Plaintiff Crump, the Court must consider whether the executive orders at issue impermissibly infringe on his personal right to bear arms.

EO 53 required the "[c]losure of all public access to recreational and entertainment businesses . . . [including] indoor shooting ranges . . ." The executive order, however, did not limit an individual's right to possess firearms, let alone to train with them. In fact, because Virginia law has not defined what it means to "train," Plaintiff Crump could have continued to train through multiple other mediums (for example by reading books, accessing internet resources, and viewing videos). Moreover, the closure in EO 53 applied only to *indoor* shooting ranges, not outdoor ranges or private properties where individuals may lawfully discharge firearms. In fact, Plaintiff's affidavit submitted with their Motion stated that such outdoor shooting ranges exist in Loudoun County. Although Plaintiffs noted that those ranges required membership, there was no evidence presented that Plaintiff Crump would be ineligible for such membership. For these reasons, the Court finds that EO 53 did not impermissibly infringe on Plaintiff Crump's right to bear arms.

EO 55 required individuals in Virginia to remain in their place of residence except as provided. Such exceptions included "[e]ngaging in outdoor activity, including exercise, provided individuals comply with social distancing requirements ..." As noted above, several of the training options available to individuals may take place within the home. However, to the extent physical training with a firearm is necessary, individuals were, nonetheless, permitted to engage in such training as a permissible "outdoor activity." Thus, EO 55 similarly did not impermissibly infringe on Plaintiff Crump's right to bear arms.

EO 62 merely prevented Northern Virginia from progressing from Phase Zero to Phase One, so the analysis under EO 53 and EO 55 applies equally to EO 62.

The next prong for the Court to consider is that of irreparable harm and whether there is an adequate remedy available to the Plaintiffs at law. The United States Supreme Court has held that showing "irreparable harm" must be based on more than "a possibility," because issuing a preliminary injunction is an "extraordinary remedy that may be awarded upon a clear showing that the plaintiff is entitled to such relief." Real Truth About Obama, Inc. v. FEC, 575 F.3d 342,

*SEG Properties, LLC, et al. vs. Hon. Ralph S. Northam, et al., CL20-2818*

Page 7 of 9

346 (2009). "Unless the plaintiff can demonstrate that the property it seeks to protect has some personal value of sentiment or other intangible quality that cannot be restored to him at law ... or that monetary damages would otherwise not make him whole, the court will deny the injunction because the legal remedy is sufficient." Levisa Coal Co. v. Consolidation Coal Co., 276 Va. 44, 53-54 (2008) (internal citation omitted).

In the case at bar, Plaintiffs acknowledge that Silver Eagle Entities has continued to service law enforcement and government personnel. Mot. Ex. A, ¶ 7. Nonetheless, it has suffered a financial loss and has had to lay off employees, diminishing the businesses' institutional knowledge. Mot. Ex. A, ¶ 8. Nonetheless, as noted *supra*, the Court is not compelled that the right to bear arms extends to private businesses. For that reason, there is no irreparable harm to Silver Eagle Entities.

Plaintiff Crump, individually, has been unable to continue to train and practice at the Silver Eagle Entities' range. However, as discussed *supra*, he has not been prevented from bearing arms and training to arms otherwise. For this reason, the Plaintiffs have failed to establish this prong of the analysis.

The Court's next consideration is the balance of equities. On one hand, the Defendants have an interest in, and are in fact charged with, protecting the Commonwealth against the spread of COVID-19. On the other hand, the Plaintiffs seek the ability to operate their indoor shooting range and to allow the public, including Plaintiff Crump, to utilize their facilities. While Plaintiffs acknowledge the risk of COVID-19, they contend that the measures they have in place, including a negative pressure ventilation system and HEPA filtration system are sufficient to mitigate the risk. The Court finds that, although those safeguards are compelling, the Court cannot place private business interests above the public safety. Similarly, as other options are available to Plaintiff Crump, his interests also do not outweigh the Defendants' interest in protecting the public.

The last consideration for the Court is that of the interest of the public. The Court agrees with the Plaintiffs that the public has an interest in having individuals trained in the use of firearms and the interest against having new firearm owners without training. As noted *supra*, however, those interests may be satisfied by means other than indoor shooting ranges. Thus, the interest in firearm training, in this case does not outweigh the public's interest in health and safety. For these reasons, the Plaintiffs' Motion for Temporary Injunction is denied.

In addition to seeking a temporary injunction, Plaintiffs have also sought a declaration of their rights under the executive orders with respect to whether law enforcement agents and government personnel are to be counted against any capacity limitations within the executive orders. The Court finds that the executive orders speak for themselves and plainly do not exclude "agents" or "personnel" as an exception to the orders, let alone to any capacity limitations. Rather the exceptions in each executive order applies to "law enforcement *agencies; or* ... the operation of *government*." For this reason, the executive orders clearly speak for themselves and the Court denies Plaintiffs' request for further clarification.

*SEG Properties, LLC, et al. vs. Hon. Ralph S. Northam, et al.,. CL20-2818*

Page 8 of 9

Mr. Heytens is asked to please prepare and circulate to counsel an Order reflecting and incorporating the Court's rulings herein, and notice the Order for entry on the Court's docket for Friday, June 26, 2020 at 9:00 a.m. if not tendered to the Court before.

Very truly yours,

Jeanette A. Irby
Judge

*SEG Properties, LLC, et al. vs. Hon. Ralph S. Northam, et al.,. CL20-2818*

Page 9 of 9