# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|                                                                                           |                                        |
| ----------------------------------------------------------------------------------------- | -------------------------------------- |
| MICHAEL MCCARTHY, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>CHARLES D. BAKER, in his Official Capacity as Governor of the Commonwealth of Massachusetts, et al.,<br><br>*Defendants*. | CIVIL ACTION<br>NO. 1:20-cv-10701-DPW |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED

Defendants respond, pursuant to Rule 56(c) and Local Rule 56.1, to Plaintiffs' Statement of Material Facts:

1. On March 10, 2020, Governor Baker issued Executive Order No. 591 and declared a state of emergency "effective immediately and . . . in effect until notice is given, pursuant to [his] judgment, that the STATE OF EMERGENCY no longer exists."
   [Exec. Order No. 591, Declaration of a State of Emergency to Respond to COVID-19 (Mar. 10 , 2020); Exhibit A to Dec. of J. Kobick (Apr. 28, 2020), Doc. No. 62-1.]

   DEFENDANTS' RESPONSE: The document speaks for itself.

2. On March 19, 2020, the federal Cybersecurity and Infrastructure Security Agency ("CISA") issued its Memorandum on Identification of Essential Critical Infrastructure Workers During COVID-19 Response, which provided guidance on identifying "essential critical infrastructure workers." This document did not address firearms.
   [CISA, Memorandum on Identification of Essential Critical Infrastructure Workers During COVID-19 Response (Mar. 19 , 2020); Exhibit A to Dec. of J. Kobick (May 6, 2020), Doc. No. 79-1.]

   DEFENDANTS' RESPONSE: The document speaks for itself.

3. On March 23, 2020, Governor Baker issued COVID-19 Order No. 13, which ordered all businesses and organizations to "close their physical workplaces and facilities ('brick-

and-mortar premises') to workers, customers, and the public" unless they provided a service deemed "essential." Order No. 13 included an Exhibit A that listed the services deemed essential.
[COVID-19 Order No. 13 at p. 2, ¶ 2 & Ex. A at pp. 1-3, 8 (Mar. 23, 2020); Exhibit A to Dec. of T. MacCormack (May 1, 2020), Doc. No. 69, Attachment 1]

DEFENDANTS' RESPONSE: The document speaks for itself.

4. Governor Baker's COVID-19 Order No. 13 indicated that the CISA had "issued guidance to assist States that identifies 14 critical infrastructure sectors whose workers provide services and functions that are essential[.]" Order No. 13 stated further that "as Governor, I have identified additional services and functions that likewise are essential to promote the public health and welfare of the Commonwealth[.]" Order No. 13 did not reflect any intention to exclude any services or functions in the CISA guidance from the list of essential services for Massachusetts.
[COVID-19 Order No. 13 at pp. 1-2]

DEFENDANTS' RESPONSE: The document speaks for itself.

5. On March 28, 2020, CISA issued updated guidance regarding the designation of essential services. Among other things, this guidance included "Workers supporting the operation of firearm or ammunition product manufacturers, retailers, importers, distributors, and shooting ranges," as essential.
[Christopher C. Krebs, CISA, Memorandum on Identification of Essential Critical Infrastructure Workers During COVID-19 Response (Mar. 28, 2020); Exhibit Q to Dec. of J. Kobick (Apr. 28, 2020), Doc. No. 62-17.]

DEFENDANTS' RESPONSE: The document speaks for itself.

6. On March 31, 2020, Governor Baker issued COVID-19 Order No. 21, which extended Order No. 13 until May 4, 2020 and updated the list of essential services.
[Charles D. Baker, COVID-19 Order No. 21, Order Extending the Closing of Certain Workplaces and the Prohibition on Gatherings of More Than 10 People (Mar. 31, 2020); Exhibit I to Dec. of J. Kobick (Apr. 28, 2020), Doc. No. 62-9.]

DEFENDANTS' RESPONSE: The document speaks for itself.

7. Governor Baker's COVID-19 Order No. 21 indicated that CISA had "issued updated guidance on the identification of critical infrastructure" on March 28, 2020, and that "as Governor, I have identified additional services and functions that likewise are essential to

promote the public health and welfare of the Commonwealth[.]" Order No. 21 directed that the list of essential services included with Order No. 13 "is hereby replaced with [a new list] . . . to reflect the revised guidance of the Federal Cybersecurity and Infrastructure Security Agency and the additional services and functions that I, as Governor, have identified as essential[.]" Order No. 21 did not state an intention to exclude any services or functions that the CISA guidance included from the list of essential services for Massachusetts.
[COVID-19 Order No. 21 at p. 2]

DEFENDANTS' RESPONSE: The document speaks for itself.

8. The new list of essential services that Governor Baker originally released in conjunction with COVID-19 Order No. 21, at approximately 2:00 p.m. on March 31, 2020, included "Workers supporting the operation of firearm or ammunition product manufacturers, retailers, importers, distributors, and shooting ranges," as essential.
[Dec. of T. MacCormack (Doc. No. 69) at ¶ 4 & p. 16]

DEFENDANTS' RESPONSE: Uncontested.

9. At approximately 4:45 p.m. on March 31, 2020, Governor Baker's office released an updated list of essential services, which (pertinently) deleted the prior listing that included "firearms . . . retailers . . . and shooting ranges" in favor of one that included "Workers supporting the operation of firearm or ammunition product manufacturers, importers, and distributors."
[Dec. of T. MacCormack (Doc. No. 69) at ¶ 5 & p. 31]

DEFENDANTS' RESPONSE: Uncontested.

10. On April 28, 2020, Governor Baker issued COVID-19 Order No. 30, which directed that "COVID-19 Order No. 13[ was] hereby extended until May 18, 2020."
[COVID-19 Order No. 30 (Apr. 28, 2020); Charles D. Baker, COVID-19 Order No. 30, Order Further Extending the Closing of Certain Workplaces and the Prohibition on Gatherings of More than 10 People (Apr. 28, 2020); Exhibit T to Dec. of J. Kobick (Apr. 28, 2020), Doc. No. 62-20.]

DEFENDANTS' RESPONSE: The document speaks for itself.

11. On May 15, 2020, Governor Baker issued COVID-19 Order No. 32, which provided, pertinently, that "COVID-19 Order No. 13 is hereby extended to . . . May 19, 2020."
[COVID-19 Order No. 32 (May 15, 2020); Charles D. Baker, COVID-19 Order No. 32,

Order Temporarily Extending COVID-19 Order No. 13 (May 15, 2020); Exhibit 1 to Dec. of David D. Jensen (submitted herewith)]

DEFENDANTS' RESPONSE: The document speaks for itself.

12. On May 18, 2020, Governor Baker issued COVID-19 Order No. 33, which directed the beginning of "Phase I" reopening on May 19, 2020. Among other things, Order No. 33 included "Firearms retailers and shooting ranges" as services that could reopen during Phase I.
[COVID-19 Order No. 33 at ¶ 1 (May 18, 2020); Charles D. Baker, COVID-19 Order No. 33, Order Implementing a Phased Reopening of Workplaces and Imposing Workplace Safety Measures to Address COVID-19 (May 18, 2020); Exhibit 2 to D. Jensen Dec. (submitted herewith)]

DEFENDANTS' RESPONSE: The first sentence is contested; COVID-19 Order No. 33 states that it became "effective immediately" upon its issuance on May 18, 2020. The second sentence is uncontested to the extent that the document speaks for itself.

13. In connection with Phase I reopening, Governor Baker released a four-phase "Reopening" plan at a press conference held on May 11, 2020.
[Charles D. Baker, Press Release (May 11, 2020); Exhibit 1 to Dec. of David D. Jensen (Jun. 6, 2020), Doc. No. 110-1; Reopening Advisory Board, Four-Phase Approach to Reopening Massachusetts (May 11, 2020); Exhibit 2 to Dec. of David D. Jensen (Jun. 6, 2020), Doc. No. 110-2]

DEFENDANTS' RESPONSE: Uncontested.

14. On June 6, 2020, Governor Baker issued COVID-19 Order No. 37, which, among other things, began "Phase II" reopening and rescinded Order No. 13 and its designation of essential services.
[COVID-19 Order No. 37 at ¶¶ 1, 5 (Jun. 6, 2020); Exhibit A to Doc. No. 111]

DEFENDANTS' RESPONSE: The document speaks for itself.

15. On July 2, 2020, Governor Baker issued COVID-19 Order No. 43, which began "Phase III" reopening.
[Charles D. Baker, COVID-19 Order No. 43, Order Authorizing the Re-Opening of Phase III Enterprises (May 15, 2020); Exhibit 3 to D. Jensen Dec. (submitted herewith)]

DEFENDANTS' RESPONSE: The document speaks for itself.

16. The Commonwealth maintains a website addressed to "Reopening Massachusetts," and this website includes, among other things, a section entitled, "When can my business reopen?" This document indicates that "All businesses deemed essential by previous orders" are "Currently allowed." With regard to "Firearm retailers and shooting ranges," the document provides, "Phase I – May 18."
    [Reopening Massachusetts, Reopening: When can my business reopen?; Exhibit 4 to D. Jensen Dec. (submitted herewith)]

    DEFENDANTS' RESPONSE: Uncontested.

17. All of the individual Plaintiffs are licensed to purchase and possess guns in Massachusetts.
    [W. Biewenga Dec. (Doc. No. 11) ¶ 2; L. Warner Dec. (Doc. No. 12) ¶ 2; T. Galligan Dec. (Doc. No. 13) ¶ 2; J. Simmons Dec. (Doc. No. 14) ¶ 2; D. Lantagne Dec. (Doc. No. 15) ¶ 2]

    DEFENDANTS' RESPONSE: Uncontested.

18. While the essential services shutdown was in effect, the individual Plaintiffs could not purchase ammunition.
    [W. Biewenga Dec. (Doc. No. 11) ¶ 10; L. Warner Dec. (Doc. No. 12) ¶ 11; T. Galligan Dec. (Doc. No. 13) ¶ 11; J. Simmons Dec. (Doc. No. 14) ¶ 13; D. Lantagne Dec. (Doc. No. 15) ¶ 13]

    DEFENDANTS' RESPONSE: Contested. [Declaration of Michaela Dunne ("Dunne Dec.") at ¶ 21 (Doc. No. 61-3) ("[T]he Governor's Covid19 emergency orders do not prevent businesses that are permitted to remain open under the orders, such as, for example, businesses that sell groceries, from also selling ammunition if they are licensed to do so and if they have ammunition on hand. Walmart stores are an example of businesses that are permitted to remain open and that are also licensed by the state to sell ammunition.") At least 11 Massachusetts Walmart stores, which were all licensed to sell ammunition, were selling ammunition of various types during the period when gun retail businesses were required to be closed. [Affidavit of Marlee Greer, ¶¶ 3-6 (Doc No. 61-5).]

19. While the essential services shutdown was in effect, most of the individual Plaintiffs did not know of anywhere other than a gun store that they could purchase a gun.
    [W. Biewenga Dec. (Doc. No. 11) ¶ 8; L. Warner Dec. (Doc. No. 12) ¶ 9; T. Galligan Dec. (Doc. No. 13) ¶ 9; J. Simmons Dec. (Doc. No. 14) ¶ 11; D. Lantagne Dec. (Doc. No. 15) ¶ 11]

DEFENDANTS' RESPONSE: Contested. One of the individual plaintiffs purchased a gun in a private sale while the essential services orders were in effect. [Kobick Affidavit Exhibit FF, Stipulation, ¶ 3.] And one of the individual plaintiffs reviewed advertisements for private firearms sales at some point or points in time between March 24 and May 9, 2020. [Kobick Affidavit Exhibit FF, Stipulation, ¶ 4.]

20. While the essential services shutdown was in effect, most of the individual Plaintiffs did not feel comfortable purchasing a gun from a stranger.
[W. Biewenga Dec. (Doc. No. 11) ¶ 9; L. Warner Dec. (Doc. No. 12) ¶ 10; T. Galligan Dec. (Doc. No. 13) ¶ 10; J. Simmons Dec. (Doc. No. 14) ¶ 12; D. Lantagne Dec. (Doc. No. 15) ¶ 12]

DEFENDANTS' RESPONSE: Contested. One of the individual plaintiffs purchased a gun in a private sale on April 16, 2020, while the essential services orders were in effect. [Kobick Affidavit Exhibit FF, Stipulation, ¶ 3.] One or more of the individual plaintiffs purchased a gun shortly after gun retailers reopened in May 2020, but none of these individual plaintiffs has attested that the employee(s) of the gun retailers who sold the weapon were not strangers at the time of purchase. [Kobick Affidavit Exhibit FF, Stipulation, ¶ 1.]

21. Plaintiffs Troy City Tactical LLC and Shooting Supply LLC are both licensed retailers of guns and ammunition.
[M. Skidmore Dec. (Doc. No. 16) ¶¶ 1-2; M. Bouchard Dec. (Doc. No. 18) ¶¶ 1-2]

DEFENDANTS' RESPONSE: Uncontested.

22. While the essential services shutdown was in effect, Plaintiffs Troy City Tactical LLC and Shooting Supply LLC could not sell guns, ammunition and other items, at least to the general public, and turned away business.
[M. Skidmore Dec. (Doc. No. 16) ¶¶ 3-8; M. Bouchard Dec. (Doc. No. 18) ¶¶ 3-9]

DEFENDANTS' RESPONSE: Uncontested.

23. Plaintiff Worcester Pistol and Rifle Club, Inc. is a club with outdoor and indoor ranges and 949 members.
[A. Bonofiglio Dec. (submitted herewith) ¶¶ 2-6]

DEFENDANTS' RESPONSE: Uncontested.

24. Gun owners require practice to gain and maintain proficiency with guns, and new shooters have the most need for practice.
 [A. Bonofiglio Dec. (submitted herewith) ¶¶ 6-10; M. Ayoob Dec. (submitted herewith) ¶ 12]

 DEFENDANTS' RESPONSE: Uncontested.

25. Gun owners typically use a shooting range for practice, as most do not own land that is appropriate for shooting.
 [A. Bonofiglio Dec. (submitted herewith) ¶¶ 10, 13; T. Leighton Dec. (submitted herewith) ¶¶ 8-10]

 DEFENDANTS' RESPONSE: Defendants object to Plaintiffs' statement because it is not properly supported in the record or is supported solely by inadmissible hearsay. Defendants further object on the ground that it is improper opinion evidence. In addition, the Plaintiffs' statement is contested based on the fact that there are many open areas in the Commonwealth where hunting and target shooting are permitted. [*See* "Where to Hunt in Massachusetts," Division of Fisheries and Wildlife, MASS.GOV (2020) https://www.mass.gov/where-to-hunt-in-massachusetts.]

26. While the essential services shutdown was in effect, the members of Plaintiff Worcester Pistol and Rifle Club, Inc., including Plaintiff Thomas Leighton, could not use the range or other facilities at the club.
 [A. Bonofiglio Dec. (submitted herewith) ¶¶ 11-14; T. Leighton Dec. (submitted herewith) ¶¶ 16-19]

 DEFENDANTS' RESPONSE: Uncontested.

27. If another essential services shutdown comes int in effect, the members of Plaintiff Worcester Pistol and Rifle Club, Inc., including Plaintiff Thomas Leighton, will presumably not be able to use the range or other facilities at the club.
 [A. Bonofiglio Dec. (submitted herewith) ¶ 15; T. Leighton Dec. (submitted herewith) ¶¶ 21-22]

 DEFENDANTS' RESPONSE: Contested. There is no proper basis in the record for this statement. It is an unsupported hypothetical or opinion of the affiants with no basis in fact.

28. Aside from guns and ammunition, gun stores typically sell safety equipment, accessories and other items needed by gun owners.

[A. Bonofiglio Dec. (submitted herewith) ¶¶ 2, 4, 7; M. Skidmore Dec. (submitted herewith) ¶¶ 2, 4-5, 7-8; M. Bouchard Dec. (submitted herewith) ¶¶ 4, 7; T. Leighton Dec. (submitted herewith) ¶ 20]

DEFENDANTS' RESPONSE: Uncontested.

29. Gun stores are an important source of knowledge and information for gun owners, particularly new and inexperienced gun owners, and this is an advantage over purchasing guns from private sellers.
[M. Skidmore Dec. (submitted herewith) ¶¶ 3-6; M. Bouchard Dec. (submitted herewith) ¶¶ 5-7; T. Galligan Dec. (Doc. No. 84) ¶¶ 3-5]

DEFENDANTS' RESPONSE: Contested. There is no proper basis in the record for this statement. It is an unsupported opinion of the affiants with no basis in fact.

30. One advantage that a gun store normally offers over a non-gun store that sells ammunition, such as a "big box" store like WalMart, is that gun stores are much more likely to stock ammunition that is suitable and appropriate for self-defense, such as hollow point or expanding point ammunition.
[M. Ayoob Dec. (submitted herewith) ¶¶ 3-11]

DEFENDANTS' RESPONSE: Contested. There is no proper basis in the record for this statement. It is an unsupported opinion of the affiant with no basis in fact insofar as there is no admissible evidence of what any particular store is likely to stock. Nor is there a basis for the affiant's assumption that other forms of ammunition cannot be used effectively for self-defense.

31. Another advantage that a gun store offers over WalMart in particular, is that WalMart does not carry handgun ammunition other than .22 rimfire ammunition, and .22 rimfire ammunition is generally regarded as being unsuitable and inappropriate for self-defense.
[M. Ayoob Dec. (submitted herewith) ¶¶ 3-5]

DEFENDANTS' RESPONSE: It is uncontested that Walmart does not carry handgun ammunition other than .22 rimfire ammunition. The balance of the statement is contested. It is an unsupported opinion of the affiant with no basis in fact insofar as there is no admissible evidence that. 22 caliber rimfire ammunition cannot be used effectively when necessary for self-defense.

32. One advantage that a gun retailer offers over a private seller is the opportunity to handle and try different types of guns.
    [W. Biewenga Dec. (Doc. No. 83) ¶ 3; D. Lantagne Dec. (Doc. No. 85) ¶¶ 1-2]

    DEFENDANTS' RESPONSE: Uncontested.

33. Another advantage that a gun retailer offers over a private seller is that an individual purchasing a gun, who may not be familiar with every applicable gun law, has a stronger assurance that the transaction is lawful.
    [W. Biewenga Dec. (Doc. No. 83) ¶ 4; T. Galligan Dec. (Doc. No. 84) ¶ 6; D. Lantagne Dec. (Doc. No. 85) ¶ 4; L. Warner Dec. (Doc. No. 86) ¶¶ 1, 4]

    DEFENDANTS' RESPONSE: Contested. There is no proper basis in the record for this statement. It is an unsupported opinion of the affiants with no basis in fact insofar as there is no admissible evidence of the practices of any particular gun retailer or private seller. Nor is there a basis for the affiant's assumption that gun purchasers who purchase from private sellers cannot use various publicly available resources to understand applicable governing transactions involving guns. [*See, e.g.*, "Massachusetts Firearms Laws, Department of Criminal Justice Information Services, MASS.GOV, https://www.mass.gov/lists/massachusetts-firearms-laws.]

34. Another advantage that a gun retailer offers over a private seller is that a retailer may be able to provide a potential purchaser with hands-on instruction.
    [W. Biewenga Dec. (Doc. No. 83) ¶ 2; T. Galligan Dec. (Doc. No. 84) ¶ 5]

    DEFENDANTS' RESPONSE: Contested. There is no proper basis in the record for this statement. It is an unsupported opinion of the affiants with no basis in fact insofar as there is no admissible evidence of the practices of any particular gun retailer or private seller. Nor is there a basis for the affiants' assumption that they cannot obtain hands-on instruction from a private seller.

35. Another advantage that a gun retailer offers over a private seller is that a gun sold by a retailer will come with a better warranty and is less likely to be defective.
    [D. Lantagne Dec. (Doc. No. 85) ¶ 3; L. Warner Dec. (Doc. No. 86) ¶¶ 2-3]

    DEFENDANTS' RESPONSE: Contested. There is no proper basis in the record for this statement. It is an unsupported opinion of the affiants with no basis in fact insofar as there is no admissible evidence of the practices of any particular gun manufacturer, gun retailer or private seller.

36. Plaintiff Second Amendment Foundation ("SAF") is a nonprofit member organization with core purposes that include supporting and preserving the Second Amendment right to keep and bear arms.
[A. Gottlieb Dec. (submitted herewith) ¶¶ 3-4]

    DEFENDANTS' RESPONSE: Uncontested.

37. SAF has members in Massachusetts who would be adversely affected by a future shutdown of gun and ammunition retailers and ranges.
[A. Gottlieb Dec. (submitted herewith) ¶¶ 5, 7]

    DEFENDANTS' RESPONSE: Defendants have no information concerning the truth of this Statement which is a mere assertion that is unsupported by the record.

38. SAF has also diverted its own resources to respond to Covid-19 closures in Massachusetts.
[A. Gottlieb Dec. (submitted herewith) ¶ 6]

    DEFENDANTS' RESPONSE: Defendants have no information concerning the truth of this Statement which is a mere assertion that is unsupported by the record.

39. Plaintiff Commonwealth Second Amendment ("Comm2A") is a nonprofit member organization with core purposes that include supporting and preserving the Second Amendment right to keep and bear arms.
[B. Carlton Dec. (submitted herewith) ¶¶ 2-4]

    DEFENDANTS' RESPONSE: Uncontested.

40. Comm2A has members in Massachusetts who would be adversely affected by a future shutdown of gun and ammunition retailers and ranges.
[B. Carlton Dec. (submitted herewith) ¶¶ 4-5, 8]

    DEFENDANTS' RESPONSE: Defendants have no information concerning the truth of this Statement which is a mere assertion that is unsupported by the record.

41. Comm2A has also diverted its own resources to respond to Covid-19 closures in Massachusetts.
[B. Carlton Dec. (submitted herewith) ¶ 7]

DEFENDANTS' RESPONSE: Defendants have no information concerning the truth of this Statement.

42. Plaintiff Firearms Policy Coalition ("FPC") is a nonprofit member organization with core purposes that include supporting and preserving the Second Amendment right to keep and bear arms.
[A. Kraut Dec. (submitted herewith) ¶¶ 2-5]

    DEFENDANTS' RESPONSE: Uncontested.

43. FPC has members in Massachusetts who would be adversely affected by a future shutdown of gun and ammunition retailers and ranges.
[A. Kraut Dec. (submitted herewith) ¶¶ 6-7, 10]

    DEFENDANTS' RESPONSE: Defendants have no information concerning the truth of this Statement which is a mere assertion that is unsupported by the record.

44. FPC has also diverted its own resources to respond to Covid-19 closures in Massachusetts.
[A. Kraut Dec. (submitted herewith) ¶¶ 8-9]

    DEFENDANTS' RESPONSE: Defendants have no information concerning the truth of this Statement which is a mere assertion that is unsupported by the record.

45. Information from the Commonwealth indicates that the number of hospitalized Covid-19 patients in Massachusetts has increased 21% over the past 30 days.
[Massachusetts Department of Public Health, *COVID-19 Dashboard* (Sept. 22, 2020); Exhibit 5 to D. Jensen Dec. (submitted herewith)]

    DEFENDANTS' RESPONSE: Uncontested.

46. Arizona, California and Florida surged earlier in the summer, while some areas in the Great Plains are surging now.
[*Covid in the U.S.: Latest Map and Case Count*, N.Y. Times (Sept. 23, 2020 at 12:08 p.m. E.T.); Exhibit 6 to D. Jensen Dec. (submitted herewith)]

    DEFENDANTS' RESPONSE: Uncontested.

47. Covid-19 infections have risen substantially in Europe in recent weeks, leading to the re-imposition of restrictions in many countries, including Germany, Norway, Spain and the United Kingdom.
[Danica Kirka and Sylvie Corbet, *Europe adopts tougher virus restrictions as infections surge*, AP News (Sept. 21, 2020); Exhibit 7 to D. Jensen Dec. (submitted herewith)]

    DEFENDANTS' RESPONSE: Uncontested.

48. Many experts and public health officials continue to warn of a probable "second wave" in North America during the winter and fall.
[Joel Achenbach and Rachel Weiner, *Experts project autumn surge in coronavirus cases, with a peak after Election Day*, Washington Post (Sept. 5, 2020); Exhibit 8 to D. Jensen Dec. (submitted herewith)]

    DEFENDANTS' RESPONSE: Uncontested.

49. During a Republican leadership call that took place on April 7, 2020, Governor Baker offered two specific justifications for "the decision to exclude gun retailers, ammunition retailers and/or shooting ranges from the list of Essential Services." First, Governor Baker explained that "[t]he overarching consideration in developing the list as a whole was to limit the list of essential services strictly in order to substantially reduce out-of-home activities and associated contacts." Second, Governor Baker stated that "experts and advocates working in the field of domestic violence had expressed strong concerns about the potential for an increase in incidents of domestic violence due to stress and mental health problems resulting from the pandemic generally and due to the effect of substantially curtailing opportunities to leave the home specifically. He explained that a pause on immediate access to firearm purchases from gun retailers could mitigate at least some part of this risk." Governor Baker also noted that the decision "would impose only a temporary interruption," and that "the order ensured that law enforcement would have uninterrupted access to these supplies necessary to their work."
[Baker Interrogatory Response no. 3]

    DEFENDANTS' RESPONSE: Uncontested.

50. Governor Baker's notes from the leadership call state:
    > Firearms – domestic violence comm. pushback; when ppl out of
    >     daily routine, increase stress; mental health + domestic
    >     violence; law enforcement; 2nd amend – temp
    >     disrupt/guidance, change when life get normal
    >     didn't rise to level of essential
    [Exhibit 9 to D. Jensen Dec. (submitted herewith)]

DEFENDANTS' RESPONSE: Contested. There is no basis in the record to refer to this document as "Governor Baker's notes from the leadership call."

51. The documents that Governor Baker identified and produced in response to Plaintiffs' discovery request seeking all documents "considered in connection with, or that otherwise concern, the inclusion or exclusion of gun retailers, ammunition retailers and/or shooting ranges in or from any list of Essential Services or any Phased Reopening" include:
[Baker Interrogatory Response no. 1; Defendants' Production Response no. 1; below references are to pages attached as Exhibit 10 to D. Jensen Dec. (submitted herewith)]

   a. a total of 30 communications from members of the public expressing an opinion regarding the decision to open or close of gun-related activities;
   [GOV0042-46, GOV0158-59, GOV0426-54]

   b. of those communications, 25 came from individuals who expressed support for the closure and were all sent between April 20, 2020 and April 27, 2020;
   [GOV0426-50]

   c. of the 25 communications expressing support for the closure, 23 were verbatim;
   [GOV0426-27, GOV0429-33, GOV0435-50]

   d. of the 23 verbatim emails, the only organization identified is "Stop Handgun Violence";
   [GOV0450]

   e. of those 30 total communications, 2 or perhaps 3 came from individuals who expressed opposition to the closure and were received on April 2, 2020, April 5, 2020 and April 17, 2020;
   [GOV0451-54]

   f. of those communications, 1 came from a person at a gun control organization expressing disagreement with the Court's ruling and was received on May 8, 2020; and
   [GOV0042-46]

   g. of those communications, 1 come from a person inquiring about the possibility of virtual instruction and was received (in the Governor's office) on May 20, 2020.
   [GOV0158-59]

DEFENDANTS' RESPONSE: Defendants object on the basis of relevance.

-13-

52. The documents that Governor Baker, Commissioner Bharel and Commissioner Gagnon identified and produced in response to Plaintiffs' discovery requests seeking all documents "considered in connection with, or that otherwise concern, the inclusion or exclusion of gun retailers, ammunition retailers and/or shooting ranges in or from any list of Essential Services or any Phased Reopening" do not include:

    a. any studies or research pertinent to the decision; or

    b. anything discussing or referencing any differences between the physical characteristics of gun and ammunition retailers and shooting ranges, as compared with other services that were considered "essential"; or

    c. anything discussing or referencing any differences between the physical characteristics of gun and ammunition retailers and shooting ranges, as compared with other services that were considered "essential."

    [Baker Interrogatory Response no. 1; Bharel Interrogatory Response no. 1; Gagnon Interrogatory Response no. 1; Defendants' Production Response no. 1]

    DEFENDANTS' RESPONSE: Uncontested as to subparagraphs (b) and (c). Subparagraph (a) is contested to the extent that studies and research pertinent to the decision to close businesses in order to stop the spread of COVID-19 were produced.

53. The first time that Commissioner Monica Bharel, MD participated in "discussions that concerned or addressed any decision to include or exclude gun retailers, ammunition retailers and/or shooting ranges in or from any list of Essential Services or any Phased Reopening" was "on or about April 10, 2020, and on several dates thereafter," when she "drafted an affidavit in connection with this lawsuit."
    [Bharel Interrogatory Response no. 3]

    DEFENDANTS' RESPONSE: Uncontested.

54. The documents that Commissioner Bharel identified and produced in response to Plaintiffs' discovery request seeking all documents "considered in connection with, or that otherwise concern, the inclusion or exclusion of gun retailers, ammunition retailers and/or shooting ranges in or from any list of Essential Services or any Phased Reopening" did not include any studies or research pertinent to the decision.
    [Bharel Interrogatory Response no. 1; Defendants' Production Response no. 1]

    DEFENDANTS' RESPONSE: Contested. See Response to Statement No. 52.

55. The documents that Commissioner Gagnon identified and produced in response to Plaintiffs' discovery request seeking all documents "considered in connection with, or that otherwise concern, the inclusion or exclusion of gun retailers, ammunition retailers and/or shooting ranges in or from any list of Essential Services or any Phased Reopening" do not include any studies or research pertinent to the decision.
[Gagnon Interrogatory Response no. 1; Defendants' Production Response no. 1]

    DEFENDANTS' RESPONSE: Contested. See Response to Statement No. 52.

56. Commissioner Jamison Gagnon "sent Undersecretary [Kerry] Collins a text message link to a tweet from Attorney General Maura Healey regarding the status of gun shops during the shutdown" on April 1, 2020.
[Gagnon Interrogatory Response no. 3]

    DEFENDANTS' RESPONSE: Uncontested.

57. The tweet from Attorney General Healey stated, "Gun shops and shooting ranges are NOT essential businesses during a public health emergency. We cannot undermine the safety of our police officers, first responders, and domestic violence victims."
[Gagnon Interrogatory Response no. 3; Exhibit 11 to D. Jensen Dec. (submitted herewith)]

    DEFENDANTS' RESPONSE: Uncontested.

58. On March 31, 2020, Speaker of the House Robert DeLeo contacted Governor Baker and expressed his disapproval of the inclusion of firearms retailers and ranges in the list of essential services.
[Matt Murphy, *Baker reversed course on gun shop, range openings*, Lowell Sun, Apr. 2, 2020; Exhibit 12 to D. Jensen Dec. (submitted herewith)]

    DEFENDANTS' RESPONSE: Contested. There is no basis for this statement in the record other than inadmissible hearsay.

Respectfully submitted,

CHARLES BAKER, Governor of the Commonwealth of Massachusetts; MONICA BHAREL, Commissioner of the Department of Public Health; and JAMISON GAGNON, Commissioner of the Department of Criminal Justice Information Services,

By their attorney,

MAURA HEALEY
ATTORNEY GENERAL

/s/ Julia E. Kobick
Gary Klein (BBO No. 560769)
Special Assistant Attorney General
Julia E. Kobick (BBO No. 680194)
Assistant Attorney General
One Ashburton Place
Boston, Massachusetts 02108
(617) 651-3650
(617) 963-2559
Gary.Klein@state.ma.us

Dated: October 19, 2020    Julia.Kobick@mass.gov

**CERTIFICATE OF SERVICE**

I certify that, on October 19, 2020, this document, filed through the Court's ECF system, will be sent electronically to registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ Julia E. Kobick
Julia E. Kobick
Assistant Attorney General