VIRGINIA:

IN THE CIRCUIT COURT FOR THE CITY OF LYNCHBURG

LYNCHBURG RANGE & TRAINING, LLC
d/b/a SafeSide Lynchburg,

VIRGINIA CITIZENS DEFENSE LEAGUE,

GUN OWNERS OF AMERICA, INC.,

and

ASSOCIATION OF VIRGINIA GUN RANGES,

        Plaintiffs,

v.                            Case No. CL20-333

HON. RALPH S. NORTHAM
(In his Official Capacity as
Governor of the Commonwealth of Virginia)

and

GARY T. SETTLE
(In his Official Capacity as
Superintendent of the Virginia State Police)

        Defendants.

### ORDER GRANTING TEMPORARY INJUNCTION

CAME THIS DAY the Plaintiffs, by counsel, upon their Application for Temporary Injunction. Upon review of the pleadings and the arguments of counsel, and for good cause shown, it is hereby ORDERED that:

1. The Application for Temporary Injunction is GRANTED for the reasons set forth in the letter opinion attached hereto and incorporated herein, and upon the further terms set forth in this Order.

2. The Governor, the Department of State Police, and all law enforcement divisions,

agencies, and officers within the Commonwealth, are hereby enjoined and prohibited from enforcing, in any manner, the prohibition on public access to Lynchburg Range & Training, LLC d/b/a SafeSide Lynchburg ("SafeSide") as set forth in Paragraph 4 of Executive Order Number Fifty-Three issued by the Governor on March 23, 2020 and amended on April 15, 2020, provided that SafeSide shall operate in a manner consistent with Paragraph 7 of Executive Order Number Fifty-Three (i.e., operate to the fullest extent possible in a manner consistent with social distancing and sanitizing guidance from federal and state authorities) ;

3. Nothing in this Order shall be construed to enjoin or prohibit the enforcement of any other aspect of Executive Order Number Fifty-Three issued by the Governor on March 23, 2020 and amended on April 15, 2020.

4. This Temporary Injunction shall take effect immediately and remain in effect until May 8, 2020 (the expiration of Executive Order Number Fifty-Three), or until such time as the Court may dissolve, modify, or extend this Temporary Injunction by further order.

5. No injunction bond shall be required pursuant to Va. Code § 8.01-631.

6. The Court waives endorsement of counsel pursuant to Rule 1:13 of the Rules of Virginia Supreme Court.

ENTERED this 27th day of April, 2020.

F. Patrick Yeatts, Judge

# TWENTY-FOURTH JUDICIAL CIRCUIT
# OF VIRGINIA

F. PATRICK YEATTS, JUDGE
900 COURT STREET
P.O. BOX 4
LYNCHBURG, VA 24505
(434) 455-2600
(434) 847-1350 (FAX)



COMMONWEALTH OF VIRGINIA
CITIES OF LYNCHBURG AND BEDFORD
COUNTIES OF AMHERST, BEDFORD, CAMPBELL AND NELSON

April 27, 2020

David G. Brown, Esq.
Spiro & Browne, PLC
6802 Paragon Place, Suite 410
Richmond, VA 23230

Toby J. Heytens, Esq.
Solicitor General
Office of the Attorney General
202 North Ninth Street
Richmond, VA 23219

RE: **Lynchburg Range & Training, LLC d/b/a SafeSide Lynchburg, etc. v. Hon. Ralph S. Northam, et al., CL20000333, Circuit for the City of Lynchburg**

Dear Mr. Brown and Mr. Heytens:

I am writing to furnish you with the decision of the Court in the above case. This matter came before the Court on an application for a declaratory judgment, temporary injunction, and petition for writ of mandamus. The Court has reviewed the relevant pleadings and considered the arguments made at the hearing via video conference on April 24, 2020.

### Background

In the spring of 2020, Governor Ralph Northam ("the Governor") declared a state of emergency and issued multiple executive orders in response to the coronavirus ("COVID-19") pandemic. On March 17, an executive order allowed only ten patrons in restaurants, fitness centers, and theaters.

Signed on March 23, Executive Order 53 ("Order") closed from March 24 to April 23 all K-12 schools, churches, restaurants, and recreational/entertainment businesses. On April 15, the Governor extended the Order to May 8. In defining the closed recreational and entertainment businesses, the Order listed indoor shooting ranges.

Lynchburg Range & Training, LLC, d/b/a SafeSide Lynchburg ("SafeSide"), Virginia Citizens Defense League ("VCDL"), Gun Owners of America, Inc. ("GOA"), and the Association of Virginia Gun Ranges ("AVGR") sued the Governor and Superintendent of

Virginia State Police Gary T. Settle. The plaintiffs claim the Order goes beyond the scope of the Governor's executive authority, violates Article I, § 13 of the Constitution of Virginia (Right to Keep and Bear Arms), and violates Article I, § 7 (Anti-Suspension Provision). The plaintiffs concede to the earlier executive order limiting them to 10 patrons at a time. In response, the Governor contends he has authority to enter the Order pursuant to the emergency powers from Virginia Code § 44-146.16 (Emergency Laws), Virginia Code Title 32.1 (Health), and Article V, §§ 1 and 7 of the Constitution of Virginia (Executive Powers).

## Discussion

To obtain a temporary injunction, the plaintiffs must show the following: (1) likelihood of success on the merits, (2) they will suffer irreparable harm absent injunctive relief, (3) the harm to plaintiffs outweighs the harm to the defendants from an injunction, and (4) an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

### A. Likelihood of Success on the Merits

Virginia Code § 44-146.17 allows the Governor to declare a state of emergency when the State Health Commissioner issues an "order of isolation concerning a communicable disease of public health threat" as defined in § 44-146.16. Although it grants the Governor broad emergency powers, § 44-146.15(3) constrains the Governor from "limit[ing] or prohibit[ing] the rights of the people to keep and bear arms as guaranteed by Article I, Section 13 of the Constitution of Virginia or the Second Amendment of the Constitution of the United States, including the otherwise lawful possession, carrying, transportation, sale, or transfer of firearms."

#### 1. Virginia Code § 44-146.15(3) limits the Governor's emergency powers.

As pointed out by the Governor, § 44-146.15(1) provides that nothing in Title 44 limits the Governor's authority under laws independent of Title 44. The Governor argues that § 44-146.15(3) does not apply because he has authority to close indoor gun ranges independent of the powers granted in § 44-146.17. Def's Br. 8 n.13. For this independent authority, the Governor refers to Title 32.1, which lays out the duties of the State Board of Health and the State Health Commissioner. The Governor asserts that the "Board . . . 'may promulgate regulations and orders to meet any emergency or to prevent a potential emergency caused by a disease dangerous to public health.'" *Id.* at 9 (citing Va. Code § 32.1-42). He reasons that the Order is "consistent with the authority provided in Title 32.1." *Id.*

The Governor does not show how Title 32.1 grants power to close categories of businesses, nor does he explain how such authority transfers to him without the application of § 44-146.17's emergency powers. Because Title 32.1 deals with only the State Board of Health and the State Health Commissioner, the Court rejects the argument that Title 32.1 by itself grants the Governor authority to shut down whole categories of businesses without declaring a state of emergency under § 44-146.17, which references Title 32.1.

The Governor also argues that his authority to close indoor gun ranges emanates from his chief executive power and duty to "take care that the laws be faithfully executed." *Id.* (citing Va. Const. art. V, §§ 1, 7). The Governor appears to argue that, when he declares a state of emergency, he can ignore any law that limits his power, even laws designed to limit his power

Page 2

during a state of emergency. Such an interpretation would defeat the reason for making § 44-146.15(3) and render the statute meaningless. The Court cannot agree with such an expansive interpretation of the Governor's authority. His duty to "take care that the laws be faithfully executed" includes the laws that limit his power during emergencies like § 44-146.15(3).

Accordingly, the Court finds that the Governor's power to close whole categories of businesses would come from only § 44-146.17, which is constrained by § 44-146.15(3) regarding the right to keep and bear arms.

### 2. Virginia Code § 44-146.15(3)'s protection extends to gun ranges.

Although the parties barely analyzed the meaning of § 44-146.15(3) in their briefs, the Court must start with the text. Section 44-146.15(3) references the right to keep and bear arms in the constitutions of both Virginia and the United States. Containing almost every word of the Second Amendment of the United States Constitution, Virginia's version provides that "a well regulated militia, composed of the body of the people, *trained to arms*, is the proper, natural, and safe defense of a free state, therefore, the right of the people to keep and *bear arms* shall not be infringed . . . ." (emphasis added). The operative clause provides the right to keep and bear arms, and the prefatory clause provides that the purpose of the right is to have a population trained with firearms in order to defend the Commonwealth.

This case presents the question whether indoor gun ranges are within the scope of "bear arms." When the current version of the Virginia Constitution was adopted in 1971, *Black's Law Dictionary* defined "bear arms" as including "the right to load and shoot them, and to use them as such things are generally used." *Bear Arms*, Black's Law Dictionary (rev. 4th ed. 1968) (citing *Hill v. State*, 53 Ga. 472, 480 (1874). Loading and shooting correlates with the desired training specifically referenced in the prefatory clause. Gun ranges provide a venue for such training to occur; thus, "bear arms" includes loading and shooting at a gun range.

Section 44-146.15(3) bolsters this interpretation by clarifying that the right to keep and bear arms "includ[es] the otherwise lawful possession, carrying, transportation, sale, or transfer of firearms." By beginning the list with the word "including," the legislature indicated that the list is not exhaustive. *See Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941) ("[T]he term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle.") The statute lists activities pertaining to the lawful use of firearms. Like the activities listed, shooting at a range is ordinarily a lawful activity in the Commonwealth.

The Court's interpretation is consistent with federal court cases that interpret the federal Second Amendment. The Unites States Supreme Court gleaned from Samuel Johnson's dictionary that the Second Amendment term "well-regulated" implied proper training. *See Dist. of Columbia v. Heller*, 554 U.S. 570, 597 (2008). The Supreme Court has thus found by implication what is more clearly stated in Virginia's version of the federal Second Amendment.

The Seventh and Second Circuit Court of Appeals have also recognized the right to firearm training. The Seventh Circuit held that the federal Constitution's Second Amendment includes a corresponding right to train with firearms by target practice at a range. *Ezell v. City of*

*Chicago*, 651 F.3d 684, 704 (7th Cir. 2011) ("The right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use; the core right wouldn't mean much without the training and practice that make it effective."); *see also Ezell v. City of Chicago*, 846 F.3d 888 (7th Cir. 2017). The Second Circuit reasoned that "we may assume that the ability to obtain firearms training and engage in firearm practice is sufficiently close to core Second Amendment concerns that regulations that sharply restrict that ability to obtain such training could impose substantial burdens on core Second Amendment rights." *New York State Rifle & Pistol Ass'n v. City of New York*, 883 F.3d 45, 58 (2d Cir. 2018), cert. granted No. 18-280 (argued Dec. 2, 2019).

The Governor argues he should be afforded great deference due to COVID-19, and he cites several cases in which federal courts have deferred to state laws during an emergency. Def's Br. 10-11 (citing *Jacobson v. Massachusetts*, 197 U.S. 11 (1905); *Smith v. Avino*, 91 F.3d 105 (11th Cir. 1996); *United States v. Chalk*, 441 F.2d 1277 (4th Cir. 1971)). None of these cases are applicable to the case at hand. They are all examples of federal courts giving state lawmakers deference on constitutional issues when the state is undergoing an emergency. Thus, the cases do not apply to the present case in which the Governor's executive order conflicts with a state statute. During an emergency, the Governor is given great deference, but § 44-146.15(3) specifically limits his authority in relation to the right to keep and bear arms. It is regrettable the Governor only one time in a footnote cited the statute on which this case turns.

The Governor argues intermediate scrutiny should be applied because the Order does "not implicate the central self-defense concern" behind the right to keep and bear arms. Def's Br. 14 (citing *United States v. Chester*, 628 F.3d 673, 682 (4th Cir. 2010). The Court appreciates the amicus brief from law professors A.E. Dick Howard, Russell A. Miller, and Carl W. Tobias, and its expanded analysis of Fourth Circuit cases related to intermediate scrutiny as well as its argument that the Order be evaluated as a reasonable time, place, or manner restriction borrowed from First Amendment jurisprudence.

But the case involves both statutory and constitutional rights analyses, not a pure constitutional rights analysis. Levels of scrutiny favorable to the Governor in the present case contradict § 44-146.15(3)'s provision that the Governor cannot "*in any way limit or prohibit* the rights of the people to keep and bear arms." (emphasis added). Having found that indoor gun ranges are protected by the statute, the Court cannot uphold executive orders that limit or prohibit indoor gun ranges. The Court assumes executive orders regulating all businesses would not violate the statute, but the Order targets indoor gun ranges by lumping them in with the closure of recreational businesses.

The Court declines to invent a level of scrutiny to circumvent the text in the statute. If the Court were to use a level of scrutiny, the Court would find that proper training and practice at a range, as analyzed above, is fundamental to the right to keep and bear arms, even necessary for the self-defense concern discussed by the Governor. Accordingly, the Court would apply strict scrutiny and find that the Order fails because the total closing of all indoor gun ranges is not narrowly tailored.

In the argument related to intermediate scrutiny, the amicus brief cites *United States v. Masciandaro* in which two Fourth Circuit judges declined to extend the right to keep and bear

arms beyond the confines of the home. 638 F.3d 458, 475 (2011). Complaining of the lack of guidance from the United States Supreme Court, the two judges framed their decision as "restraint" and "simple caution" because they did "not wish to be even minutely responsible for some unspeakably tragic act of mayhem because in the peace of our judicial chambers we miscalculated as to Second Amendment rights." *Id.* at 475-476.

Like the position of the judges in *Masciandaro*, the Court finds little guidance from the Commonwealth's appellate courts on this issue, so the Court resorts to the traditional tools of interpretation like dictionaries to discover the meaning of the text. The Court agrees with *Masciandaro*'s emphasis on judicial restraint and not "substitut[ing] [the Court's] pleasure to that of the legislative body." *The Federalist* No. 78, at 467 (Alexander Hamilton) (Clinton Rossiter ed., 1961). But courts must apply the meaning of the text at the time it was adopted because failing to exercise this duty would render worthless the rights contained in the text. *Id.* at 465.

For the reasons stated above, the Court finds that the plaintiffs are likely to succeed on the merits.

**B. Irreparable Harm**

The plaintiffs have demonstrated irreparable harm to SafeSide, SafeSide's employees, and SafeSide's customers. With the range closed, SafeSide is losing income from not serving its members; employees are out of work and suffering financially; and customers are denied access to train on the range, which is especially unsettling for new gun owners with no prior firearm experience.

The Governor contends the economic concerns are not enough and that outdoor gun ranges provide a sufficient alternative to indoor gun ranges. Def's Br. 16-17. He also claims a "*temporary* inability to use a *subset* of shooting ranges . . . does not constitute . . . irreparable harm." *Id.* at 17. The Governor failed to provide evidence that there are any outside gun ranges in Lynchburg, which has an ordinance that allows the discharge of firearms only at approved gun ranges. *See* Lynchburg, Va., Code art. III, § 27-67. Thus, the Court cannot find that an outdoor alternative exists in Lynchburg. Furthermore, the Court rules that the right to keep and bear arms is not relegated to the outskirts of the city and of fundamental rights jurisprudence. *See Ezell*, 651 F.3d at 697 ("It's hard to imagine anyone suggesting that Chicago may prohibit the exercise of a free-speech or religious-liberty right within its borders on the rationale that those rights may be freely enjoyed in the suburbs. That sort of argument should be no less unimaginable in the Second Amendment context."). The Court also rules that the temporary violation of a constitutional right itself is enough to establish irreparable harm. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). The irreparable harm began on March 24 and continues each day the Order, as it pertains to indoor gun ranges, remains in effect.

**C. Balance of Equities**

The plaintiffs have demonstrated a depravation of the constitutional right to keep and bear arms, financial hardship for the business and employees, and lack of training access for its customers. There is also a risk in having new, untrained gun owners relying on those guns in

self-defense without previously having had an opportunity to fire them at a range. The Court recognizes the immense pressure and responsibility the Governor has in reducing the spread of COVID-19. However, SafeSide has shown a willingness to conform with what is commonly called "social distancing" as well as the executive order limiting the range to ten patrons at a time. Other evidence like the dividers between shooters, a ventilation system drawing airflow away from shooters, and the HEPA filtration system, leads the Court to conclude that the balance of equities favors granting the temporary injunction.

**D. Public Interest**

The Court finds that a temporary injunction serves the public interest. In his Americanized version of Blackstone's *Commentaries on the Laws of England*, St. George Tucker called the right to keep and bear arms the "true palladium of liberty," and he called the right of self-defense "the first law of nature." 1 *Blackstone's Commentaries, With Notes of Reference to the Constitution and Laws of the General Government of the United States and of the Commonwealth of Virginia* App. 300 (1803). From the Virginia Declaration of Rights in 1776 to the present day, Virginia's political leaders have codified protections around this right.

Even though the emergency powers provision contemplates the spreading of a communicable disease like COVID-19, § 44-146.15(3) carves out a protection for the right to keep and bear arms in order to ensure the force of this right during an emergency. The Court does not see how disregarding the statute would benefit the public interest and the rule of law. The Court understands the Governor's desire to protect the citizens of our great Commonwealth. But in taking steps to stop the spread of COVID-19, he took a step beyond what is allowed by § 44-146.15(3), which the Court has a duty to interpret and apply.

**Conclusion**

The Court holds that the closing of indoor gun ranges violates § 44-146.15(3). In granting the plaintiffs' request for a temporary injunction, the Court enjoins the defendants from enforcing the Order as to SafeSide for the reasons set forth herein and pursuant to the terms in the attached order. The Court denies plaintiffs' request for a writ of mandamus.

Sincerely yours,

F. Patrick Yeatts, Judge