# Exhibit 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL MCCARTHY, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> CHARLES D. BAKER, in his Official Capacity as Governor of the Commonwealth of Massachusetts, et al., <br><br> *Defendants*. | CIVIL ACTION <br> NO. 1:20-cv-10701-DPW |

**REPLY BRIEF IN SUPPORT OF**
**DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

Having filed their memorandum in opposition to the Defendants' Cross-Motion for Summary Judgment a full week late, and without leave of this Court, the plaintiffs persist in presenting the Court with a skewed portrayal of the undisputed facts and a warped view of the law. Although this Court should disregard the plaintiffs' tardy opposition memorandum and Local Rule 56.1 response, *see* Defendants' Motion to Strike, ECF Doc. No. 136, to the extent it considers those documents, the defendants submit this reply brief to briefly point out several of the plaintiffs' inaccuracies and notify this Court of recent on-point case law.

**ARGUMENT**

**I.      This Case Remains Moot and Must Be Dismissed for Lack of Jurisdiction.**

The plaintiffs have no convincing response to the defendants' argument that this case has been moot since May 2020 and that the voluntary cessation exception to mootness cannot save their claims from dismissal.

The First Circuit has made clear that when a challenged government action has "expired according to its terms" and the government defendant has done "nothing to hasten its expiration,

1

much less … to terminate litigation," the case is moot and fails for lack of jurisdiction. *Am. Civil Liberties Union of Mass. v. U.S. Conference of Catholic Bishops*, 705 F.3d 44, 55 (1st Cir. 2013). In such cases, a court does not even consider whether the voluntary cessation doctrine applies; instead, the voluntary cessation exception—and the standards that apply to the exception—are simply "not invoked." *Id.* ("This, in our view, is not a case of voluntary cessation so as to invoke the exception."). That is so because "'[t]he voluntary cessation doctrine does not apply when the voluntary cessation of the challenged activity occurs because of reasons unrelated to the litigation.'" *Id.* (quoting M. Redish, MOORE'S FED. PRACTICE, § 101.99[2]). The plaintiffs do not dispute—nor could they dispute—that the government actions challenged here, COVID-19 Order Nos. 13, 21, and 30, expired and that the defendants did nothing to hasten their expiration. That incontrovertible state of affairs requires dismissal of the plaintiffs' claims, all of which challenge those long-since-expired and long-ago-rescinded orders.

Rather than respond to this point, the plaintiffs argue that this Court should nevertheless consider the standard for when the voluntary cessation exception does apply, and conclude that it retains jurisdiction, because there exists some remote possibility that Governor Baker could re-impose orders identical to COVID-19 Order Nos. 13, 21, and 30. *See* Pltfs.' Opposition & Reply Mem., ECF Doc. No. 135, at 2-3 ("Pltfs.' Opposition Br."). But, as another Judge in this Court recently recognized, that argument misunderstands the voluntary cessation exception. In late October, at a time when Massachusetts was already experiencing its second serious wave of COVID-19 infections, Judge Stearns concluded that the voluntary cessation doctrine could not save from dismissal claims challenging certain of Governor Baker's superseded COVID-19 Orders. *See* ECF Doc. No. 22, *Boston Bit Labs, Inc., d/b/a Bit Bar Salem v. Baker*, No. 1:20-cv-11641-RGS (Oct. 28, 2020), *appeal pending* (1st Cir. No. 20-2046). The voluntary cessation

doctrine would have required the Court to engage in "an undue degree of speculation regarding the future course of the virus and the measures Governor Baker may opt to take to counteract its spread." *Id.* Because, as the Court concluded, "it would be inappropriate for [the Court] to engage in speculation at this juncture, particularly on a matter of public health," it found "the voluntary cessation doctrine inapplicable and therefore dismisse[d] [the] plaintiff's case as moot." *Id.*

The Supreme Court's recent decision in *Roman Catholic Diocese of Brooklyn v. Cuomo* provides a pertinent comparison with this case. In that case, the controversy was not moot because the challenged executive order was still in effect at the time of the decision and the Governor retained authority under the order to reclassify houses of worship into categories with more burdensome restrictions on the size of gatherings. *See Roman Catholic Diocese of Brooklyn v. Cuomo*, --- S. Ct. ---, 2020 WL 6948354, at *3 (Nov. 25, 2020) (per curiam). But in this case, the challenged essential services orders have been expired for more than six months and, despite the current surge in COVID-19 cases in Massachusetts, Governor Baker has not taken any actions that implicate gun retailers or shooting ranges. Thus, as Judge Stearns correctly ruled in the *Boston Bit Labs* case, any argument that the voluntary cessation doctrine saves this case from dismissal relies upon an "undue degree of speculation." ECF Doc. No. 22, *Boston Bit Labs, Inc., d/b/a Bit Bar Salem v. Baker*, No. 1:20-cv-11641-RGS (Oct. 28, 2020); *see also World Gym, Inc. v. Baker*, --- F. Supp. 3d ---, 2020 WL 4274557, at *2 (D. Mass. July 24, 2020) (Casper, J.) (claims for injunctive relief challenging the Governor's essential services orders as they relate to the closure of gyms became moot once gyms were allowed to reopen and are not capable of repetition, yet evading review).[1]

---

[1] The plaintiffs attempt to distinguish the *World Gym* case by noting that no preliminary injunction had been issued when the Court determined that the case had become moot. *See* Pltfs.' Opposition Br., at 3. But there is no precedent whatsoever for the proposition that, once a

In accord with First Circuit precedent and the rulings of other Judges in this Court, this Court should dismiss the plaintiffs' claims as moot and enter judgment in favor of the defendants.

## II.     The Plaintiffs' Second Amendment Challenge to COVID-19 Order Nos. 13, 21, and 30 Fails on the Merits.

In the alternative, the plaintiffs' Second Amendment claim continues to fail on the merits. The plaintiffs devote most of their argument on the claim to the proposition that COVID-19 Order Nos. 13, 21, and 30 amounted to a substantial burden on core Second Amendment rights. *See* Pltfs.'Opposition Br., at 6-13. But the question of how heavily a challenged statute, regulation, or government order burdens core Second Amendment rights is relevant only to the question of what level of constitutional scrutiny applies to that action. *See Gould v. Morgan*, 907 F.3d 659, 670-71 (1st Cir. 2018) ("the appropriate level of scrutiny must turn on how closely a particular law or policy approaches the core of the Second Amendment right and how heavily it burdens that right"); *see also* Pltfs.' Opposition Br., at 11 (recognizing as much). And the plaintiffs have already conceded, in accord with this Court's prior analysis, that, to the extent the challenged COVID-19 Orders are reviewed under a traditional Second Amendment analysis, intermediate scrutiny is the correct standard of review. *See* Pltfs.' Mem. in Support of Mot. for Summ. J., ECF Doc. No. 121, at 12. Indeed, the plaintiffs made no argument in their opening brief that strict scrutiny should apply; any such argument at this point is, accordingly, waived. *See, e.g.*, *Kelly v. Riverside Partners, LLC*, 964 F.3d 107, 117 (1st Cir. 2020); *Grundy v. HSBC Bank USA, N.A. as Trustee for Registered Noteholders of Renaissance Home Equity Loan Trust 2006-3*, No. 17-cv-11449-PBS,

---

preliminary injunction has been issued, a case thereafter may not be dismissed even though it is moot. For their part, the plaintiffs in the *World Gym* case properly recognized that their claims had become moot and entered into a stipulation of dismissal with the defendants. *See* ECF Doc. No. 19, *World Gym Inc. v. Baker*, No. 20-cv-11162-DJC (Aug. 4, 2020) (stipulation of dismissal); ECF Doc. No. 20, *World Gym Inc. v. Baker*, No. 20-cv-11238-DJC (Aug. 4, 2020) (same).

2020 WL 1326269, at *21 (D. Mass. Feb. 10, 2020) (Report and Recommendation) (movant's failure to raise argument in support of summary judgment motion resulted in waiver of the argument).[2]

The plaintiffs' concession was proper. The First Circuit has applied intermediate scrutiny to governmental impingements on Second Amendment rights far more substantial than the temporary closure of gun retailers and shooting ranges formerly at issue in this case. *See, e.g.*, *United States v. Booker*, 644 F.3d 12, 23 (1st Cir. 2011) (applying intermediate scrutiny to review a "categorical ban on gun ownership by a class of individuals" who had been convicted of domestic violence misdemeanors); *see also Gould*, 907 F.3d at 672 (explaining that the standard applied in *Booker* was "indistinguishable from intermediate scrutiny"). For all the reasons explained in the defendants' opening brief, the short-term closure of gun stores and shooting ranges—one that lasted less than two months, during which time there were alternative channels for acquiring firearms and ammunition and training with those weapons—was simply not a heavy burden on the core protections of the Second Amendment. *See* Defts.' Mem. in Support of Cross-Mot. for Summ. J., ECF Doc. No. 127, at 11-13. Not surprisingly, no court has concluded that a temporary closure of gun retailers during the COVID-19 pandemic should be reviewed under strict scrutiny. In fact,

---

[2] Because, as this Court has explained and the plaintiffs have conceded, intermediate scrutiny is the proper standard of review under a traditional Second Amendment analysis, the Supreme Court's recent decision in *Roman Catholic Diocese of Brooklyn v. Cuomo* has no bearing on any traditional constitutional analysis undertaken in this case. In that case, the Supreme Court reviewed the restrictions imposed on houses of worship under strict scrutiny, which required that the New York Governor's order "be narrowly tailored to serve a compelling state interest." *Roman Catholic Diocese of Brooklyn*, 2020 WL 6948354, at *2 (internal quotation marks omitted); *see also id.* at *8 (Kavanaugh, J., concurring) (explaining that while, in applying strict scrutiny, he does "not doubt the State's authority to impose tailored restrictions—even very strict restrictions—on attendance at religious services," but New York's restrictions on houses of worship were not tailored and, indeed, were "much more severe than the restrictions at issue in *South Bay*"). As described below, intermediate scrutiny does not require that the means of achieving the government's interest be narrowly tailored. *See infra*, at 8-9.

5

since the defendants filed their cross-motion for summary judgment, two more decisions have ruled that, at most, intermediate scrutiny applies to such temporary closures. *See McDougall v. County of Ventura*, 2020 WL 6532871, No. 2:20-cv-02927-CBM-AS, at *7-*9 (C.D. Cal. Oct. 21, 2020) (dismissing on the merits a Second Amendment claim brought by plaintiffs challenging an expired order that had temporarily closed gun stores in the early months of the COVID-19 pandemic after concluding that the temporary closure of gun retailers "survive[d] intermediate scrutiny"); *Brandy v. Villanueva*, Case No.: 20-cv-02874-AB-SK (C.D. Cal., Oct. 20, 2020), Order Granting Defendants' Motion for Judgment on the Pleadings (ECF Doc. No. 68) (granting judgment on the pleadings to the government after upholding a temporary closure of firearms and ammunition retailers under intermediate scrutiny) (Attached as Exhibit A).

As explained in the defendants' opening brief, the temporary closure of gun retailers and shooting ranges in Massachusetts, at the beginning of the pandemic and during the height of the Commonwealth's springtime surge in COVID-19 cases, readily satisfies intermediate scrutiny. There can be no dispute that the Governor's objective in issuing COVID-19 Order Nos. 13, 21, and 30—the only government actions challenged in this case—was to prevent the spread of COVID-19 in Massachusetts. Indeed, the Orders explicitly identify that purpose. *See* COVID-19 Order No. 13, ECF Doc. No. 128-5, at 1 (the purpose of the initial essential service order and its extensions was "to limit activities outside of the home … [in order] to limit the spread of this highly contagious and potentially deadly virus"). And the plaintiffs have not disputed that, as a factual matter, "[t]he purpose of Order was to limit activities outside of the home … [in order] to limit the spread of this highly contagious and potentially deadly virus." Defts.' Statement of Material Facts ¶ 16 (ECF Doc. No. 129); *see* Pltfs.' Response to Defts.' FRCP 56.1 Statement of Material Facts ¶ 16 (ECF Doc. No. 133) (not disputing that fact). As a result of the plaintiffs'

failure to contest that fact, and as a result of basic common sense, the governmental purpose for the challenged COVID-19 Orders, including their application to gun retailers and shooting ranges, was to prevent transmission of COVID-19 in Massachusetts. *See* D. Mass. Local Rule 56.1 ("Material facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties."); *Dark Storm Indus. LLC v. Cuomo*, --- F. Supp. 3d ---, 2020 WL 3833107, at *11 (N.D.N.Y. July 8, 2020) (citing the defendants' statement of material facts and the plaintiffs' response in concluding that "[t]here is no dispute that the Executive Orders [that required temporary closure of gun retailers] were issued to combat the spread of COVID-19").

The plaintiffs attempt to obfuscate the obvious purpose of COVID-19 Order Nos. 13, 21, and 30 by faulting the Governor for not, *ex ante*, identifying a separate public-health purpose specific to gun retailers and shooting ranges. *See* Pltfs.' Opposition Br., at 13-17. But that entirely misunderstands the analysis. Governor Baker did not need to explain, *ex ante*, with respect to each industry excluded from the essential services list that could claim some constitutional protection, that his aim was to prevent the spread of COVID-19. *See, e.g.*, *Roman Catholic Diocese of Brooklyn*, 2020 WL 6948354, at *2 (accepting that the objective of the challenged executive order, which applied to houses of worship and other institutions, was "[s]temming the spread of COVID-19," and not insisting on evidence that the Governor identified a public-health purpose particular to houses of worship); *South Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020) (Roberts, C.J., concurring) (same). But even if it were otherwise, the undisputed evidence shows that Governor Baker's objective in excluding gun retailers and shooting ranges from the essential services list was to "substantially reduce out-of-home activities and associated contacts"

in order to "slow or prevent transmission of the COVID-19 virus." ECF Doc. No. 122-9, at 4. The plaintiffs have presented no evidence to contest this purpose with respect to gun retailers and shooting ranges, nor does any such evidence exist.

The defendants' evidence amply demonstrates a substantial fit between the Governor's goal of reducing COVID-19 transmission in the early days of the pandemic in Massachusetts and the temporary closure of gun retailers and shooting ranges through COVID-19 Order Nos. 13, 21, and 30. The plaintiffs, for their part, do not meaningfully contest that fit. They merely contend that, in examining fit, some form of narrow tailoring analysis or consideration of less restrictive alternatives is required. *See* Pltfs.' Opposition Br., at 17-19. They are simply wrong. The First Circuit made clear in *Gould* that in applying intermediate scrutiny to Second Amendment claims, there must only be a "'reasonable fit … such that the law does not burden more conduct than is reasonably necessary.'" 907 F.3d at 674 (quoting *Drake v. Filco*, 724 F.3d 426, 436 (3d Cir. 2013)). And the Court directly rejected application of narrow tailoring in the analysis. *Id.*

The plaintiffs attempt to get around the First Circuit's holding by asking this Court to look to "alternative regulatory approaches," but their argument ignores the entire body of First Circuit case law applying intermediate scrutiny to Second Amendment claims. Pltfs.' Opposition Br., at 18. When the First Circuit upheld under intermediate scrutiny the statute banning domestic violence misdemeanants from possessing firearms, it did not examine whether alternative regulatory approaches could have achieved comparable public safety goals. *See Booker*, 644 F.3d at 25-26. When the First Circuit upheld under intermediate scrutiny the discretion afforded licensing authorities to restrict the scope of law-abiding citizens' licenses to carry, it likewise did not examine whether alternative approaches could have comparably protected Massachusetts residents. *See Gould*, 907 F.3d at 674-77. And when the First Circuit upheld under intermediate

8

scrutiny Massachusetts' statute banning the possession of assault weapons and large-capacity magazines, it rejected the argument that the statute should have included an exception for law-abiding, responsible citizens. *See Worman v. Healey*, 922 F.3d 26, 40 (1st Cir. 2019). Rather than engage with the plaintiffs' proffered "alternative regulatory approach," the First Circuit emphasized that "[t]he role of a reviewing court is limited to ensuring 'that, in formulating its judgments, [the government] has drawn reasonable inferences based on substantial evidence' … and that 'the fit between the asserted governmental interests and the means chosen to advance them is close enough to pass intermediate scrutiny.'" *Id.* (quoting *Gould*, 907 F.3d at 674, 676).

Far from weighing less restrictive alternatives, these cases emphasize the duty of a court to defer to the government's reasonable choices in furthering important governmental objectives like the promotion of public health and public safety. *See Gould*, 907 F.3d at 673, 676. Recognizing this, two more courts recently upheld under intermediate scrutiny the temporary closure of gun and ammunition retailers during the early months of the COVID-19 pandemic. *See McDougall*, 2020 WL 6532871, at *7-*9; *Brandy*, Order Granting Defendants' Motion for Judgment on the Pleadings, at 6-7. This Court should likewise conclude that, as applied to temporarily require closure of gun retailers and shooting ranges for less than two months during the Commonwealth's springtime surge in COVID-19 cases, COVID-19 Order Nos. 13, 21, and 30 comported with the Second Amendment.

**III.    The Plaintiffs Offer No Argument on Their Damages Claims, Which Are Barred by the Defendants' Qualified Immunity.**

Finally, the plaintiffs' opposition rightfully does not dispute that their individual-capacity claims for damages are barred by the defendants' qualified immunity. The defendants are, accordingly, entitled to judgment on those claims as well.

## CONCLUSION

For the foregoing reasons and for the reasons set forth in the Memorandum in Support of Defendants' Cross-Motion for Summary Judgment, this Court should grant the Defendants' Cross-Motion for Summary Judgment.

                              Respectfully submitted,

                              CHARLES BAKER, Governor of the Commonwealth of Massachusetts; MONICA BHAREL, Commissioner of the Department of Public Health; and JAMISON GAGNON, Commissioner of the Department of Criminal Justice Information Services,

                              By their attorney,

                              MAURA HEALEY
                              ATTORNEY GENERAL

                              /s/ Julia E. Kobick
                              Julia E. Kobick (BBO No. 680194)
                              Assistant Attorney General
                              Gary Klein (BBO No. 560769)
                              Special Assistant Attorney General
                              One Ashburton Place
                              Boston, Massachusetts 02108
                              (617) 963-2559
                              Julia.Kobick@mass.gov
Dated: **[insert]**                  Gary.Klein@state.ma.us

## CERTIFICATE OF SERVICE

I certify that, on **[insert date]**, this document, filed through the Court's ECF system, will be sent electronically to registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                              /s/ Julia E. Kobick
                              Julia E. Kobick
                              Assistant Attorney General

# Exhibit A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 20-cv-02874-AB-SK | Date: | October 20, 2020 |
|---|---|---|---|

| Title: | *Adam Brandy, et al. v. Alex Villanueva, et al.* |
|---|---|

| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |
|---|---|

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** [In Chambers] ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (ECF 56)

### I. INTRODUCTION

Before the Court is Defendants' County of Los Angeles, Sheriff Alex Villanueva, and Barbara Ferrer's ("Defendants") Motion for Judgment on the Pleadings. (ECF 56.) The Court determined that no hearing was necessary and took the matter under submission. For the reasons stated below, the Court **GRANTS** Defendants' Motion.

### II. BACKGROUND

#### A. The Instant Action

On March 27, 2020, Plaintiffs Adam Brandy, Daemion Garr, DG2A Enterprises, Inc., d.b.a. Gun World, Second Amendment Foundation, California Gun Rights Foundation, National Rifle Association of America, and Firearms Policy Coalition (collectively, "Plaintiffs") brought suit against Defendants Alex

Villanueva, Gavin Newsom, Sonia Y. Angell, Barbara Ferrer, and County of Los Angeles alleging Second Amendment violations. (ECF 1.) On March 29, 2020, Plaintiffs filed a First Amended Complaint ("FAC") seeking injunctive and declaratory relief (ECF 9), and on April 6, 2020, this Court denied Plaintiffs' *ex parte* application for a temporary restraining order as to the enforcement of firearm business closure orders. (*See* ECFs 14, 29.)

Currently, Defendants County of Los Angeles, Sheriff Alex Villanueva, and Barbara Ferrer have moved for judgment on the pleadings as to Plaintiffs' FAC. (ECF 56). Plaintiffs opposed and Defendants filed a reply.

### B. Public Health Orders

The timeline of the relevant health orders is as follows: On March 4, 2020, the Governor of California, Gavin Newsom, declared a state of emergency in California as a result of the spread of COVID-19, a dangerous illness caused by SARS-CoV-2 (i.e., the novel coronavirus). (ECF 14-2, 21.)

On March 19, 2020, Governor Newsom signed Executive Order N-33-20, which ordered "all individuals living in the State of California to stay at home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors[.]" (ECF 14-2.) Noting that "[t]he federal government has identified 16 critical infrastructure sectors," Executive Order N-33-20 states that "Californians working in those 16 critical infrastructure sectors may continue their work . . . ." (*Id*.) The Executive Order further provides that the Public Health Officer "may designate additional sectors as critical in order to protect the health and well-being of all Californians." (*Id*.) On March 26, Governor Newsom publicly stated that he would defer to local sheriffs as to whether firearms and ammunition retailers constitute essential businesses that may remain open. (ECF 23-2.)

On the same day, March 19, 2020, the County of Los Angeles Department of Public Health issued the "Safer at Home Order for Control of COVID-19" ("County Order"). (ECF 14-2.) Pursuant to the County Order, the Los Angeles Health Officer ordered, among other things, the closure of all non-essential retail businesses, including all indoor malls and indoor shopping centers. (*Id*.) On March 30, 2020, Los Angeles County Sheriff Alex Villanueva ("Sheriff Villanueva") publicly announced that the Los Angeles County Sheriff's Department will treat businesses that sell or repair firearms, or sell ammunition, as essential businesses under the County Order, allowing them to continue operations. (ECF 23-2.).

Sheriff Villanueva's March 30, 2020 announcement reversed a prior decision to categorize firearms and ammunition retailers as non-essential businesses under the County Order. (*Id.*)   As of March 30, 2020, firearm and ammunition retailers were permitted to be open to the public.

The County updated and modified its COVID-19 orders over the next few months, and at no point did it again require or announce the closure of firearm retailers.   Specifically, on June 18, 2020, the County issued its "Reopening Safer at Work and in the Community for Control of COVID-19" Order.   (ECF 57, Exh. 2.)   The June 18, 2020 Order "supersede[d] all prior Safer at Home orders" and enumerated which businesses were deemed high risk and had to remain closed. (*Id.* at 15.)   Firearms retailers were not included. "Lower-Risk Retail Businesses" such as firearms retailers were allowed to be open as long as they implemented specific safe reopening protocols.   (*Id.* at 15-16.)

The June 18, 2020 Order was later superseded by the August 12, 2020 "Reopening Safer at Work and in the Community for Control of COVID-19" Order which updated information for childcare and educational facilities, but did not alter the language about businesses that could remain open nor did it add firearms retailers to the list of businesses that must be closed.   (ECF 57, Exh. 5.)

And on September 4, 2020, the County again issued an Order which only temporarily closed "higher-risk businesses . . . where more frequent and prolonged person-to-person contacts are likely to occur."   (ECF 64, Exh. 11.)   Like the previous iterations, this Order did not mandate closure of firearms retailers which were and are still permitted to operate so long as they follow the "Reopening Protocols for Retail Establishments."   (*Id.* at ¶ 9(a).)

### III. LEGAL STANDARD

"After the pleadings are closed – but early enough to not delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. Proc. 12(c). The standard for assessing a Rule 12(c) motion for judgment on the pleadings is the same as the standard for a Rule 12(b)(6) motion to dismiss. *Enron Oil Trading & Trans. Co. v. Walbrook Ins. Co., Ltd.*, 132 F.3d 526, 529 (9th Cir. 1997).

To defeat a Rule 12(b)(6) motion to dismiss, the complaint must provide enough factual detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   The complaint must also be "plausible on its face," that is, the "complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

A court may dismiss a complaint under Rule 12(b)(6) based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). When ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

The court generally may not consider materials other than facts alleged in the complaint and documents that are made a part of the complaint. *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996). However, a court may consider other materials if (1) the authenticity of the materials is not disputed and (2) the plaintiff has alleged the existence of the materials in the complaint or the complaint "necessarily relies" on the materials. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted). The court may also take judicial notice of undisputed facts that are contained in extrinsic materials. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Lee*, 250 F.3d at 689-90.

## IV. DISCUSSION

### A. Plaintiffs Likely Lack Standing Because Their Second Amendment Claim is Moot.

Defendants seek judgment on the pleadings on the ground that Plaintiffs' Second Amendment claim against the County Order does not present a case or controversy within the meaning of Article III.

Under Article III, "[a] claim is moot if it has lost its character as a present, live controversy." *Rosemere Neighborhood Ass'n v. EPA*, 581 F.3d 1169, 1172–73 (9th Cir. 2009). Under the voluntary cessation exception to mootness, however,

"the mere cessation of [allegedly] illegal activity in response to pending litigation does not moot a case, unless the party alleging mootness can show that the allegedly wrongful behavior could not reasonably be excepted to recur." *Id*. (alteration added) (internal quotation marks omitted). Although a statutory change is "usually enough to render a case moot . . . a policy change not reflected in statutory changes or even in changes in ordinances or regulations will not necessarily render a case moot." *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) (internal quotation marks omitted). As a general matter, courts "are less inclined to find mootness where the new policy . . . could easily be abandoned or altered in the future." *Id*. at 972. (internal quotation marks omitted).

Defendants argue that Plaintiffs' Second Amendment claim against the County Order is now moot because Sheriff Villanueva has stated that firearms and ammunition retailers constitute essential businesses under the County Order and thus may remain open. They also argue that the subsequent orders from June, August, and September 2020 have all clearly exempted firearm retailers from closure and have unequivocally foreclosed the possibility that the County will abandon or alter its stance on this matter in the future. Plaintiffs respond arguing that the effects of the alleged violation have not been "completely and irrevocably eradicated" and that their injury is "capable of repetition, yet evading review" such that their claims are not moot.

The County has demonstrated in the six months since it issued its initial order that it will not close firearm retailers even in the absence of a temporary restraining order, nor has the County even hinted at any plans to close firearm retailers in the future. Plaintiffs' fears and speculation about future possible closures cannot sustain an otherwise moot claim; where "there is no reasonable expectation that the [alleged] wrongs will be repeated, and [] interim relief or events have completely and irrevocably eradicated the effects of the alleged violation" a case is moot. *Barnes v. Healy,* 980 F.2d 572, 580 (9th Cir. 1992).

As such, the Court finds that Plaintiffs' Second Amendment claim against Defendants has likely lost its character as a present, live controversy and should be dismissed as moot. However, the Court declines to definitively rule on standing and instead will address the merits of this matter.

### B. Assuming Plaintiffs Have Standing to Sue, Plaintiffs' Second Amendment Claim Fails as a Matter of Law Because Any Temporary Closure of Firearms Retailers Served Significant Government Interests and Was Substantially Related to These Interests.

Defendants next argue that all County Orders survive intermediate scrutiny such that Plaintiffs' claims fail as a matter of law.

To determine the merits of a Second Amendment claim, courts have adopted a two-step inquiry which "(1) asks whether the challenged law burdens conduct protected by the Second Amendment and (2) if so, directs courts to apply an appropriate level of scrutiny." *See United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013). Where it is unclear whether a challenged law burdens conduct protected by the Second Amendment, courts follow a "well-trodden and judicious course" of assuming that the Second Amendment applies and analyzing the regulation under the appropriate level of scrutiny. *See Pena v. Lindley*, 898 F.3d 969, 976 (9th Cir. 2018) (internal quotation marks omitted).

Assuming that the County Orders burden conduct protected by the Second Amendment by "affecting the ability of law-abiding citizens to possess [a handgun]," *Fyock v. Sunnyvale*, 779 F.3d 991, 999 (9th Cir. 2015), intermediate scrutiny is warranted because the County Orders are "simply not as sweeping as the complete handgun ban at issue in [*District of Columbia v. Heller*, 554 U.S. 570 (2008).]" *Id.*; *see also Donald McDougal v. Cty. of Ventura Cal.*, 20-CV-02927-CBM-ASx (C.D. Cal. March 31, 2020) (holding that the City Order is subject to intermediate scrutiny). Indeed, the alleged temporary closure of firearms retailers lasted a total of five days from March 25 to March 30, 2020 in the height of a global pandemic which has killed over 200,000 individuals in the United States alone—this circumstance is wholly distinguishable from a complete handgun ban or other possible governmental infringement on Second Amendment rights.

In applying intermediate scrutiny to the County Orders, the Court must consider (1) whether the government's stated objective is significant, substantial, or important, and (2) whether there is a reasonable fit between the challenged regulation and the asserted objective. *See Chovan*, 735 F.3d at 1139. The County's stated objective—reducing the spread of a deadly pandemic—unequivocally constitutes a significant government objective. This disease spreads where "[a]n infected person coughs, sneezes, or otherwise expels aerosolized droplets containing the virus," (ECF 21), so a five-day closure of non-essential businesses,

including firearms and ammunition retailers, reasonably fits the County's stated objectives of reducing the spread of this disease.

And because firearms retailers are now open to the public, any current restrictions such as social distancing or face masks also reasonably fit the County objectives such that no violation has occurred—regardless, such restrictions do not prohibit, restrict, or otherwise limit the sale of firearms. Accordingly, Plaintiffs have failed to plausibly allege a Second Amendment claim against Defendants. As such, all claims, including those for declaratory and injunctive relief and for nominal damages, fail as a matter of law.

Finally, because Plaintiffs' have not provided legally sound explanations for how their FAC could be altered to survive dismissal, the Court declines to grant leave amend. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*) (leave to amend should not be granted if a pleading "could not possibly be cured by the allegation of other facts") (internal quotation marks and citations omitted).

## V. CONCLUSION

For the reasons stated above, Defendants' Motion for Judgment on the Pleadings is **GRANTED**. This matter is **DISMISSED WITH PREJUDICE**. The scheduling conference is **VACATED AS MOOT**. Defendants are **ORDERED** to submit a proposed judgment within 14 days of the issuance of this Order.

**IT IS SO ORDERED**.