## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL MCCARTHY; WILLIAM R. BIEWENGA; LAURIE WARNER; TIMOTHY GALLIGAN; JIM SIMMONS; DAVID LANTAGNE; THOMAS LEIGHTON; TROY CITY TACTICAL LLC; WORCESTER PISTOL AND RIFLE CLUB, INC.; SHOOTING SUPPLY LLC; FIREARMS POLICY COALITION, INC.; COMMONWEALTH SECOND AMENDMENT, INC.; and SECOND AMENDMENT FOUNDATION, INC., <br><br> Plaintiffs, <br><br> -against- <br><br> CHARLES D. BAKER, in his Official Capacity as Governor of the Commonwealth of Massachusetts and in his Individual Capacity; MONICA BHAREL MD, MPH, in her Official Capacity as Commissioner of the Massachusetts Department of Public Health and in her Individual Capacity; and JAMISON GAGNON, in his Official Capacity as Commissioner of the Department of Criminal Justice Information Services and in his Individual Capacity, <br><br> Defendants. | CIVIL ACTION NO. 1:20-cv-10701-DPW <br><br><br><br> **PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW ON ORGANIZATIONAL STANDING** |

As requested at the December 17, 2020 hearing, this memorandum addresses the organizational standing of Plaintiffs Second Amendment Foundation, Inc. ("SAF"), Commonwealth Second Amendment, Inc. ("Comm2A") and Firearms Policy Coalition, Inc. ("FPC"). As explained, and to the extent it is even necessary to address the issue, the pleadings and affidavits provided to the Court provide ample allegations and facts to support the standing of these organizations to assert claims on behalf of their members.

Plaintiffs did not address the issue of organizational standing in their summary judgment briefings because—first and foremost—it was clear that the individuals and businesses had

standing. "It is well settled that where, as here, multiple parties seek the same relief, 'the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement.'" *Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017) (*quoting Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006)) (other citation omitted). In this situation, a court "need not consider the standing issue as to" other plaintiffs. *Bowsher v. Synar*, 478 U.S. 714 721 (1986) (citations omitted); *see also Horne v. Flores*, 557 U.S. 433, 446-47 (2009); *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264 (1977); *Project B.A.S.I.C. v. O'Rourke*, 907 F.2d 1242, 1244 (1st Cir. 1990) (*citing Carey v. Population Servs. Int'l*, 431 U.S. 678, 682 (1977); *Arlington Heights*, 429 U.S. at 264 n.9). This is because "nothing is gained or lost by the presence or absence of" the other parties. *Doe v. Bolton*, 410 U.S. 179, 189 (1973) (citation omitted).

Beyond this, the Defendants never raised the issue of organizational standing. *See* Defendants' Notice of Cross-Motion (Doc. No. 126). Rather, they asserted that: (1) the controversy had become moot; (2) the COVID-19 shutdowns did not infringe the Plaintiffs' Second Amendment rights; and (3) money damages were unavailable. *See id.* at 1-2. Thus, there was little reason to address an issue that did not appear to have any impact on the controversy before the Court.

This bears on the standard of review. In the context of a motion to dismiss for lack of standing, the Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975) (*citing Jenkins v. McKeithen*, 395 U.S. 411, 421-422 (1969)); *accord N.A.A.C.P., Boston Chapter v. Harris*, 607 F.2d 514, 525 (1st Cir. 1979). And, while the Court has the authority to

require "further particularized allegations of fact deemed supportive of plaintiff's standing," and
to dismiss a case if the plaintiff's ultimate showing fails, a dismissal on the merits cannot take
place until "*after* this opportunity" to make a more particularized showing has taken place. *See
Warth*, 422 U.S. at 501-02 (emphasis added); *see also Friends of Tims Ford v. Tenn. Valley
Auth.*, 585 F.3d 955, 965-66 (6th Cir. 2009); *Haase v. Sessions*, 835 F.2d 902, 907 (D.C. Cir.
1987); *Int'l Union, UAW v. Johnson*, 674 F.2d 1195, 1200-01 (7th Cir. 1982). Here, no party
raised the issue of organizational standing, and as such, the Plaintiffs never had occasion to make
a more particularized showing.[1] Given that the standing of SAF, Comm2A and FPC has no
bearing on this Court's jurisdiction to decide the controversy before it, we respectfully submit
that, on the record presented here, the motion-to-dismiss standard should apply. That is, the
question should be whether facts could plausibly be proven that would satisfy the test for
organizational standing. Having said that, the record that is already before the Court should be
more than adequate to meet the test for representational standing by an organization.

That test, well established, provides that an organization has standing to assert claims on
behalf of its members when: "(a) its members would otherwise have standing to sue in their own
right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c)
neither the claim asserted nor the relief requested requires the participation of individual
members in the lawsuit." *Hunt v. Wash. Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977);
*see also Warth v. Seldin*, 422 U.S. 490, 511 (1975)); *Council of Insurance Agents & Brokers v.
Juarbe-Jimenez*, 443 F.3d 103, 108 (1st Cir. 2006). SAF, Comm2A and FPC have no problem
meeting these requirements.

---

[1] During the December 17 conference, the Court directed the Plaintiffs to not submit additional
evidence on this point.

First, SAF, Comm2A and FPC all have members who would have standing to sue in their own right. Plaintiffs' pleading alleges this, asserting that the organizations have members in Massachusetts who are aggrieved by the COVID-19 Orders, and that all three of these organizations bring their claims both on their own behalf *and* "on behalf of [their] members." *See* Second Amended Complaint (Doc. No. 99) at ¶¶ 69-71; *see also id.* at ¶ 3 ("It is precisely times like these that the Plaintiffs and the Plaintiffs' members need to be able to exercise their fundamental rights to keep and bear arms.") and ¶ 76 ("The Plaintiffs, and the Plaintiffs' members and customers, reasonably fear that the Defendants will enforce the COVID-19 Orders and their related policies, customs, and practices against them.").

And, moving beyond the pleadings (if appropriate), the organizational Plaintiffs' affidavits also back this up. Alan Gottlieb explains that SAF has "members and supporters in Massachusetts," including individuals, retailers and ranges, and that the COVID-19 closure orders directly impact those members. *See* Dec. of A. Gottlieb (Doc. No. 122-5) at ¶¶ 4-5. Mr. Gottlieb's declaration avers that SAF's "members . . . have been injured in the same manner described in the lawsuit and motion, including as asserted by the Individual Plaintiffs," and that SAF asserts claims "on behalf of our members." *Id.* at ¶¶ 4, 7. Likewise, Brent Carlton provides testimony that Comm2A has "members . . . concerned about the ability to purchase guns and ammunition" and to maintain "proficiency training," and that a renewed COVID-19 closure order would "cut[] off those members ability to purchase guns and ammunition as well as the ability to maintain proficiency." Dec. of B. Carlton (Doc. No. 122-4) at ¶ 4. Comm2A's members have also been "injured in the same manner . . . as asserted by the Individual Plaintiffs," and Comm2A asserts its claims "to vindicate our members' right to lawfully purchase, own, use, and maintain proficiency with rifles, shotguns, and handguns." *Id.* at ¶ 8.

Finally, Adam Kraut avows that FPC "has members and supporters, who have all the indicia of membership, in the Commonwealth of Massachusetts," and that these members and supporters "wish to exercise their fundamental constitutional rights and have firearms and ammunition for lawful purposes, including self-defense, proficiency training, hunting, and sport." Dec. of A. Kraut (Doc. No. 122-6) at ¶¶ 6-7. Once again, FPC's members "have been injured in the same manner described in the lawsuit and motion, including as asserted by the Individual Plaintiffs," and FPC brings its claims "to vindicate our Massachusetts members' and supporters' rights, including the right to lawfully purchase, own, use, and maintain proficiency with common arms." *Id.* at ¶ 10. An organization only needs to have "one" member that is "suffering immediate or threatened injury as a result of the challenged action." *See United States v. AVX Corp.*, 962 F.2d 108, 116 (1st Cir. 1992) (*quoting Warth*, 422 U.S. at 511). Thus, this consideration presents no obstacle here.

Next, there is no real question that the interests at issue here are germane to the organizations' purposes. SAF's "purposes . . . include promoting both the exercise of the right to keep and bear arms and education, research, publishing, and legal action focusing on the constitutional right to privately own and possess firearms." Second Amended Complaint at ¶ 71. Comm2A's "purposes . . . include education, research, publishing, and legal action focusing on the constitutional right of the people to possess and carry firearms. Comm2A has members and supporters throughout (and beyond) Massachusetts, including members and supporters who would purchase firearms and ammunition for the purpose of self-defense but for the COVID-19 Orders and Defendants' ongoing threat to enforce them." *Id.* at ¶ 70. Finally, FPC's "purposes . . . include defending and promoting the People's rights and freedom" and it "serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal

efforts, research, education, outreach, and other programs." *Id.* at ¶ 69. And again, the organizations' affidavits that have already been submitted to the Court back this up—explaining that each organization's purposes include protecting and promoting the right of the people to keep and bear arms, the essential interest at issue in this case, and expressing their view that the claims asserted in this litigation are squarely within that organizational purpose. *See* Dec. of A. Gottlieb at ¶¶ 3-4; Dec. of B. Carlton at ¶¶ 3, 7; Dec. of A. Kraut at ¶¶ 3-5.

Finally, neither the claim asserted nor the relief requested requires the participation of individual members. Plaintiffs' essential claim is that the Defendants' closure of firearms retailers and ranges abridges the right to keep and bear arms, and the essential relief they seek is declaratory and injunctive relief that provides for their re-opening. *See* Second Amended Complaint at ¶¶ 72-77 & Prayer (i)-(ii). Currently, the Plaintiffs include (aside from SAF, Comm2A and FPC) seven individuals and two stores. Previously, there were fewer individuals and more stores, but the increase or decrease of either category of plaintiff makes no real difference—the claim asserted, and the relief sought, remain the same. It is true that the Second Amended Complaint seeks damages—a claim that Plaintiffs have abandoned—but those damages are nominal damages, not particularized damages that would turn on individual circumstances. *See id.* at Prayer (iii).

The decision in *Parent/Professional Advocacy League v. City of Springfield*, 934 F.3d 13 (1st Cir. 2019), provides an example of a much different situation. There, the organizations asserted ADA and IDEA claims on behalf of all members "with a mental health disability who are or have been enrolled in SPS's Public Day School who are not being educated in an SPS neighborhood school." *Id.* at 21 (quoting complaint). The plaintiffs sought a declaration that the rights of all such individuals had been violated and an injunction directing the defendants to

"provide . . . the school-based behavior services they need to enjoy equal educational opportunity and receive educational programs and services in the most integrated setting." *See id.* at 22 (quoting complaint). There were two reasons that these claims required the participation of the individual members. First, many of the individual members had not exhausted their IDEA remedies, meaning that whether they were entitled to relief would turn on individualized assessments. *See id.* at 34-35. But more fundamentally, the claims at issue raised "problems of 'individualized proof.'" *Id.* at 35 (*quoting Int'l Union, UAW v. Brock*, 477 U.S. 274, 287 (1986)) (internal quotations and other citations omitted). Whether or not the defendants had failed to comply with the ADA and IDEA in respect of the various "mental health disabilities" that each member had "would turn on facts specific to each student, including unique features of each student's unique disability, needs, services, and placement." *Id.*

The situation here is quite different. Exhaustion is not an issue in a § 1983 action. *See, e.g., Patsy v. Board of Regents*, 457 U.S. 496, 516 (1982). And further, whether or not the Defendants' actions are constitutional does not depend on facts and circumstances that are unique to particular Plaintiffs. The Court did not, for example, issue a preliminary injunction that applied only to a particular subset of the Plaintiffs or the Plaintiff organizations' members. Rather, the constitutionality of the Defendants' actions turns most essentially on the justifications that the Defendants themselves have provided—and those justifications have nothing to do with the unique characteristics of any particular plaintiff or organization member.

In sum, there is no need for the Court to address the issue of organizational standing because it is otherwise clear that the other Plaintiffs have standing—a point that many courts, including the Supreme Court itself, have repeatedly observed. And, to the extent the Court finds it appropriate to address organizational standing anyway, the record here is abundantly adequate.

This is particularly true in light of the fact that no party challenged the standing of SAF, Comm2A or FPC, and that the Court, when it raised the issue, did not request additional evidentiary submissions. The appropriate and prudential course of action is to keep SAF, Comm2A and FPC in the case.

Respectfully submitted,

THE PLAINTIFFS,

By their attorneys,

/s/ David D. Jensen
David D. Jensen, Esq.
Admitted *Pro Hac Vice*
David Jensen & Associates
33 Henry Street
Beacon, New York 12508
Tel: 212.380.6615
Fax: 917.591.1318
david@djensenpllc.com

J. Steven Foley
BBO # 685741
Law Office of J. Steven Foley
100 Pleasant Street #100
Worcester, MA 01609
Tel: 508.754.1041
Fax: 508.739.4051
JSteven@attorneyfoley.com

Jason A. Guida
BBO # 667252
Principe & Strasnick, P.C.
17 Lark Avenue
Saugus, MA 01960
Tel: 617.383.4652
Fax: 781.233.9192
jason@lawguida.com

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 6, 2021.

/s/ David D. Jensen
David D. Jensen, Esq.