UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL MCCARTHY, et al., *Plaintiffs*, v. CHARLES D. BAKER, in his Official Capacity as Governor of the Commonwealth of Massachusetts, et al., *Defendants*. | CIVIL ACTION NO. 1:20-cv-10701-DPW |

## FIFTH NOTICE OF SUPPLEMENTAL AUTHORITY

The defendants—Governor Charles D. Baker, Acting Department of Public Health Commissioner Margret R. Cooke,[1] and Department of Criminal Justice Information Services Commissioner Jamison R. Gagnon—submit the attached decision of the United States Court of Appeals for the First Circuit, *Boston Bit Labs, Inc. v. Baker*, --- F.4th ---, 2021 WL 3782128 (1st Cir. Aug. 26, 2021), as supplemental authority relevant to the defendants' pending Motion to Dismiss (Doc. Nos. 104-105) and Cross-Motion for Summary Judgment (Doc. Nos. 126-129).

In *Boston Bit Labs*, the First Circuit affirmed the dismissal for mootness of a lawsuit challenging a COVID-19 Order issued by Governor Baker. 2021 WL 3782128, at *6. The First Circuit explained that, in light of the termination of the COVID-19 state of emergency through COVID-19 Order No. 69 and the rescission of all COVID-19 Orders issued pursuant to the Governor's authority under the Civil Defense Act, St. 1950, c. 639, there was "simply no ongoing conduct to enjoin" and the plaintiff's claims for injunctive and declaratory relief were moot. *Id.*

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Acting Public Health Commissioner Margret R. Cooke should be substituted for former Public Health Commissioner Monica Bharel, whose resignation from her role as Public Health Commissioner became effective June 18, 2021.

at *3 (internal quotation marks omitted). The First Circuit further held that, for several reasons, the voluntary cessation doctrine could not resuscitate those moot claims. *Id.* at *4-*6. First, the court "question[ed] whether th[e] case raise[d] the kind of litigation-scheming suspicions" that justify invocation of the voluntary cessation doctrine, because "the circumstances suggest[ed] that Governor Baker issued Order 69 not to avoid a court judgment, but in response to the progress made in battling the pandemic." *Id.* at *4. Second, the court emphasized that "neither the challenged restriction nor the state of emergency is in effect," which distinguished the case from *Bayley's Campground, Inc. v. Mills*, 985 F.3d 153 (1st Cir. 2021), a case in which the voluntary cessation doctrine was held applicable. *Id.* at *5-*6. Third, the court explained that "it is unrealistically speculative [to suggest] that Governor Baker would *again* declare a state of emergency, *again* close businesses, and *again*" categorize the plaintiff's businesses differently than other businesses by further executive order. *Id.* at *5 (emphases in original). The holding in *Boston Bit Labs* thus forecloses the plaintiffs' argument in this case that the voluntary cessation doctrine should save their claims for injunctive and declaratory relief from dismissal for mootness.

Respectfully submitted,

CHARLES BAKER, Governor of the Commonwealth of Massachusetts; MARGRET COOKE, Acting Commissioner of the Department of Public Health; and JAMISON GAGNON, Commissioner of the Department of Criminal Justice Information Services,

By their attorney,

MAURA HEALEY
ATTORNEY GENERAL

/s/ Julia E. Kobick
Julia E. Kobick (BBO No. 680194)
Deputy State Solicitor
One Ashburton Place
Boston, Massachusetts 02108
(617) 963-2559
Dated: August 31, 2021    Julia.Kobick@mass.gov

## **CERTIFICATE OF SERVICE**

I certify that, on August 31, 2021, this document, filed through the Court's ECF system, will be sent electronically to registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ Julia E. Kobick
Julia E. Kobick
Deputy State Solicitor

# Exhibit A

2021 WL 3782128
Only the Westlaw citation is currently available.
United States Court of Appeals, First Circuit.

BOSTON BIT LABS, INC., a
Massachusetts corporation, d/b/
a Bit Bar Salem, Plaintiff, Appellant,

v.

Charles D. BAKER, in his official capacity
as Governor of the Commonwealth of
Massachusetts, Defendant, Appellee.

No. 20-2046
|
August 26, 2021

APPEAL FROM THE UNITED STATES DISTRICT COURT, FOR THE DISTRICT OF MASSACHUSETTS, [Hon. Richard G. Stearns, U.S. District Judge]

**Attorneys and Law Firms**

Marc J. Randazza, with whom Jay M. Wolman and Randazza Legal Group, PLLC, were on brief, for appellant.

LaRonica K. Lightfoot, Assistant Attorney General, with whom Maura Healey, Attorney General of Massachusetts, was on brief, for appellee.

Before Thompson, Selya, and Hawkins,[*] Circuit Judges.

[*]   Of the Court of Appeals for the Ninth Circuit, sitting by designation.

**Opinion**

THOMPSON, Circuit Judge.

**\*1**  Time and events have overtaken this case, making it (in law-speak) "moot." We explain how and why below.

**I**

First up, some background (appropriately simplified), which is undisputed for present purposes:

Bit Bar (its full legal name appears in our caption) owns and runs a restaurant/arcade in the city of Salem, Massachusetts. In normal times, patrons can eat and drink while playing an array of video games using kiosks or machines doubling as dining tables. But these are most definitely *not* normal times (as all are painfully aware) given SARS-CoV-2, the virus behind the frightful COVID-19 pandemic — which caused Massachusetts Governor Charles Baker (like other Governors) to issue orders temporarily closing nonessential businesses and limiting restaurants to takeout and delivery only (among other measures not pertinent here), thus temporarily closing the arcade part of Bit Bar's business.

Suing under 42 U.S.C. § 1983, Bit Bar attacked Governor Baker's "COVID-19 Order No. 43" as unconstitutional. Issued months after he declared a COVID-19 state of emergency and assumed extra powers via the state's Civil Defense Act, Order 43 was but one of many executive orders promulgated as part of a plan to reopen businesses in four phases (notice the past tense "was," the significance of which will become clear later).[1] Bit Bar's complaint noted that Governor Baker had earlier classified arcades as "Phase III enterprises," along with (for example) the gaming floors of casinos ("casinos" for short), museums, fitness centers, and performance halls. But Order 43, the complaint continued, reclassified arcades as "Phase IV enterprises" while keeping (as relevant to our dispute) casinos in "Phase III." And this meant that casinos would reopen before arcades, to Bit Bar's great disappointment. Claiming that "no compelling government interest" justified curbing "the availability of video games when casinos are permitted to operate in analogous physical circumstances," the complaint alleged that Governor Baker's "restriction" violated Bit Bar's First and Fourteenth Amendment rights. Bit Bar sought a declaration that the "restriction" infracted the Constitution and an injunction to stop the "restriction['s] ... application to [its] speech and business" (helpfully, Bit Bar's opening brief to us characterizes its complaint as "not" one seeking "money damages"). For good measure, Bit Bar also moved for a preliminary injunction to restrain Governor Baker "from enforcing any restrictions beyond those imposed on Phase III enterprises" — a quote taken from its motion.

[1]   Massachusetts's highest court — the Supreme Judicial Court — ruled that the Civil Defense Act (which is still in effect) "provides authority" for Governor Baker's "declaration of a state of emergency in response to the COVID-19 pandemic and for the issuance of the subsequent emergency

orders." Desrosiers v. Governor, 486 Mass. 369, 158 N.E.3d 827, 832 (2020).

Just days after Bit Bar filed suit, Governor Baker restored arcades to "Phase III" status through "COVID-19 Order No. 50." He then opposed Bit Bar's motion for injunctive relief and moved to dismiss the complaint, principally on the ground that this change — "arcades having been allowed to reopen in Massachusetts," as his consolidated memo described it — mooted the controversy. Bit Bar wrote memos supporting its preliminary-injunction motion and opposing Governor Baker's dismissal motion, relevantly arguing that his "voluntary cessation" of the complained-of conduct could not moot the case because (as Bit Bar saw it) he "could resume" that conduct "at a whim."

**\*2** Ruling on these matters, the district judge wrote that "[b]ecause arcades no longer face 'any restrictions beyond those imposed on Phase III enterprises,'" Bit Bar's "claims" are "moot." The judge also did not think "that there is any reasonable basis to believe" that, following dismissal, Governor Baker would go back to "imposi[ng] ... greater restrictions on the operation of arcades than certain other Phase III enterprises." And Bit Bar's "suggestions to the contrary," the judge added, "rel[ied] on an undue degree of speculation regarding the future course of the virus and the measures Governor Baker may opt to take to counteract its spread" — thus making the voluntary-cessation doctrine "inapplicable."

From that order, Bit Bar appeals. Critically for this case, after briefing but before oral argument, Governor Baker told us by letter (submitted under Federal Rule of Appellate Procedure 28(j)), and publicly announced, that he had terminated the COVID-19 state of emergency by issuing "COVID-19 Order No. 69" — which ultimately ended his authority "to impose any COVID-19 related restrictions" under the earlier emergency declaration and rescinded his COVID-19 emergency orders issued pursuant to the Civil Defense Act too. [2] And, Governor Baker insisted, the voluntary-cessation doctrine offered Bit Bar no help, because given Order 69's "termination of the COVID-19 state of emergency," there is no reasonable expectation that he will repeat the same alleged wrong. Bit Bar did not respond to this letter, by the way.

---

[2] One of Order 69's "WHEREAS" clauses explained that

> as of May 27, 2021, over 3.5 million residents of the Commonwealth have been fully vaccinated against the COVID-19 virus, and over 4.3 million have received at least a first dose, and over 78 percent of Massachusetts adults overall and over 89 percent of Massachusetts residents 75 years and older have received at least a first dose[.]

And another of Order 69's "WHEREAS" clauses noted that

> the remaining threats to the public health presented by the COVID-19 virus will shortly no longer require the exercise of the extraordinary powers that the Civil Defense Act grants to the Governor in a time of emergency to take executive action, outside the normal processes of government and across the established geographic and political divisions of authority, in order to coordinate State and Local relief efforts and to act without delay as necessary to protect the public health and welfare[.]

## II

Next up, our take on the situation (with us noting additional details as needed):

Bit Bar's challenge rises or falls on whether the judge rightly kicked its case out as moot, a decision we review *de novo*, see Ramírez v. Sánchez Ramos, 438 F.3d 92, 96 (1st Cir. 2006) — *i.e.*, without deferring to his ruling, see Stephanie C. v. Blue Cross Blue Shield of Mass. HMO Blue, Inc., 852 F.3d 105, 111 n.2 (1st Cir. 2017). Knowing that the mootness doctrine can sometimes be difficult to get one's hands around, see Air Line Pilots Ass'n, Int'l v. UAL Corp., 897 F.2d 1394, 1396 (7th Cir. 1990) (Posner, J., for the panel) (suggesting that "[t]he test for mootness is simple to state but sometimes difficult to apply"), we provide a brief primer.

Federal judges decide only *live* controversies that will have a real effect on real parties in interest. See, e.g., U.S. Const. art III, §§ 1-2; Already, LLC v. Nike, Inc., 568 U.S. 85, 90-91, 133 S.Ct. 721, 184 L.Ed.2d 553 (2013); Sundaram v. Briry, LLC (In re Sundaram), ––– F.4th ––––, ––––, 2021 WL 3578339 (1st Cir. 2021) [No. 20-9008, slip op. at 6-7]. So if a case loses its live-controversy character at any point in the proceedings, the mootness doctrine generally stops us from pumping new life into the dispute (regardless of how fascinating the party's claims are) by "oust[ing]" the federal

courts of "jurisdiction" and "requir[ing]" us to "dismiss[ ]" the case. See Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 335, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980); accord Powell v. McCormack, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969).

**\*3** The "heavy" burden of showing mootness is on the party raising the issue. See, e.g., Connectu LLC v. Zuckerberg, 522 F.3d 82, 88 (1st Cir. 2008). And the key question "is whether the relief sought would, if granted, make a difference to the legal interests of the parties (as distinct from their psyches, which might remain deeply engaged with the merits of the litigation)." Air Line Pilots Ass'n, Int'l, 897 F.2d at 1396 (citing North Carolina v. Rice, 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971)); accord Town of Portsmouth v. Lewis ("Lewis"), 813 F.3d 54, 58 (1st Cir. 2016) (noting that a suit is moot "when the court cannot give any effectual relief to the potentially prevailing party" (quoting Am. Civ. Liberties Union of Mass. v. U.S. Conf. of Catholic Bishops ("ACLUM"), 705 F.3d 44, 52 (1st Cir. 2013))). If the answer is no, "then the court is not really deciding a 'case,' and (if a federal court) it is therefore exceeding the power conferred on it by ... the Constitution." Air Line Pilots Ass'n, Int'l, 897 F.2d at 1396. [3]

---

[3] Or to borrow Judge (now Justice) Gorsuch's apt words:

> [E]ven if a lawsuit involved a live dispute when the matter was before the district court, should events overtake the case on appeal such that, before the final moment of appellate disposition, the complaining party winds up with all the relief the federal court could have given him, we will say that the suit has become moot and beyond the power of the federal courts to adjudicate. This holds true even if all the parties before us still wish us to render an opinion to satisfy their demand for vindication or curiosity about who's in the right and who's in the wrong.

Wyoming v. U.S. Dep't of Interior, 587 F.3d 1245, 1250 (10th Cir. 2009) (quotation marks and citation omitted). And one more quote by then-Judge Gorsuch:

> Mootness doctrine, and our consequent inability to render judgment on ... hypothetical or advisory questions, supplies a significant portion of what distinguishes the role of the federal judge from that of the advisor or academic in our constitutional order.

Id.

---

Moving from the general to the specific, Bit Bar (we repeat) basically asked the judge to enjoin Governor Baker from treating its arcade more restrictively than casinos during the declared COVID-19 state of emergency. And Bit Bar (we also repeat) explicitly targeted Order 43, which put arcades in "Phase IV" but kept casinos in "Phase III." But then (remember) came Order 50, which returned arcades to "Phase III." And then (remember too) came Order 69, which eventually ended the COVID-19 state of emergency and rescinded all COVID-19 orders issued under the Civil Defense Act since the start of the (now-cancelled) emergency declaration. Given this concatenation of events, there is simply "no ongoing conduct to enjoin," thus mooting Bit Bar's injunctive-relief claim. See Lewis, 813 F.3d at 58.

And the same goes for Bit Bar's declaratory-relief claim. Such a claim is moot if no "substantial controversy of sufficient immediacy and reality" exists "to warrant the issuance of a declaratory judgment." See id. (quoting ACLUM, 705 F.3d at 54, though omitting internal formatting). Bit Bar (as a reminder) basically asked the judge to declare that Order 43 unconstitutionally infringed its protected rights. But given the just-noted changed circumstances — see the last paragraph, showing how the controversial Order 43 is no longer in controversy — the dispute "is at this point neither immediate nor real." See id. (quoting ACLUM, 705 F.3d at 54).

To put it again in blunt terms, with the offending executive order wiped away, there is nothing harming Bit Bar and thus nothing left for us to do that would make a difference to its legal interests. And for that reason, Bit Bar's claims are moot. See, e.g., N.Y. State Rifle & Pistol Ass'n, Inc. v. City of N.Y. ("Rifle & Pistol Ass'n"), ––– U.S. ––––, 140 S. Ct. 1525, 1526, 206 L.Ed.2d 798 (2020) (per curiam) (explaining that the plaintiffs' claims for declaratory and injunctive relief became moot once the defendant replaced the challenged rule with a new one that gave them "the precise relief" that their complaint asked for); N.E. Reg'l Council of Carpenters v. Kinton ("Kinton"), 284 F.3d 9, 18 (1st Cir. 2002) (holding that "it would be pointless either to enjoin the enforcement of a regulation that is no longer in effect or to declare its constitutional status"). See generally Spell v. Edwards, 962 F.3d 175, 179 (5th Cir. 2020) (stating that "[i]t makes

sense ... that a case challenging a statute, executive order, or local ordinance usually becomes moot if the challenged law has expired or been repealed").

**\*4** But wait a minute, says Bit Bar. Governor Baker's "voluntary cessation" of the challenged conduct cannot cause mootness because — the argument goes (and Bit Bar called it "the centerpiece of this appeal") — there is "no guarantee that [he] will not simply reinstate the previous restrictions and start again from square one." And because Governor Baker *could* return to his old ways — the argument continues — a court could enter a judgment declaring (emphasis ours) that "*if* the Governor is to restrict" Bit Bar's "rights," he must do so in a constitutionally permissible way. So — the argument concludes — the judge erred in not applying the voluntary-cessation doctrine. Call us unconvinced.

"[E]ven if the government withdraws or modifies a COVID restriction in the course of litigation," our judicial superiors tell us, "that does not necessarily moot the case." See Tandon v. Newsom, ––– U.S. ––––, 141 S. Ct. 1294, 1297, 209 L.Ed.2d 355 (2021) (per curiam). That is so because of the voluntary-cessation doctrine, which "can apply when a defendant voluntar[ily] ceases the challenged practice in order to moot the plaintiff's case and there exists a reasonable expectation that the challenged conduct will be repeated" after the suit's "dismissal." See Lewis, 813 F.3d at 59 (quotation marks and citations omitted and alteration by Lewis court); see also Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc. ("Friends"), 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (stating that for the voluntary cessation of contested conduct to moot a suit, it must be "absolutely clear" that the conduct "could not reasonably be expected to recur" (quotation marks omitted)). And the burden of showing that the voluntary-cessation doctrine does *not* apply still lies with the party claiming mootness. See, e.g., Friends, 528 U.S. at 190, 120 S.Ct. 693.

Often described as a mootness exception, the voluntary-cessation doctrine exists to stop a scheming defendant from trying to "immuniz[e] itself from suit indefinitely" by unilaterally changing "its behavior long enough to secure a dismissal" and then backsliding when the judge is out of the picture, see Lewis, 813 F.3d at 59 (quoting ACLUM, 705 F.3d at 54-55) — "repeating this cycle until [it] achieves all [its] unlawful ends," see Already, LLC, 568 U.S. at 91, 133 S.Ct. 721. The doctrine is "an evidentiary presumption that the controversy ... continues to exist," based on "skeptic[ism] that cessation of violation means cessation of live controversy." Friends, 528 U.S. at 213-14, 120 S.Ct. 693 (Scalia, J., dissenting). And given this purpose, it is hardly surprising that the doctrine — which turns on the circumstances of the particular case, see ACLUM, 705 F.3d at 56 — "does *not* apply" if the change in conduct is "*unrelated* to the litigation," see Lewis, 813 F.3d at 59 (emphasis added).[4]

---

[4] A dispute is also not moot if it is capable of repetition between the parties yet bound to evade review because of its short duration. See, e.g., Spencer v. Kemna, 523 U.S. 1, 17, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998). But Bit Bar, to quote its brief, "does not argue that this is such a case." So we say no more about that subject.

---

Against this backdrop, Bit Bar's attack on the judge's voluntary-cessation analysis cannot succeed.

For openers, we question whether this case raises the kind of litigation-scheming suspicions typically associated with defendant-initiated mootness. Among other things, Order 69 highlighted the millions and millions of Bay Staters now fully vaccinated (with many millions more having received at least dose one of the two-dose vaccine) as a basis for ending the COVID-19 state of emergency and revoking all COVID-19 orders previously promulgated under the Civil Defense Act during the (now-terminated) emergency state. So the circumstances suggest that Governor Baker issued Order 69 not to avoid a court judgment, but in response to the progress made in battling the pandemic. See generally S. Bay United Pentecostal Church v. Newsom, ––– U.S. ––––, 140 S. Ct. 1613, 1613, 207 L.Ed.2d 154 (2020) (Roberts, C.J., concurring in the denial of application for injunctive relief) (underscoring that the "Constitution principally entrusts the safety and the health of the people to the politically accountable officials of the States" (quotation marks omitted)). And Bit Bar points to nothing to the contrary.

**\*5** But even putting this doubt aside, we find that Bit Bar's chief argument for reversal here — that Governor Baker could reinstate Order 43's approach of treating arcades more harshly than casinos just as easily as he replaced it — is not a difference-maker. That the Governor has the power to issue executive orders cannot itself be enough to skirt mootness, because then no suit against the government would ever be

moot. And we know some are. See, e.g., Rifle & Pistol Ass'n, 140 S. Ct. at 1526; Trump v. Int'l Refugee Assistance, ––– U.S. ––––, 138 S. Ct. 353, 353, 199 L.Ed.2d 203 (2017); Kinton, 284 F.3d at 18. See generally Am. Bankers Assoc. v. Nat'l Credit Union Admin., 934 F.3d 649, 661 (D.C. Cir. 2019) (emphasizing that the sheer "power to [reinstitute] a challenged law is not a sufficient basis on which a court can conclude that a challenge remains live" (quotation marks omitted and alteration by Am. Bankers Assoc. court)).

Still trying to get us to think about the situation as it does, Bit Bar talks up Roman Catholic Diocese of Brooklyn v. Cuomo ("Catholic Diocese"), ––– U.S. ––––, 141 S. Ct. 63, 208 L.Ed.2d 206 (2020) (per curiam), and Bayley's Campground, Inc. v. Mills ("Bayley's"), 985 F.3d 153 (1st Cir. 2021). Neither helps its cause, however.

Catholic Diocese refused to hold moot a challenge to a COVID-19 order by the New York governor that restricted attendance at religious services in select areas ("red and orange zones") — even though the governor had relaxed the restrictions after the applicants asked the Supreme Court for injunctive relief. See 141 S. Ct. at 65-66, 68-69. The challenged order was still in effect, just with a change in the maximum number of attendees permitted. See id. at 68. Importantly too, the governor "regularly chang[ed] the classification of particular areas without prior notice," including three times in the seven days before the Supreme Court ruled. See id. at 68 & n.3. And with the governor "loosen[ing] his restrictions" as the Court "prepar[ed] to act" but "continuing to assert the power to tighten them again anytime as conditions warrant," id. at 72 (Gorsuch, J., concurring), the key to the Court's not-moot ruling was how all this showed that "the applicants remain[ed] under a constant threat that the area in question will be reclassified," see id. at 68.

But night-and-day differences separate Bit Bar's case from Catholic Diocese. Here (unlike there) neither the challenged restriction nor the state of emergency is in effect. To quote a letter Governor Baker sent us post-argument, the Governor has "terminated the COVID-19 state of emergency ..., thereby extinguishing [his] authority to impose emergency orders," and thus "rescinded" every "COVID-19 emergency order[ ]" — a statement Bit Bar does not contradict. And if more were needed (which we doubt), the circumstances here suggest that even if (or more likely when) COVID-19 flare-ups occur (and all eyes are now on the virus's "Delta" variant), it is unrealistically speculative that Governor Baker would *again* declare a state of emergency, *again* close businesses, and *again* put arcades in a less favorable reopening phase than casinos — particularly since he has not disadvantaged arcades like this despite COVID-19 surges after Order 43 went by the boards.

On to Bayley's then. Bayley's refused to hold moot a challenge to a COVID-19 order by the Maine governor that required most people heading to the Pine Tree State to self-quarantine for two weeks before going out in public — even though the governor had rescinded the order and replaced it with a slightly narrower one after the case came to us. See 985 F.3d at 155-58. The key to our not-moot ruling was how "the [g]overnor ha[d] not denied that a spike in the spread of the virus in Maine could lead her to impose a self-quarantine requirement just as strict as" the rescinded one. See id. at 157. So on the record there the governor could not "show[ ] that it is absolutely clear" that the supposedly "wrongful behavior could not reasonably be expected to recur" if circumstances became dire enough. See id. at 158 (quoting ACLUM, 705 F.3d at 55, quoting Friends, 528 U.S. at 190, 120 S.Ct. 693).

**\*6** The situation in Bayley's is different from ours, however. That is because here (unlike there) the offending order is gone, along with the COVID-19 state of emergency. And if more were required (which again we doubt), Governor Baker has not tried to reinstate an order like Order 43 at all despite upticks in COVID-19 cases after he jettisoned Order 43.

And that is that for Bit Bar's bid to undermine the judge's voluntary-cessation assessment.[5]

---

[5] Because we (like the district judge) dispose of this case on mootness grounds, we need not — and so will not — address the merits of Bit Bar's constitutional claims.

### III

Last up, our conclusion:

Having considered and rejected Bit Bar's arguments, we affirm the district judge's dismissal of the suit as moot and award Governor Baker his costs on appeal. [6] See Fed. R. App. P. 39(a).

[6]   It goes without saying (though we say it anyway) that "nothing prevents" Bit Bar from "seeking" injunctive and declaratory relief "if" Governor Baker issues another order like Order 43. See Lewis, 813 F.3d at 59.

**All Citations**

--- F.4th ----, 2021 WL 3782128

---

**End of Document**             © 2021 Thomson Reuters. No claim to original U.S. Government Works.